**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ITALIANA COKE, S.R.L., | : |
| | : 08-CV-4725 (JGK) |
| Plaintiff, | : |
| | : Electronically Filed |
| v. | : |
| | : |
| UNITED COAL COMPANY, LLC, | : |
| | : |
| Defendant. | : |
| | : |
| | : |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT UNITED COAL COMPANY, LLC'S
## MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO
## <u>TRANSFER OR STAY THE PROCEEDINGS</u>

Edmund M. O'Toole (EO-7939)
Michael C. Hartmere (MH-6839)
VENABLE LLP
1270 Avenue of the Americas, 25th Floor
New York, New York  10020
Phone: (212) 953-3388
Fax: (212) 307-5598
emotoole@venable.com
mchartmere@venable.com

Brian L. Schwalb
(*pro hac vice application pending*)
Meredith L. Boylan (MB-2718)
VENABLE LLP
575 7th Street, NW
Washington, DC  20004-1601
Phone:  (202) 344-4356
Fax:  (202) 344-8300
blschwalb@venable.com
mlboylan@venable.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ i

PRELIMINARY STATEMENT ...................................................................................... 1

FACTUAL BACKGROUND .......................................................................................... 2

ARGUMENT ................................................................................................................ 8

I.   THIS COURT LACKS PERSONAL JURISDICTION OVER UNITED COAL ..................................... 8

   A.  This Court Lacks General Jurisdiction Over United Coal Because United Coal
       Does Not Continuously And Systematically Do Business In New York ..................... 8

   B.  The Court Lacks Specific Jurisdiction Over United Coal Because United Coal
       Does Not Engage In Purposeful Activities In New York And There Is No
       Substantial Relationship Between The Claims Asserted And The State Of
       New York. ................................................................................................................ 9

   II.  VENUE IN THIS DISTRICT IS IMPROPER ............................................................................. 13

   III. ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS ACTION TO THE EASTERN
        DISTRICT OF VIRGINIA FOR CONSOLIDATION WITH THE FIRST FILED ACTION ................. 15

   IV. BECAUSE THE EASTERN DISTRICT OF VIRGINIA SHOULD DECIDE WHETHER THE
       FIRST-FILED RULE APPLIES TO THIS ACTION, THIS COURT SHOULD ISSUE A STAY
       PENDING THAT DETERMINATION ...................................................................................... 17

CONCLUSION ............................................................................................................ 21

# TABLE OF AUTHORITIES

## CASES

*3H Enters., Inc. v. Dwyre*, 182 F. Supp. 2d 249 (N.D.N.Y. 2001) ................................................15

*Affinity Memory & Micro, Inc. v. K&Q Enters., Inc.*,
20 F. Supp. 2d 948 (E.D. Va. 1998) .........................................................................................19

*Bensusan Rest. Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996) ..................................................8, 9

*Berisford Capital Corp. v. Central States, S.E. & S.W. Areas Pension Fund*,
677 F. Supp. 220 (S.D.N.Y. 1988) ...........................................................................................18

*Berkshire Capital Group, LLC v. Palmet Ventures, LLC*, No. 06 Civ. 13009 (PAC),
2007 U.S. Dist. LEXIS 69987 (S.D.N.Y. Sept. 21, 2007).............................................................12

*Burger King Corp. v. Rudzewicz*, 471 U.S. 662 (1985).........................................................12, 13

*Caremark Therapeutic Servs. v. Leavitt*, 405 F. Supp. 2d 454 (S.D.N.Y. 2006) ...........................14

*Christian Broad. Network v. Busch*, No. 2:05cv558, 2006 U.S. Dist. LEXIS 1868
(E.D. Va. Jan 9, 2006).......................................................................................................19

*Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77 (2d. Cir. 1978) ....................................15, 16

*Cutco Indus., Inc. v. Naughon*, 806 F.2d 361 (2d. Cir. 1986)............................................10, 11, 12

*Darby v. Compagnie Nationale Air France*, 769 F. Supp. 1255 (S.D.N.Y. 1991)..................12, 13

*Employers Ins. of Wasau v. Fox Entm't Group, Inc.*, 522 F.3d 271 (S.D.N.Y. 2008) .................17

*Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108 (2d Cir. 2001) ..................................................15

*Galgay v. Bulletin*, 504 F.2d 1062 (2d. Cir. 1974) ...................................................................12

*General Instrument Corp. v. Tie Mfg., Inc.*, 517 F. Supp. 1231 (S.D.N.Y. 1988) .......................11

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962).................................................................15, 16

*Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353 (2d Cir. 2005)........................................................14

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985).......................................8, 9

*Independent Nat'l Distribs., Inc. v. Black Rain Commc'ns, Inc.*, No. 94 Civ. 8464 (JFK),
1995 U.S. Dist. LEXIS 14086 (S.D.N.Y. Sept. 27, 1995).............................................................13

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) .......................................................13

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)............................................................8, 9

*Kreutter v. McFadden Oil Corp.*, 522 N.E. 2d 40 (N.Y. 1988).....................................................10

*Landis v. North Am. Co.*, 299 U.S. 248 (1936).........................................................................19

*Lipin v. Hunt*, 538 F. Supp. 2d 590 (S.D.N.Y. 2008) ...................................................................9

*Mantello v. Hall*, 947 F. Supp. 92 (S.D.N.Y. 1996) ...................................................................8

*Minette v. Time Warner*, 997 F.2d 1023 (2d. Cir. 1993) .............................................................16

i

*National Union Fire Ins. Co. of Pittsburgh, PA v. Liberty Mut. Fire Ins. Co.*, No. 95 Civ. 5262 (DLC), 2005 U.S. Dist. LEXIS 19778 (S.D.N.Y. Sept. 7, 2005) .........................................20

*Ontel Prod. Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144 (S.D.N.Y. 1995).......................19

*PRL USA Holdings, Inc. v. Carlberg Design, Inc.*, No. 05 Civ. 588 (JGK), 2005 U.S. Dist. LEXIS 39448 (S.D.N.Y. Jan. 18, 2006).................................................................................20

*Realuyo v. Villa Abrille*, No. 01 Civ. 10158 (JGK), 2003 U.S. Dist. LEXIS 11529 (S.D.N.Y. July 7, 2003) .........................................................................................................10

*Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49 (S.D.N.Y. 2001).......................................19

*Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505 (S.D.N.Y. 2004) ...............18, 19

*Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d. Cir. 2004).....................................................10

*The Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 Fed. Appx. 297 (4th Cir. 2001)...................................................................................................17

*Thomas v. Ashcroft*, 470 F.3d 491 (2d Cir. 2006)..........................................................................10

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)...............................................12

## STATUTES AND REGULATIONS

*28 U.S.C. § 1391(a)(3)*.....................................................................................................................14

*28 U.S.C. § 1391(c)*.........................................................................................................................15

*28 U.S.C. § 1406(a)* ........................................................................................................................15

*FED. R. CIV. P. 12(b)(3)*....................................................................................................................13

*FED. R. CIV. P. 13(a)* .......................................................................................................................18

*N.Y. C.P.L.R. §§ 301-302*..................................................................................................................8

*N.Y. C.P.L.R. § 302(a)(1)*................................................................................................................10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ITALIANA COKE, S.R.L., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) CIVIL ACTION NO. 08-CV-4725 (JGK) |
| | ) |
| UNITED COAL COMPANY, LLC, | ) Electronically Filed |
| | ) |
|     Defendant. | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT UNITED COAL COMPANY, LLC'S
## MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO
## TRANSFER OR STAY THE PROCEEDINGS

Pursuant to Federal Rules of Civil Procedure 12(b)(2) & (3) and 28 U.S.C. §§ 1404 & 1406, Defendant United Coal Company, LLC ("United Coal"), through its undersigned counsel, hereby submits this memorandum of points and authorities in support of its motion to dismiss the Complaint filed by Plaintiff Italiana Coke, S.R.L. ("Italiana Coke"), or, in the alternative, to transfer venue of this action to the Eastern District of Virginia, or stay the proceedings in this action.

## PRELIMINARY STATEMENT

This lawsuit, filed on May 20, 2008, is the reactionary "second-filed" of two complaints seeking declaratory relief addressing the same contractual dispute. Defendant United Coal filed the "first-filed" complaint on May 7, 2008 in the Eastern District of Virginia seeking judicial resolution of the dispute that had arisen between it and Italiana Coke over whether valid and enforceable contracts exist between the parties for the purchase and sale of millions of dollars worth of high volatile and low volatile metallurgical coal. The Virginia federal court action seeks, among other relief, a declaration that there are no contracts. On May 20, 2008, nearly two

weeks after United Coal filed its action (and provided courtesy copies to Italiana Coke's counsel), Italiana Coke filed this action seeking to resolve the same contractual dispute and asking for a contrary declaration to that sought in the Virginia federal court; *i.e*, a declaration that there are enforceable contracts.

This Court should dismiss this action because the Court lacks personal jurisdiction over United Coal or, alternatively, transfer the action to the Eastern District of Virginia where it can be consolidated with the "first-filed" action already pending there before Judge Friedman. Because this Court does not have jurisdiction, and this action could have been properly filed in the Eastern District of Virginia either as an original proceeding—because that court has jurisdiction and is a proper venue—or as a counterclaim, this Court can resolve Italiana Coke's procedural fencing simply by transferring this action to Virginia. At the very least, if both actions remain pending in separate courts, this Court should stay this action to allow Judge Friedman to determine which of the two actions should proceed.

## FACTUAL BACKGROUND

United Coal has supplied metallurgical or hard coking coal to Italiana Coke since 2006. *See* Complaint ("Compl.") ¶¶ 7-8; Declaration of Brian D. Sullivan, dated June 30, 2008 ("Sullivan Decl.") ¶ 4. The parties' commercial relationships have been governed by formal one-year, written and executed "Sale and Purchase Agreements" that have run from April 1st through March 31st of the following year. *See* Compl. ¶ 9; Sullivan Decl. ¶ 5. The coking coal has been supplied to Italiana Coke by United Coal through two of its operating subsidiaries, Wellmore Coal Company, LLC, located in Big Rock, Virginia, and Pocahontas Coal Company, LLC, located in Raleigh County, West Virginia. *See* Sullivan Decl. ¶ 5. The coal that has been sold in the past by United Coal to Italiana Coke has been on "FOBT" terms, or free-on-board,

2

stowed and trimmed in an oceangoing vessel chartered by Italiana Coke. *See* Sullivan Decl. ¶¶ 2, 5. All of the coal is mined in either Virginia or West Virginia, and is shipped by rail at the expense of United Coal, to a Virginia loading port in the Hampton Roads in Virginia. *See* Sullivan Decl. ¶ 5. Under export contracts such as the ones United Coal has had in the past with Italiana Coke, the title to and risk of loss of the coal passes in Virginia once the coal is loaded into a vessel. *See id.* And, in the past invoices under previous contracts have been paid by Italiana Coke by wire transfer of funds to United Coal's bank located in Memphis, Tennessee. *See id.*

In late 2007, the parties began negotiating a potential new coal purchase and sale agreement for the 2008-2009 year. *See* Compl. ¶ 13; Sullivan Decl. ¶ 6. All parties understood that any contract would require agreement on all material terms and conditions set forth in a final written and executed contract, and that no binding or enforceable agreement would exist unless and until a written agreement was executed. *See* Sullivan Decl. ¶ 7. As is understood for long-term (one-year) agreements, as opposed to purchasing coal on the "spot" market at the then-existing market price, both the buyer and seller remain at risk for changes in the market price until a final agreement is executed. *See id.* Consistent with past practice, the parties exchanged, discussed, and negotiated a variety of potential contract terms relating to, among other things, price, quantity, moisture levels, transportation issues, force majeure events, purchase options and delivery requirements with the understanding that, before a binding agreement would exist, all terms had to be agreed upon and had to be expressed in a final written, executed contract. *See id.* ¶ 8. These negotiations took place in Europe and through an exchange of correspondence and communications between the parties in Virginia and Italy. *See* Compl. ¶¶ 13, 16-24, 26, 27, 29; Sullivan Decl. ¶ 9.

In March 2008, the parties exchanged two drafts of potential agreements. *See* Sullivan Decl. ¶ 10. The draft contracts were provided by United Coal's sales representative for discussion purposes, and each contained a "header" on the first page of the document that indicated the document was a "Draft." *See id.* Additionally, each page of the documents further contained a horizontal watermark of the word "DRAFT" in capital letters across the middle of the page. *See id.* Differences arose regarding various contract provisions, including but not limited to purchase option, force majeure, demurrage charges, choice of law provisions and dispute resolution procedures. *See id.* Moreover, by March 2008, the price of metallurgical coal had changed dramatically since the parties' earlier negotiations. *See id.* ¶ 11. In early April 2008, representatives of United Coal met with representatives of Italiana Coke in New York City. *See* Compl. ¶ 31. United Coal wanted to continue negotiating a potential sale and purchase agreement for the 2008-2009 coal year, *see* Sullivan Decl. Ex. D (United Coal's Complaint ¶ 12). *See* Compl. ¶ 33. Italiana Coke, however, took the position that a contract had already been finalized in December 2007. *See* Compl. ¶ 32. The parties then resolved certain issues relating to the conclusion of the prior year's contract and left open the resolution of any new contract for the 2008-2009 year. *See* Compl. ¶ 34.

On April 15, 2008, Italiana Coke wrote to United Coal (at its address in Bristol, Virginia) and insisted that the parties had entered into a binding agreement at a meeting held in Stockholm, Sweden in December 2007. *See* Sullivan Decl. ¶ 12. Italiana Coke demanded that United Coal confirm that it would provide coal under that purported contract and that if United Coal would not agree to be bound by the purported agreement, Italiana Coke would "be left with no other alternative than taking action to protect our interests." *See* Sullivan Decl. ¶ 12 & Ex. A (Italiana Coke's April 15, 2008 letter). This exchange took place between Italy and Virginia. *See* Ex. A.

4

On April 18, 2008, United Coal (from its address in Bristol, Virginia) responded to Italiana Coke, noting that the parties had never "agreed upon and executed a written agreement for the 2008-2009 coal year" and that "[b]oth parties plainly understood that unless and until a written contract was executed by both, neither would be contractually bound." *See* Sullivan Decl. ¶ 13. United Coal stated that, while the parties were not contractually bound to each other for the 2008-2009 coal year, United Coal remained interested in continuing negotiations to reach a mutually acceptable 2008-2009 sale and purchase agreement. *See id.* United Coal invited Italiana Coke to further discuss the matter. *See id.* Ex. B (United Coal's April 18, 2008 letter).

On May 6, 2008, United Coal (at its address in Bristol, Virginia) received a letter from Italiana Coke's New York counsel contending that the parties had "a valid and enforceable contract" for the 2008-2009 coal year, and demanding that United Coal confirm, by May 13, 2008, that it would "abide by the terms" of the unsigned agreement and agree to make its first delivery of coal to Italiana Coke in Norfolk, Virginia, in June 2008. *See id.* ¶ 14 & Ex. C (Italiana Coke's counsel's May 6, 2008 letter).

Because it was apparent from Italiana Coke's communications that there was an irreconcilable difference of opinion as to the existence of a binding and enforceable 2008-2009 agreement, United Coal filed a declaratory judgment action in the Eastern District of Virginia, Norfolk Division, on May 7, 2008. *See id.* ¶ 15 & Ex. D (United Coal's Complaint). The Eastern District of Virginia is the locale where the purported contract would be performed and where Italiana Coke was demanding performance in June 2008. *See id.* ¶¶ 5-6. United Coal alleged that Italiana Coke's insistence that an enforceable contract existed, coupled with its demand for a delivery of coal in June 2008 and assertion of damages, "creates significant uncertainty for United Coal, impairs its ability to negotiate with other companies for the sale and

delivery of its finite amount of metallurgical coal during the time period at issue, and creates substantial logistical difficulties in its business operations." *See* Ex. D ¶ 20.    United Coal further alleged that "without a prompt determination of whether or not a binding and enforceable agreement exists between the parties for the 2008-2009 year," United Coal would not know whether it is exposing itself to liability by refusing to accede to Italiana Coke's demands. *See id.* ¶ 21.  Thus, United Coal sought a declaratory judgment to clarify and settle "the respective legal rights and obligations of the parties" and to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action." *See id.* ¶ 22.

On May 12, 2008, United Coal's counsel wrote to Italiana Coke's counsel and advised that, in light of the assertions in Italiana Coke's May 6th letter, and "the practical business exigencies raised by the disagreement" between the parties, United Coal had filed a declaratory judgment action in the Eastern District of Virginia.  Counsel provided a courtesy copy of the Complaint and Summons, and asked Italiana Coke's counsel if counsel was authorized to accept service of process for Italiana Coke. *See* Sullivan Decl. ¶ 16 & Ex. E (United Coal's counsel's letter of May 12, 2008).

Italiana Coke's counsel did not respond to the inquiry regarding whether counsel was authorized to accept service of process.  Rather, on May 20, 2008, Italiana Coke proceeded to file suit in this Court against United Coal seeking (i) a declaration that the parties had a valid and enforceable contract, (ii) specific performance of the purported contract, and (iii) damages for breach of the purported contract. *See* Compl., Prayer for Relief (a), (b), (c).  Among other things, Italiana Coke alleged that in December 2007 the parties had "entered into a valid, binding and enforceable contract for the sale of coal, from April 1, 2008 – March 31, 2009" and that United Coal was seeking to "avoid the terms of that valid and enforceable contract." *See id.* ¶¶

6

44, 50.  In its Prayer for Relief, Italiana Coke requested, *inter alia*, that the Court enter a declaration that "a binding, valid and enforceable contract was entered into by the parties for the purchase and sale of coal for the one-year period commencing April 1, 2008." *See id.* Prayer for Relief (a).

It was only after filing this lawsuit that Italiana Coke's counsel then informed United Coal's counsel that his firm was not authorized to accept service on behalf of Italiana Coke. *See* Sullivan Decl. ¶ 17 & Ex. F.  On May 23, 2008 United Coal served Italiana Coke through the application of the provisions of Article 10 of the Hague Convention on Service of Process, transmitting a copy of the Summons and Complaint by Federal Express to Dr. Massimo Busdranni (Italiana Coke's Chief Executive Officer). *See id.* ¶ 18.  Italiana Coke was served with the Summons and Complaint in the Virginia federal action on Tuesday, May 27, 2008, the same date that United Coal was served with process in this action. *See id.* ¶ 19.

Italiana Coke is an Italian corporation with its headquarters in Italy.  Compl. ¶ 2.  The Complaint filed by Italiana Coke does not allege that Italiana Coke has offices or other presence in New York.  Nor does it allege that the purported contract was negotiated in New York or that it was to be performed in New York; rather, it maintains that the contract it claims to exist was negotiated in Europe (Stockholm, Sweden) and in exchanges between Italy and Virginia. *See id.* ¶¶ 13, 16-24, 26-27, 29.  Italiana Coke also claims that the alleged contract requires performance (the delivery of coal) in Norfolk, Virginia. *See id.* ¶¶ 28, Prayer for Relief (b).

United Coal is a Virginia limited liability company with its headquarters in Bristol, Virginia. *See id.* ¶ 3.  Through its subsidiaries, United Coal mines coal in Virginia, Kentucky, and West Virginia. *See* Sullivan Decl. ¶ 2.  Its international sales are shipped "FOBT" from Norfolk, Virginia. *See* Compl., Exhibit A; Sullivan Decl. ¶ 2.  United Coal has no offices or

operations in New York, and does not otherwise regularly transact business in New York. *See* Sullivan Decl. ¶ 3.

## ARGUMENT

### I.     This Court Lacks Personal Jurisdiction Over United Coal

Italiana Coke bears the burden of establishing a prima facie case that either general or specific personal jurisdiction exists over United Coal. *See Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir. 1985); *N.Y. C.P.L.R. §§ 301-302.* Italiana Coke cannot simply rest on the bare allegations of its Complaint, and must come forward with facts, by affidavit or otherwise, that support personal jurisdiction. *See id.* Conclusory allegations are insufficient to establish a prima facie case that personal jurisdiction exists. *See, e.g., Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir. 1998). And, in considering the merits of United Coal's motion to dismiss, this Court may receive and weigh evidence, including affidavits, outside of the pleadings. *Bensusan Rest. Corp. v. King,* 937 F. Supp. 295 (S.D.N.Y. 1996). As set forth below, the Complaint fails to allege facts sufficient to support either general or specific jurisdiction over United Coal. Indeed, the declaration and exhibits submitted in support of United Coal's motion shows that no basis for personal jurisdiction exists.

### A.     This Court lacks general jurisdiction over United Coal because United Coal does not continuously and systematically do business in New York.

For this Court to exercise general jurisdiction over United Coal under § 301 of the C.P.L.R., Italiana Coke must demonstrate that United Coal is "engaged in such a continuous and systematic course of 'doing business' in New York, [] as to warrant a finding of its presence in this jurisdiction." *Mantello v. Hall*, 947 F. Supp. 92, 96-97 (S.D.N.Y. 1996) (granting motion to dismiss for lack of personal jurisdiction). Courts evaluate several factors to determine whether this stringent "doing business" standard has been satisfied, including the existence of an office in

New York, solicitation of business in this state, the existence of a bank account or other property in New York, and the presence of employees within the state. *See Hoffritz*, 763 F.2d at 58.

As set forth below, the Complaint does not even attempt to allege that general jurisdiction exists over United Coal in New York, and the accompanying declaration demonstrates that no basis for general jurisdiction exists. United Coal has no office, warehouse, bank account, other property, telephone number, or employees in New York. *See* Sullivan Decl. ¶ 3. In short, United Coal has had nothing close to the "continuous and systematic" contacts required to justify the exercise of general jurisdiction over it in New York, and the Complaint does not allege otherwise.

> **B.    The Court lacks specific jurisdiction over United Coal because United Coal does not engage in purposeful activities in New York and there is no substantial relationship between the claims asserted and the state of New York.**

Similarly, Italiana Coke cannot establish specific jurisdiction over United Coal because the Complaint fails to allege that United Coal has engaged in purposeful activities in New York, and that there is a substantial relationship between the claims asserted and the state of New York.

When a plaintiff asks a New York court to assert personal jurisdiction over a non-resident, a two-pronged analysis is undertaken. First, does the New York "long-arm" statute authorize jurisdiction? If the exercise of personal jurisdiction is appropriate under the statute, the court then must decide whether the exercise of jurisdiction comports with due process. *See Bensusan*, 937 F. Supp. at 295. As the plaintiff here, Italiana Coke must allege facts that make a prima facie showing of personal jurisdiction over United Coal. *See, e.g., Jazini*, 148 F.3d at 184 ("Our cases show that . . . a plaintiff challenged by a jurisdiction testing motion may defeat the motion by . . . making a prima facie showing of jurisdiction") (internal quotations and citations omitted); *Lipin v. Hunt*, 538 F. Supp. 2d 590, 597 (S.D.N.Y. 2008) ("In order to survive a motion

to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists") (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)).  It has not, and indeed, cannot do so.

The New York long-arm statute authorizes a court to exercise jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." *N.Y. C.P.L.R. § 302(a)(1)*.  The New York Court of Appeals interprets this statute "to require a defendant to have 'engaged in purposeful activities' in New York, and [that] there be a 'substantial relationship between the transaction and the claim asserted.'" *Realuyo v. Villa Abrille*, No. 01 Civ. 10158 (JGK), 2003 U.S. Dist. LEXIS 11529, at *15 (S.D.N.Y. July 7, 2003) (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E. 2d 40, 43-44 (N.Y. 1988)).

"A non-domiciliary transacts business under CPLR § 302(a)(1) when he purposefully avails himself of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).  Determining whether a non-domiciliary transacts business in New York requires an analysis of the "totality of the circumstances."  The Second Circuit applies a multi-factor test to determine whether a defendant "transacts business" in New York, examining: (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York; (3) the effect of any choice-of-law clause in any such contract; and (4) whether the contract requires payments or notices to be sent into New York. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004).

An analysis of these factors militates against a finding that United Coal "transacted business" in New York with respect to the purported contract that Italiana Coke alleges.  First,

there is no allegation, nor could there be, that any alleged ongoing contractual relationship between United Coal and Italiana Coke involves a New York corporation. Italiana Coke is an Italian Corporation with no office, factory, or place of business in New York. United Coal is a Virginia limited liability company with no presence in New York. *See* Sullivan Decl. ¶ 3.

Second, the alleged agreement that is the subject of this lawsuit was not negotiated or executed in New York. There is, of course, no executed contract: that is the source of the debate. But there are also no allegations of contractual negotiations in New York. While the parties did meet briefly in New York on April 4, 2008, that fact is jurisdictionally irrelevant because the contract that Italiana Coke claims to exist, and that it expressly seeks to enforce, according to Italiana Coke, was purportedly made months earlier in Europe. As the Second Circuit recognized in *Cutco Industries*, a non-domiciliary's attempts to renegotiate an agreement by visiting the plaintiff's New York office is "irrelevant" to a jurisdictional analysis. *See Cutco Indus.*, 806 F.2d at 367; *see also General Instrument Corp. v. Tie Mfg., Inc.*, 517 F. Supp. 1231, 1232 (S.D.N.Y. 1988) (defendant's visit to New York to discuss the termination of a contract was insufficient to confer jurisdiction under CPLR § 302).

Third, the alleged contract did not require payments or notices to be sent into New York, nor was it to be performed in New York. Under the purported agreement, United Coal would be required to sell coal to Italiana Coke, in Virginia, which coal would then be shipped overseas from Norfolk, Virginia. Italiana Coke would pay United Coal's bank in Tennessee. *See* Sullivan Decl. ¶ 5.

The written and executed contracts between United Coal and Italiana Coke for prior years contained provisions calling for the application of New York law, and for the resolution of disputes through binding arbitration in New York. Italiana Coke apparently contends that those

provisions also were to be part of the parties' new contract. While those provisions were not acceptable to United Coal—in connection with the 2008-2009 contracts, United Coal wanted the application of Virginia law and a Virginia judicial, as opposed to arbitral, forum—this Court need not address those unresolved contract terms to resolve the jurisdictional issue. "[A] choice of law provision in a contract does not constitute a voluntary submission to personal jurisdiction." *Cutco Indus.,* 806 F.2d at 366; *see also Galgay v. Bulletin,* 504 F.2d 1062, 1066 (2d Cir. 1974); *Berkshire Capital Group, LLC v. Palmet Ventures, LLC*, No. 06 Civ. 13009 (PAC), 2007 U.S. Dist. LEXIS 69987, at *9 (S.D.N.Y. Sept. 21, 2007) (holding that a choice of law provision is "certainly not dispositive on the issue of whether defendants were transacting business in New York sufficient to create personal jurisdiction under [CPLR § 302]"). Regardless of whether the purported contract was to be governed by Virginia law—as United Coal desired—or New York law—as Italiana Coke desired—the totality of circumstances does not support the claim that United Coal transacted business in New York.

Even if the Court were to conclude that the long-arm statute authorized personal jurisdiction over United Coal, the Court would then also have to determine whether asserting personal jurisdiction over United Coal would be consistent with the Due Process Clause of the United States Constitution. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 662, 475-76 (1985); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980). Due process requires that, before it be subjected to the jurisdiction of the New York courts, United Coal "purposefully avail itself" of the benefits of doing business in New York and have 'minimum contacts' with the forum state such that the 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Darby v. Compagnie Nationale Air France,* 769 F.

Supp. 1255, 1262 (S.D.N.Y. 1991) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

United Coal has no significant contact with New York. It has no office or operations in New York; it is not licensed to transact business in New York; it has no resident agent in New York; and the coal that is the subject of the alleged agreement would not pass through New York. Indeed, the principal connection that United Coal is alleged to have with New York with respect to this transaction is a brief meeting that took place in early April of 2008—several months ***after*** the contract that Italiana Coke contends exists was formed. As discussed above, that meeting is jurisdictionally irrelevant. To the extent Italiana Coke relies on the choice of law and arbitration provisions contained in the parties' earlier agreements, *see* Compl. ¶¶ 5, 10, 12, 15, they, too, are jurisdictionally irrelevant because the terms of those provisions were never invoked by either party and, in any event, those agreements expired by their own terms. In sum, United Coal's alleged conduct and connection with New York are not such that it could reasonably anticipate being haled into court here, and the Complaint does not adequately assert that United Coal carries on a "continuous and systematic" part of its general business within New York. *See Independent Nat'l Distribs., Inc. v. Black Rain Commc'ns, Inc.,* No. 94 Civ. 8464 (JFK), 1995 U.S. Dist. LEXIS 14086, at *13 (S.D.N.Y. Sept. 27, 1995) (*quoting Darby v. Compagnie Nationale Air France,* 769 F. Supp. 1255, 1262-63 (S.D.N.Y. 1991)); *see also Burger King,* 471 U.S. at 473-74. Under the circumstances, it would violate Due Process for this Court to exercise personal jurisdiction over United Coal in this matter.

## II.    Venue In This District Is Improper

The Complaint should be dismissed for the separate and distinct reason that venue in the Southern District of New York is improper. *See* FED. R. CIV. P. 12(b)(3). Simply put, Italiana

Coke fails to carry its burden of showing that venue is proper in this district because the "substantial part of the events" giving rise to this action took place outside of New York, and venue is appropriate only in the Eastern District of Virginia. *See, e.g., Caremark Therapeutic Servs. v. Leavitt*, 405 F. Supp. 2d 454, 457 (S.D.N.Y. 2006) (granting motion to dismiss for lack of venue and transferring action to appropriate district).

Italiana Coke's allegation that venue is proper in this district under 28 U.S.C. § 1391(a)(2) or (3) is belied by the facts. *See* Compl. ¶ 5. Section 1391(a)(2) provides that a civil action may be brought in "a judicial district in which a **substantial** part of the events or omissions giving rise to the claim occurred, or a substantial part of [the] property that is the subject of the action is situated." 28 U.S.C. § 1391(a)(2) (emphasis added). The Second Circuit has instructed district courts to "take seriously the adjective 'substantial'" in construing "the venue statute strictly." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005).

Here, the negotiations over the purported contract at issue took place in Stockholm, Sweden, and in exchanges between Italy and Virginia. *See* Compl. ¶¶ 13, 16-24, 26-27, 29. The Complaint alleges that the contract requires performance in Norfolk, Virginia. Compl. ¶¶ 28, Prayer for Relief (b). The coal to be shipped under the terms of the purported contract is mined in Virginia, and shipped "FOBT" from Norfolk, Virginia. Sullivan Decl. ¶ 6. Conversely, the only pertinent allegation in the Complaint concerning New York is a single meeting that took place months after the purported formation of the contract. Compl. ¶ 31.

The "fall-back" provisions of 28 U.S.C. § 1391(a)(3) are similarly inapplicable. *See* 28 U.S.C. § 1391(a)(3) (venue proper in a judicial district in which defendant is subject to personal jurisdiction "**if** there is no district in which the action may otherwise be brought.") (emphasis added). Section 1391(a)(3) is inapposite, not only because the Court lacks personal jurisdiction

over United Coal, but "because there is a forum available to the Plaintiff[]...should [it] choose to use it." *3H Enters., Inc. v. Dwyre*, 182 F. Supp. 2d 249, 258 (N.D.N.Y. 2001) (dismissing action as to individual defendant for improper venue). Where, as here, the defendant is a corporation, the "corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). At the time this action was commenced, United Coal, a Virginia limited liability company, was headquartered in Bristol, Virginia, and had already filed a suit—involving the identical parties and issues involved in this action—in the Eastern District of Virginia. Because Italiana Coke could have initiated its claims in the Eastern District of Virginia, venue is not proper here under §1391(a).

**III.     Alternatively, The Court Should Transfer This Action To The Eastern District of Virginia For Consolidation With The First Filed Action**

If the Court determines that it lacks personal jurisdiction over United Coal, it can, in its discretion, transfer the matter to a court that has jurisdiction over United Coal (as opposed to dismissing the action). *Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 112 (2d. Cir. 2001) ("The district court has this power to transfer venue even if it lacks personal jurisdiction over the defendants."); *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 78 (2d. Cir. 1978).

Even assuming that this Court has personal jurisdiction over United Coal—and it does not—and, even assuming that venue is proper in this district—and it is not—transfer to the Eastern District of Virginia is still warranted "in the interest of justice." *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (Section 1406(a) "authorize[s] the transfer of [a] cas[e] ... whether the court in which it

was filed had personal jurisdiction over the defendants or not."); *Corke*, 572 F.2d at 79 (same). The decision to transfer "lies within the sound discretion of the district court," *Minette v. Time Warner*, 997 F.2d 1023, 1026 (2d Cir. 1993), upon consideration of the general purpose of § 1406: to "remove[e] whatever obstacles may impede and expeditious and orderly adjudication of cases and controversies on the merits." *Goldlawr*, 369 U.S. at 466-67; *Corke*, 572 F.2d at 80 (citing *Goldlawr*).

Transfer to the Eastern District of Virginia would be appropriate here. The Eastern District of Virginia has jurisdiction over both United Coal and over Italiana Coke since Italiana Coke claims to have entered into an agreement with a Virginia company for a contract that was to be performed in Norfolk, Virginia. If transferred, the action could then be consolidated with the first-filed action and all matters relating to the dispute could be resolved in a single forum. Likewise, Virginia is the only forum with a strong connection to the matter. United Coal is based in Virginia, its witnesses and documentary evidence are in Virginia, and Italiana Coke is demanding performance of the alleged contract in Virginia. Finally, the docket conditions of the two courts support transfer, as the matter is likely to be resolved more quickly in Virginia.

According to court statistics gathered by the federal judiciary, the median time from filing to trial for a civil matter in this Court is approximately 26 months, compared to nine months for civil matters filed in the Eastern District of Virginia. *See* Federal Court Management Statistics 2007, www.uscourts.gov/cgi-bin/cmsd2007.pl. The purpose of the declaratory relief United Coal seeks is to resolve, as promptly as possible, the uncertainty that Italiana Coke's demands have created; transfer of the matter to the Eastern District of Virginia would further that goal and benefit both parties. All of these factors make transfer a particularly appropriate way to

cure this Court's lack of personal jurisdiction over United Coal in this case and the lack of proper venue in this Court.

## IV. Because The Eastern District Of Virginia Should Decide Whether The First-Filed Rule Applies To This Action, This Court Should Issue A Stay Pending That Determination

This case constitutes Italiana Coke's reactionary response to United Coal's first-filed lawsuit in the Virginia federal court. Here, Italiana Coke seeks a declaration that the parties have a binding contract and that the parties must submit any disputes involving that contract to arbitration. Thus, this action simply seeks a contrary declaration to the first-filed lawsuit already pending in the Eastern District of Virginia. Under these circumstances, this Court should stay the matter until the Eastern District of Virginia has had the opportunity to decide whether the "first filed" rule applies to this case, and whether the Eastern District of Virginia, as opposed to this Court, should resolve the dispute between the parties.

The Second Circuit has recognized that "[a]s a general rule, where there are two competing lawsuits, the first suit should have priority. . . . This rule embodies considerations of judicial administration and conservation of resources by avoiding duplicative litigation and honoring the plaintiff's choice of forum." *Employers Ins. of Wasau v. Fox Entm't Group, Inc.*, 522 F.3d 271 (2d Cir. 2008) (internal quotations and citations omitted); *accord The Learning Network, Inc. v. Discovery Commc'ns, Inc.*, 11 Fed. Appx. 297, 300-01 (4th Cir. 2001) ("[t]he Fourth Circuit has recognized the 'first to file' rule of the Second Circuit, giving priority to the first suit absent showing of a balance of convenience in favor of the second").

Here, the parties have filed separate lawsuits seeking a resolution of precisely the same contract dispute. Indeed, both parties have sought identical declaratory relief, each asking for a judicial determination of whether a binding and enforceable contract does, in fact, exist. To be

sure, Italiana Coke's complaint in the case at bar raises breach of contract and promissory estoppel claims in addition to a claim for declaratory judgment, but since those claims arise out of the same "transaction" underlying United Coal's declaratory judgment action, they should have been (and still can be) raised as compulsory counter-claims in the answer to United Coal's Eastern District of Virginia complaint. *See* FED. R. CIV. P. 13(a).

Moreover, the validity of Italiana Coke's additional claims are entirely dependent on the outcome of the declaratory judgment claim. That is, they hinge on whether there is, in fact, a binding and enforceable agreement. For this reason, the declaratory judgment action will dispose of this case as far as the courts are concerned. If either court holds that no binding agreement exists, the matter will be entirely concluded. And, even if either court were to hold that a binding agreement exists, neither court would then continue to retain jurisdiction over the case since, as Italiana Coke maintains, the purported contract mandates that Italiana Coke's remaining claims be resolved by arbitration. Accordingly, the only issue that either court will ultimately decide is the issue framed by the parties' mirror-image declaratory judgment claims.

There is no dispute that United Coal was the first party to file a claim for declaratory relief. As noted above, United Coal filed its Complaint on May 7, 2008, and Italiana Coke did not file until nearly two weeks later (and only after being provided with a courtesy copy of United Coal's complaint and summons). While service of process was technically simultaneous, that is of no moment. This Court has held that "[t]he relative dates of service of the complaints are irrelevant to the inquiry of which action was first filed." *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 511 n.4 (S.D.N.Y. 2004); *Berisford Capital Corp. v. Central States, S.E. & S.W. Areas Pension Fund*, 677 F. Supp. 220, 222 n.1 (S.D.N.Y. 1988) ("The 'first service' rule is not the law of this circuit")

18

With this in mind, the Eastern District of Virginia should properly be afforded the first opportunity to make the decision as to which court—it or this Court—should ultimately decide the merits of the case. This Court "has laid down a bright-line rule for situations such as this: "The court before which the first-filed action was brought determines which forum will hear the case." *Schnabel*, 322 F. Supp. 2d at 511 n.4 (internal quotations and citation omitted); *see Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 53 n.2 (S.D.N.Y. 2001) ("[t]he court in which the first-filed case was brought decides whether the first-filed rule or an exception to the first-filed rule applies"); *Ontel Prod. Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995) ("the court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies"); *accord Christian Broad. Network v. Busch*, No. 2:05cv558, 2006 U.S. Dist. LEXIS 1868, at *15 (E.D. Va. Jan. 9, 2006) ("[i]t is the court in which the first-filed action was brought that should decide whether an exception to the first-filed rule applies"); *Affinity Memory & Micro, Inc. v. K&Q Enters., Inc.*, 20 F. Supp. 2d 948, 954 (E.D. Va. 1998) ("[b]ecause the Virginia action was filed first, this is the appropriate forum . . . to decide whether to give effect to the first-filed rule").

Because the Eastern District of Virginia should be the court that renders a decision on the applicability of the first filed rule to this case, if this Court determines not to dismiss or transfer the action, at a minimum, it should stay this action pending the Eastern District of Virginia's decision. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). A stay of this action will prevent judicial redundancy by avoiding multiple, and potentially inconsistent,

19

decisions. *See PRL USA Holdings, Inc. v. Carlberg Design, Inc.*, No. 05 Civ. 588 (JGK), 2005 U.S. Dist. LEXIS 39448, at *2 (S.D.N.Y. Jan. 18, 2006) (holding that, where Central District of Illinois was first-filed court, "[u]ntil that Court has reached its decision, this Court will stay this action in order to avoid duplication of efforts and to assure that there is no interference with the decision of the Central District of Illinois"); *National Union Fire Ins. Co. of Pittsburgh, PA v. Liberty Mut. Fire Ins. Co.*, No. 95 Civ. 5262 (DLC), 2005 U.S. Dist. LEXIS 19778, at *2 (S.D.N.Y. Sept. 7, 2005) (staying action thirty days to allow party to bring a motion in the court where first action was filed and stating, "In the event that motion is brought, this action is stayed until the motion is resolved").

## CONCLUSION

For the reasons set forth above, this Court should dismiss this action for lack of personal jurisdiction over United Coal, or alternatively, transfer the case to the Eastern District of Virginia for consolidation with the first-filed action already pending there.  If the Court determines that it will not dismiss or transfer the action, then it should stay the matter until the Eastern District of Virginia decides which of the two actions should proceed.

Dated: New York, New York
     July 1, 2008

                          Respectfully submitted,

                          _Michael C. Hartmere_

Edmund M. O'Toole (EO-7939)
Michael C. Hartmere (MH-6839)
VENABLE LLP
1270 Avenue of the Americas, 25th Floor
New York, New York  10020
Phone: (212) 953-3388
Fax: (212) 307-5598
emotoole@venable.com
mchartmere@venable.com

Brian L. Schwalb
(*pro hac vice application pending*)
Meredith L. Boylan (MB-2718)
VENABLE LLP
575 7th Street, NW
Washington, DC  20004-1601
Phone:  (202) 344-4356
Fax:  (202) 344-8300
blschwalb@venable.com
mlboylan@venable.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of July 2008, I caused a true and correct copy of the foregoing MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, TRANSFER OR STAY THE PROCEEDINGS to be filed with the Court's CM/ECF management system, which caused notice of the foregoing to be served electronically upon the following:

> Joseph De Simone, Esq.
> Leslie E. Chebli, Esq.
> Mayer Brown LLP
> 1675 Broadway
> New York, NY 10019-5820
> Tel: (212) 506-2500
> Fax: (212) 262-1910

                            _____/s/_____
                            Michael C. Hartmere