UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ITALIANA COKE, S.R.L., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  08-CV-4725 (JGK) |
| | ) | |
| UNITED COAL COMPANY, LLC, | ) | Electronically Filed |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF BRIAN D. SULLIVAN IN SUPPORT OF MOTION TO DISMISS

I, Brian D. Sullivan, declare as follows:

1.     I am Vice President, Secretary and General Counsel for United Coal Company, LLC ("United Coal"), the defendant in the action captioned above.  This Declaration is submitted as part of United Coal's Motion to Dismiss or, in the Alternative, to Transfer or Stay the Proceedings, and to present the Court with facts establishing that personal jurisdiction does not exist over United Coal in this action.  I have personal knowledge of the facts stated herein unless otherwise stated and, if called upon to do so, I could and would competently testify thereto.

### UNITED COAL

2.     United Coal is a Virginia limited liability company with its headquarters in Bristol, Virginia.  Through its subsidiaries, United Coal mines coal in Virginia, Kentucky, and West Virginia.  Its international sales are shipped "FOBT" (meaning title and risk of loss to the coal passes when the coal is loaded into a vessel and is stowed and trimmed) from ports including Norfolk, Virginia.

3.     United Coal has no mines, offices, warehouses, factories, other real property, bank accounts, telephone listings, employees or other operations in New York.  It does not regularly

transact business in New York.

## UNITED COAL'S RELATIONSHIP WITH ITALIANA COKE

4.    United Coal, through its operating subsidiaries Wellmore Coal Company, LLC and Pocahontas Coal Company, LLC has supplied metallurgical or hard coking coal to Italiana Coke, S.R.L. ("Italiana Coke") since 2006.

5.    Since 2006, United Coal and Italiana Coke's commercial relationships have been governed by formal one-year, written and executed "Sale and Purchase Agreements" that have run from April 1st through March 31st of the following year.  The coking coal has been supplied to Italiana Coke by United Coal through two of its operating subsidiaries, Wellmore Coal Company, LLC, located in Big Rock, Virginia, and Pocahontas Coal Company, LLC, located in Raleigh County, West Virginia.  The coal that has been sold in the past by United Coal to Italiana Coke has been on "FOBT" terms, or free-on-board, stowed and trimmed in an oceangoing vessel chartered by Italiana Coke.  All of the coal is either mined in Virginia or West Virginia, and is shipped by rail at the expense of United Coal, to a Virginia loading port in the Hampton Roads in Virginia.  Under export contract such as the ones United Coal has had in the past with Italiana Coke, the title to and risk of loss of the coal passes in Virginia once the coal is loaded into a vessel.  And, in the past invoices under previous contracts have been paid by Italiana Coke by wire transfer of funds to United Coal's bank located in Memphis, Tennessee. The parties executed written Sale and Purchase Agreements for the years 2006-2007 and 2007-2008.  By their terms, those contracts have expired.

6.    In late 2007, United Coal and Italiana Coke began negotiating a potential new Sale and Purchase Agreement for the 2008-2009 year for Wellmore and Pocahontas coal to be delivered in Norfolk, Virginia.

7.     It was United Coal's understanding and, upon information and belief, Italiana Coke's understanding, that any new contract would require the parties' agreement on all material terms and conditions set forth in a final written and executed contract, and that no binding or enforceable agreement would exist unless and until a written agreement was executed. Consequently, both Italiana Coke and United Coal remained at risk for changes in the market price until a final agreement was executed.

8.     Consistent with past practice, the parties exchanged, discussed, and negotiated a variety of potential contract terms relating to, among other things, price, quantity, moisture levels, transportation issues, force majeure events, additional purchase options and delivery requirements with the understanding that, before a binding agreement would exist, all terms had to be agreed upon and had to be expressed in a final written, executed contract for the 2008-2009 year.

9.     These negotiations for the potential 2008-2009 Sale and Purchase Agreement took place in person by representatives of both parties in Europe and through an exchange of correspondence and communications between the parties located in Virginia and Italy, respectively.

10.     In March 2008, the parties exchanged two drafts of potential agreements for 2008-2009 (for 40,000 metric tonnes each to be supplied to Italiana Coke by Wellmore and Pocahontas). The draft contracts were provided by United Coal's sales representative for discussion purposes, and each contained a "header" on the first page of the document that indicated the document was a "Draft". Additionally, each page of the documents further contained a horizontal watermark of the word "DRAFT" in capital letters across the middle of the page. Ultimately, differences arose between the parties regarding various provisions in the drafts, including, but not limited to,

purchase option, force majeure, demurrage charges, choice of law provisions and dispute resolution procedures.

11.    The price of metallurgical coal changed dramatically between the time of the parties' original negotiations for the 2008-2009 agreement and the drafts exchanged in March 2008.

12.    On April 15, 2008, Italiana Coke wrote to United Coal at its address in Bristol, Virginia and insisted that the parties had entered into binding agreements at an in-person meeting held in Stockholm, Sweden in December 2007.  Italiana Coke demanded that United Coal confirm that it would provide coal under that "contract."  Italiana Coke indicated that if United Coal would not agree to be bound by the purported agreement, Italiana Coke would "be left with no other alternative than taking action to protect [its] interests."  Attached hereto as Exhibit A is a true and correct copy of Italiana Coke's April 15, 2008 letter.

13.    On April 18, 2008, United Coal, from its address in Bristol, Virginia, responded to Italiana Coke, noting that the parties had never "agreed upon and executed a written agreement for the 2008-2009 coal year" and that "[b]oth parties plainly understood that unless and until a written contract was executed by both, neither would be contractually bound."  United Coal further stated that, while the parties were not contractually bound to each other for the 2008-2009 coal year, United Coal remained interested in continuing negotiations to reach a mutually acceptable 2008-2009 Sale and Purchase Agreement.  United Coal invited Italiana Coke to further discuss the matter.  Attached hereto as Exhibit B is a true and correct copy of United Coal's April 18, 2008 letter.

14.    On May 6, 2008, United Coal, at its address in Bristol, Virginia, received a letter from Italiana Coke's New York counsel contending that the parties had "a valid and enforceable contract" for the 2008-2009 coal year, and demanding that United Coal confirm, by May 13,

2008, that it would "abide by the terms" of the unsigned "agreement" and agree to make its first delivery of coal to Italiana Coke in Norfolk, Virginia, in late June 2008. Attached hereto as Exhibit C is a true and correct copy of Italiana Coke's counsel's May 6, 2008 letter.

15.     United Coal filed suit against Italiana Coke in the Eastern District of Virginia the following day. Attached hereto as Exhibit D is a true and correct copy of United Coal's Complaint and Summons filed on May 7, 2008 in the Eastern District of Virginia, Norfolk Division.

16.     On May 12, 2008, United Coal's counsel wrote to Italiana Coke's counsel and advised that, in light of the assertions in Italiana Coke's May 6th letter, and "the practical business exigencies raised by the disagreement" between the parties, United Coal had filed a declaratory judgment action in the Eastern District of Virginia. United Coal's counsel provided a courtesy copy of the Complaint and Summons, and asked Italiana Coke's counsel if counsel was authorized to accept service of process for Italiana Coke. Attached hereto as Exhibit E is a true and correct copy of United Coal's counsel's letter of May 12, 2008.

17.     By email dated May 23, 2008, Italiana Coke's counsel informed United Coal's counsel that his firm was not authorized to accept service on behalf of Italiana Coke. Attached hereto as Exhibit F is a true and correct copy of Italiana Coke's counsel's email dated May 23, 2008.

18.     On May 23, 2008 United Coal served Italiana Coke through the application of the provisions of Article 10 of the Hague Convention on Service of Process, transmitting a copy of the Summons and Complaint by Federal Express to Dr. Massimo Busdranni (Italiana Coke's Chief Executive Officer).

19.     Italiana Coke was served with the Summons and Complaint in the Virginia federal action on Tuesday, May 27, 2008, the same date that United Coal was served with process in this

action.    Attached hereto as Exhibit G are true and correct copies of the return of service

documents in the Eastern District of Virginia action.

I declare under penalty of perjury that the foregoing is true and correct and that this

Declaration was executed on June 30, 2008, at Bristol, Virginia.

BRIAN D. SULLIVAN



# ■ Italiana Coke

17014 CAIRO MONTENOTTE (SAVONA)
Via Stalingrado, 25
Tel. +39 019.506711 Fax +39 019.5067900

Cairo, April 15 2008

Messrs.
UNITED COAL COMPANY
1005 Glenway Avenue
Bristol, Virginia 24201
U S A

K.A. MR. RALPH HARING

CC: MR. G. CHILCOT
CC: Agenzia Carboni-Genoa

Dear Ralph,

Reference is made to the meeting in New York on April 3rd.

1) We were shocked at your allegation, made at such meeting and confirmed in the agreement entered on the same date, that no contract exists for the supply of the coal in the year beginning on the April 1st. In fact a contract obviously exists and both ourselves and yourselves have behaved in the last months on such grounds.

2) For sake of clarity we set out here below our views regarding the said contract.

i) a binding agreement was entered at the meeting held in Stockholm at the beginning of December last year. The terms of such agreement are set out in detail in Agenzia Carboni's e-mail 7.12.2007 and in our (Stefano's) e-mail 10.12.2007.

ii) on the 14.12.2007 you sent us a message confirming the terms indicated in the above mentioned messages but requiring to change the Pocahontas moisture quality from 8% to 9% max. Our agreement on such proposal of amendment of the contractual conditions was immediately communicated.

Following such exchanges the agreement binding the parties resulted to be the one entered at the meeting in December, amended as above. However, should you maintain that the proposal set out in your message 14.12.2007 was not accepted, the only consequence would be that the unamended agreement mentioned under paragraph i) above would apply.

iii) on the 26.3.2008 you sent us drafts of contracts. In your message you pointed out that you proposed some further amendments concerning 10% buyers' option, clause 15 and force majeure clause. This message and the amended draft contracts attached thereto (which, inter alia, contain the 9% moisture provision previously agreed) amount to a confirmation of the existence of the binding agreement quoted above, the amendment of which was proposed but never discussed or agreed upon due to the stance adopted by you at the meeting in New York.

3) As the position appearing from the facts outlined at paragraph 2) above cannot be denied, we still believe that the statements you rendered at the meeting in New York result from an incomplete perusal of the documents and evidence relevant to the case. We also trust that on receipt of this message and after appreciating the indisputableness of the above, you will reconsider the position and confirm that you agree upon the existence of an ageement and that you are willing to abide by it.

Therefore, here below we set out our request of stems for the first supplies under the 2008 contracts. It is needless to say that failing the confirmation within the relevant deadline that you are willing to perform the existing agreement, we would be left with no other alternative than taking action to protect our interests.

4)
Request of stem:

1

ITALIANA COKE S.r.l. – Sede Legale Via San Vincenzo, 2  16121 Genova   Capitale Sociale € 13.200.000,00 i.v.
Codice Fiscale 01741840993
Partita IVA 01741840993 - Partita IVA CEE IT01741840993



# Italiana Coke

17014 CAIRO MONTENOTTE (SAVONA)
Via Stalingrado, 25
Tel. +39 019.506711 Fax +39 019.5067900

we hereby request you to confirm following stems:

- Period of loading in Norfolk: June 20-30, 2008
- Quantities and qualities:
    1) about 8/10,000 metric tons of high volatile Wellmore coal
    2) about 8/10,000 metric tonf of low volatile Pocahontas coal

This message is entirely without prejudice to all our rights and remedies which are hereby expressly reserved.

With our best regards.

ITALIANA COKE S.R.L.
Via S. Vincenzo, 2 -16121 GENOVA
Cod. fisc. e Partita IVA: 01741840993
Registro imprese Genova: 0174184099:
R.E.A. Genova n.: 432165

Massimo Busdraghi   Stefano Tomisti

2

ITALIANA COKE S.r.l. – Sede Legale Via San Vincenzo, 2  16121 Genova   Capitale Sociale € 13.200.000,00 i.v.
Codice Fiscale 01741840993
Partita IVA 01741840993 - Partita IVA CEE IT01741840993



1005 Glenway Avenue
Bristol, Virginia 24201-3473
*(276) 466-3322*                    United Coal Company

April 18, 2008

VIA FACSIMILE & OVERNIGHT MAIL

Massimo Busdraghi
Stefano Tomisti
Italiana Coke S.R.L.
17104 Cairo Montenotte (SAVONA)
Via Stalingrado, 25
Tel. +39 019.506711

Dear Messrs. Busdraghi and Tomisti:

I write in response to your April 15, 2008 letter, in which you assert that you were "shocked" to learn of United's position that no contract exists for the 2008-2009 coal year. Given the circumstances, it is difficult to understand how Italiana Coke could reasonably believe a binding contract for 2008-2009 was ever reached.

As you know, unlike our fully executed 2007-2008 contract, the parties never agreed upon and executed a written agreement for the 2008-2009 coal year. Both parties plainly understood that unless and until a written contract was executed by both, neither would be contractually bound. Notably, in a March 8, 2008 email from Ralph Haring to Stefano Tomisti, Mr. Haring made it clear that "[t]he 2008 coal year contract between UCC and Italiana Coke must be concluded, agreed to, and signed by both UCC and Italiana Coke prior to any shipments under the 2008 agreement." The correspondence makes clear that while drafts were circulated, none was ever agreed upon and signed; indeed, both sides made clear that the final written contract would have to be approved before any contractual obligations would arise. Given that no signed, written contract has been effectuated for 2008-2009, United's position that we do not have a binding agreement should come as no shock to you.

Moreover, it is clear from the correspondence that there were material business terms that had not been agreed upon and which were still being negotiated. As you acknowledged in your April 15th letter, the parties had not agreed to contractual provisions concerning the "10% buyers' option," "clause 15," and the force majeure clause. These are material terms of the contract upon which we have yet to reach agreement, and for which there is no guarantee we will ever reach agreement.

While there is presently no contractual obligation for Italiana Coke to purchase, or for United to sell, 2008-2009 coal, we remain interested and willing to continue our discussions to see if a mutually acceptable contract can be reached, and we invite you to discuss this matter further with us.

Sincerely,

Brian D. Sullivan
Vice President, Secretary & General Counsel
United Coal Company

# MAYER·BROWN

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

Main Tel (212) 506-2500
Main Fax (212) 262-1910
www.mayerbrown.com

May 6, 2008

**Joseph De Simone**
Direct Tel (212) 506-2559
Direct Fax (212) 849-5559
jdesimone@mayerbrown.com

BY UPS OVERNIGHT, FAX AND EMAIL

Brian D. Sullivan
Vice President, Secretary & General Counsel
United Coal Company
1005 Glenway Avenue
Bristol, VA 24201-3473

Re:     Italiana Coke - 2008/2009 Contract

Dear Mr. Sullivan:

    We represent Italiana Coke ("IC") and are writing in response to your letter to IC, dated April 18, 2008, in which you appear to deny the existence of a binding contract for the sale of coal by United Coal Company ("United") to IC for the 2008-2009 year.  United's position is extremely troubling, especially in light of the communications between the parties which clearly reveal the existence of a valid and enforceable contract.

## I.     **Factual Background**

    As you are no doubt aware, representatives of IC and United orally agreed to the terms of a contract for the sale of coal for the 2008-2009 year at a meeting held in Stockholm, Sweden, on or around December 4, 2007 (the "Stockholm meeting").  A few days later, on December 7, 2007, Monica Zappalaglio of Agenzia Carboni  – United's agent in Italy – memorialized the terms of the agreement in an email to both IC and United that included a description of the goods to be sold (Wellmore and Pocahontas coal), the term of the agreement (April 1, 2008 to March 31, 2009), the quantity to be sold (80,000 metric tons, plus or minus 10% at the buyer's option ), and the price ($123/MTC for Wellmore and $135/MTC for Pocahontas, plus a freight fuel surcharge).  Further, Agenzia Carboni's email stated, "All other terms and conditions as per current contracts in force."  On December 10, 2007, IC followed up with an additional confirmatory email to Ralph Haring, United's Vice President of Sales, stating "we wish to confirm what we agreed . . . ." and setting forth contract terms identical to those memorialized in Agenzia Carboni's email.  Significantly, in response, on December 14, 2007, Mr. Haring sent an email to IC stating that, aside from United's request for a variance in the "contractual moisture quality" of some of the coal to be shipped, United could "confirm" the contract as memorialized in IC's email.  IC's prompt acceptance of this minor contractual modification[1]  was

---

[1]     The moisture variance request is clearly not an "essential" or "material" contract term, as evidenced by Mr. Haring's admission in his December 14, 2007 email that "[a]ll of our other customers … have agreed to this small variance." (emphasis added).

Brian D. Sullivan
May 6, 2008
Page 2

communicated by Agenzia Carboni to United.

Importantly, the drafts circulated by United's agent, Agenzia Carboni, by their clear language, indicated that a contract had been formed at the Stockholm meeting.[2]  Indeed, in an email to Agenzia Carboni, IC specifically stated that the terms and conditions in the draft contracts were in accordance with those agreed upon at the Stockholm meeting.  Moreover, although United sent IC several emails regarding production difficulties experienced at United's mines over the next several months, at no point did United ever suggest that no contract for the sale of coal had been formed for the 2008-2009 year.[3]  For example, United's email to IC dated March 4, 2008, which describes production problems at United's coal mines, concludes by stating that shipments of Wellmore coal for "next year's business," might "fall behind for the next several months."  Far from indicating a lack of agreement, this email – and others like it – indicate that both United and IC were conducting business with the understanding that a valid contract for the 2008-2009 coal year had been entered into at the Stockholm meeting.

## II.    Discussion

### A.    The Parties Agreed To Be Bound

United's letter of April 18, 2008 asserts that there is "no contractual obligation for [IC] to purchase, or for [United] to sell, 2008-2009 coal" because the parties "never agreed upon and executed a written agreement for the 2008-2009 coal year."  This assertion is contrary to the well-established legal standard for contract formation under New York Law, which holds that in certain circumstances such as ours, where all the substantial terms of a contract have been agreed upon, an informal agreement can be considered binding even if the parties contemplate subsequently memorializing their contract in a formal document.  *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984) (citing *Municipal Consultants & Publishers, Inc. v. Town of Ramapo*, 47 N.Y.2d 144, 390 N.E.2d 1143, 1145 (1979)).

Under New York law, the key to contract formation is not the existence of a signed document, but rather the intention of the parties to be bound by their agreement.  *See Bitumenes Orinoco, S.A. v. New Brunswick Power Holding Corp.*, 2007 WL 485617, at *12  (S.D.N.Y. Feb. 13, 2007) ("'What matters are the parties' expressed intentions, [their] words and deeds [] which constituted objective signs in a given set of circumstances.'") (quoting *R.G. Group, Inc.*, 751 F.2d 69 at 74).  In determining whether the parties intended to be bound, New York courts look to the following factors:

---

[2]    These draft contracts contain a New York choice of law clause, as do the parties' prior contracts for the year 2007-2008.  Accordingly, we analyze the contract herein under New York law, without prejudice to and reserving IC's right to argue that New York is not the applicable law.

[3]    As you know, IC has been extremely accommodating regarding United's production difficulties and has greatly reduced its contractual requirements to assist United.

Brian D. Sullivan
May 6, 2008
Page 3

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Orinoco, S.A.*, 2007 WL 485617, at \*12 (quoting *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)).  From the correspondence between IC and United detailed above, it is clear that these factors weigh heavily in favor of IC's claim that a valid contract was entered into at the Stockholm meeting, even in the absence of a signed contract.

First, at the time the contract was entered into, neither party made any express reservation to be bound only by a writing.[4]   Rather, all of the communications between the parties acknowledged the existence of an agreement.  Agenzia Carboni's email of December 7, 2007 stated that "we confirm with pleasure the following Terms and Conditions agreed for the contract year 2008/2009."  Similarly, IC's December 10, 2007 email to United clearly states that its purpose is to "confirm what we agreed."  Most importantly, in response, on December 14, 2007, Mr. Haring sent an email to IC stating that, aside from United's request for a variance in the "contractual moisture quality" of some of the coal to be shipped, United could "confirm" the contract as memorialized in IC's email.  Moreover, this and subsequent correspondence also evinces a clear understanding between the parties that a binding contract existed, including United's request for "a variance on our contractual moisture quality," and United's emails of February 18 and March 4, 2008, noting production delays and assuring IC that the only consequence would be that "earlier shipments … on next year's business might fall behind a few months."  (emphasis added).  Far from a reservation not to be bound except by a writing, United's language clearly indicates that it intended to be bound by the agreement reached at the Stockholm meeting.

Second, United partially performed by shipping two holds of coal to the port where IC's boat was waiting.  Although the first hold of coal was meant as a shipment under the parties' 2007-2008 coal contract, the second hold was clearly contemplated as a shipment under the parties' 2008-2009 contract, and as such, constitutes partial performance on United's part.

Third, all of the terms of the contract were agreed upon at the Stockholm meeting, as evidenced by the confirmation emails sent by both parties, which included the goods at issue, the term of the agreement, the quantity to be sold, and the price term and incorporated the remaining

---

[4]    United's assertion that its March 8, 2008 email to IC operated as an express reservation not to be bound absent a writing cannot be taken seriously, as it was sent over three months after the contract at issue had been entered into and confirmed via email, and less than a month before the start of the 2008-2009 contract term was to commence.  Indeed, this was the first time that United notified IC that the contract had to be "signed by both UCC and Italiana Coke prior to any shipments under the 2008 agreement" and indicated that certain clauses would have to be revised.

Brian D. Sullivan
May 6, 2008
Page 4

terms from the parties' existing contract for the 2007-2008 year. United's recent assertion that two minor issues – the precise wording of the force majeure clause and the "10% buyer's option" – remained to be negotiated is merely a belated effort to undermine the agreement reached in December. Tellingly, United did not even raise these issues until March 26, 2008. Moreover, even the revised draft by United accompanying the March 26, 2008 email references the "AGREEMENT made the 4[th] day of December 2007 . . . ." United's attempt to create outstanding issues is belied by the fact that all of the parties have acknowledged that the "essential" or "material" issues were agreed to orally at the Stockholm meeting.

Finally, this agreement is not the type of contract that must always be set down in a formal writing. This is evident from, *inter alia*, emails between IC and United on May 26, 2007 and June 5, 2007, in which the parties, via email, agreed to enter a contract for the sale of coal over and above their existing 2007-2008 agreement. From this prior course of dealing, it is clear that the contract at issue is not the type that requires a writing to be valid and enforceable.

B.    The Statute Of Frauds Does Not Bar The Enforcement Of The Contract

To the extent that United intends to raise a Statute of Frauds defense to bar the enforcement of the oral agreement reached by the parties, that argument will not withstand scrutiny. While a formal contract was never executed, the Statute of Frauds only requires a "writing sufficient to indicate that a contract for sale has been made … and signed by the party against whom enforcement is sought or by his authorized agent or broker." N.Y. U.C.C. 2-201(1). In this case, Agenzia Carboni's December 7, 2007 email, reciting the terms of the contract, and Ralph Haring's confirmatory email on behalf of United, bearing his signature block, clearly demonstrate that a contract was entered into by the parties at the Stockholm meeting. Because New York courts have recognized that emails satisfy the Statute of Frauds' "signed writing" requirement, the Statute of Frauds does not bar enforcement of the contract at issue. *See, e.g.*, *Rosenfeld v. Zerneck*, 4 Misc.3d 193, 195-96, 776 N.Y.S.2d 458, 460 (N.Y. Sup. Ct. 2004); *Bazak Int'l Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377, 383-85 (S.D.N.Y. 2005).

Moreover, these emails, and others exchanged between the parties, also satisfy the "merchant's exception" to the Statute of Frauds provided in the Uniform Commercial Code ("U.C.C."), which clearly states that:

> Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

N.Y. U.C.C. § 2-201(2). Significantly, courts have recognized that emails can satisfy the "writing in confirmation" requirement so as to invoke the merchant's exception. *See Bazak Int'l Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377, 383-85 (S.D.N.Y. 2005) (upholding as

Brian D. Sullivan
May 6, 2008
Page 5

enforceable contract where buyer orally agreed to purchase goods from seller, then sent an email to confirm agreement and received no repudiation from seller); *Bazak Int'l Corp. v. Mast Indus., Inc.,* 73 N.Y.2d 113, 538 N.Y.S.2d 503, 535 N.E.2d 633, 638 (1989) (*"Mast Industries"*) (holding that purchase orders retained without objection were sufficient for the purposes of the "merchant's exception" because they "afford a basis for believing that they reflect a real transaction between the parties."). In the instant case, Agenzia Carboni's December 7, 2007 email, IC's December 10, 2007 email, and United's December 14, 2007 email constitute writings "in confirmation" of the agreement reached at the Stockholm meeting, and as such, satisfy the Statute of Frauds.

      C.     <u>United is Estopped From Denying the Existence of the Contract.</u>

      Even assuming, *arguendo*, that no enforceable contract exists, the doctrine of promissory estoppel requires United to fulfill the terms of the agreement laid out at the Stockholm meeting. In New York, promissory estoppel has three elements: "'a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance.' " *Esquire Radio & Elec., Inc. v. Montgomery Ward & Co., Inc.*, 804 F.2d 787, 793 (2d Cir. 1986) (quoting Restatement (Second) of Contracts § 90 (1981)). Here, IC relied on United's promise to sell a certain amount of coal to IC over the course of the 2008-2009 coal year from the time of the Stockholm meeting up until just before the first delivery of coal was have been made in April of 2008. Because of its reliance on the agreement, IC did not contract with anyone else for the purchase of the coal it requires for the 2008-2009 year. Further, in the interim, the price of coal has risen significantly and IC will be injured if it is required to purchase its coal requirements at market prices – if it can even acquire the coal it requires – rather than at those prices negotiated and agreed upon at the Stockholm meeting. Permitting United to avoid the contract at issue in the face of the oral agreement and IC's detrimental reliance would unjustly enrich United and unfairly prejudice IC.

      D.     <u>The Oral Agreements in Enforceable Under the CISG</u>

      Finally, we note that if New York law does not apply to the instant dispute (a point we do not at all concede), the question of contract formation would be governed by the United Nations Convention on Contracts for the International Sale of Goods ("CISG") which applies to all sales transactions where the parties have their places of business in different Contracting States and have not agreed upon a choice of law provision to govern their contractual disputes. *See* S. Treaty Doc. No. 98-9 (1983), 19 I.L.M. 668 (1980-) (entered into force on Jan. 1, 1988), 52 Fed. Reg. 6262-80, 7737 (1987), U.N. Doc. A/Conf.97/18 (1980) [hereinafter "CISG"], arts. 1, 6. Both Italy and the United States are signatories to the CISG, which expressly disclaims any statute of frauds or parole evidence rule, and instead, embraces a practical approach that recognizes freedom of contract: "A contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form. It may be proved by any means, including witnesses." CISG, art. 11; *see also TeeVee Toons, Inc. v. Gerhard Schubert GmbH,*

Brian D. Sullivan
May 6, 2008
Page 6

2006 WL 2463537, at *7 (S.D.N.Y. Aug. 23, 2006) ("Unlike American contract law, the CISG contains no statute of frauds."); *Atla-Medine v. Crompton Corp.,* 2001 WL 1382592, at *5 n.6 (S.D.N.Y. Nov. 7, 2001) ("Where applicable, the CISG may render enforceable agreements not evidenced by a writing and therefore subject to the Statute of Frauds."). Thus, under the CISG, the oral agreement entered into between IC and United is a valid and enforceable contract.

*        *        *

In conclusion, because a valid and enforceable contract for the sale of coal exists between United and IC for the 2008-2009 year, and because United is currently in breach of that agreement, IC has been damaged and will continue to incur damages based on United's refusal to honor the agreement reached at the Stockholm meeting. If United does not confirm in writing that it will abide by the terms of that agreement by May 13, 2008, IC will have no choice but to pursue all available legal and equitable remedies. We look forward to your prompt response.

Very truly yours,

Joseph De Simone / al

Joseph De Simone

cc:    Massimo Busdraghi
       Pietro Palandri
       Stefano Tomisti

# PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.

DONALD N. PATTEN
ROBERT R. HATTEN
ALAN A. DIAMONSTEIN
H. DUNCAN GARNETT, JR.
AVERY T. WATERMAN, JR.[1]
ELEANOR WESTON BROWN[2]
SOUTH T. PATTERSON
JAMES H. SHOEMAKER, JR.
HUGH B. McCORMICK, III
STEVEN A. MEADE
DOUGLAS E. MILLER
PATRICK R. PETTITT
TODD M. LYNN
WILLIAM W. C. HARTY
JENNIFER WEST VINCENT

ATTORNEYS AND COUNSELORS AT LAW
SUITE 300
12350 JEFFERSON AVENUE
NEWPORT NEWS, VIRGINIA 23602

_____

(757) 223-4500

FAX (757) 249-1627
WRITER'S DIRECT DIAL: (757) 223-4585
WRITER'S E-MAIL: dmiller@pwhd.com
WEBSITE: http://www.pwhd.com

KEVIN M. DIAMONSTEIN[3]
VERONICA E. MEADE SHEPPARD[4]
LINDSEY A. CARNEY
ERIN E. HIERONIMUS

OF COUNSEL

I. LEAKE WORNOM, JR.
STANLEY W. DRUCKER
WILLIAM M. MARTIN, III
J. CONARD METCALF[5, 6]
ALLAN R. STALEY

NEAL J. PATTEN (RETIRED)
THOMAS R. WATKINS (1925-1995)

_____

[1] Admitted in VA, DC and LA
[2] Admitted in VA and NC
[3] Admitted in VA, DC, PA and NY

[4] Admitted in VA, DC and MD
[5] Admitted in CO and WA
[6] VA Pending

May 7, 2008

**VIA HAND DELIVERY**
Fernando Galindo, Clerk
United States District Court
For the Eastern District of Virginia
2400 West Avenue
Newport News, VA 23607

> **Re:    United Coal Company, LLC v. Italiana Coke, s.p.a.**

Dear Mr. Galindo:

Enclosed please find the following with regard to the above-captioned matter:

1.    Original and one copy of Complaint;

2.    Check in the amount of $350.00 for filing fees;

3.    Civil Cover Sheet;

4.    Two copies of Financial Interest Disclosure Statement of Plaintiff;

5.    Summons in a Civil Action.

Please prepare the copy for service and return it to me in the enclosed return envelope.

## PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.

May 7, 2008
Page 2


Thank you very much for your continuing attention.  If you have any questions or need additional information, do not hesitate to call me directly.

Very truly yours,

Douglas E. Miller


DEM:dc


Enclosures


cc:    Brian L. Schwalb, Esq. (w/ encl., via email and first class mail)
       Brian D. Sullivan, United Coal Company, LLC (w/ encl.)

℆JS 44  (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

United Coal Company, LLC

**(b)** County of Residence of First Listed Plaintiff   Bristol, VA
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

See attachment

## DEFENDANTS

Italiana Coke, s.p.a.

County of Residence of First Listed Defendant   Savona, Italy
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)   Joseph De Simone
Mayer Brown, LLP, 1675 Broadway, New York, NY
10019; (212) 506-2500

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                          and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1  Original
Proceeding

☐ 2  Removed from
State Court

☐ 3  Remanded from
Appellate Court

☐ 4  Reinstated or
Reopened

☐ 5  Transferred from
another district
(specify)

☐ 6  Multidistrict
Litigation

☐ 7  Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §2201(a)

Brief description of cause:
Declaratory Judgment - Alleged Contract Rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:  ☐ Yes  ☒☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE                                    DOCKET NUMBER

DATE

5/7/08

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

Michael W. Robinson
VSB No. 26522
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
Phone:  (703) 760-1600
Facsimile:  (703) 821-8949
mwrobinson@venable.com

Brian L. Schwalb
VSB No. 34525
575 7th Street, NW
Washington, DC  20004-1601
Phone:  (202)344-4356
Fax:  (202)344-8300
blschwalb@venable.com

and

Douglas E. Miller
VSB No. 38591
James H. Shoemaker, Jr.
VSB No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, VA  23602
Telephone:  (757) 223-4500
Facsimile:  (757) 249-1627
dmiller@pwhd.com

Attorneys for Plaintiff, United Coal Company, LLC
~~~~~~~~~~~~~~~Section Break (Next Page)~~~~~~~~~~~~~~~

1

AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Eastern | District of | Virginia |
| --- | --- | --- |

Norfolk Division

United Coal Company, LLC

V.

Italiana Coke, s.p.a.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

TO: (Name and address of Defendant)

Italiana Coke, s.p.a.
an Italian Company
Via Stalingrado 25
17014 S. Giuseppe di Cairo
Savona, Italy

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Douglas E. Miller
Patten, Wornom, Hatten & Diamonstein, LC
12350 Jefferson Avenue
Newport News, VA  23602
USA

an answer to the complaint which is served on you with this summons, within _____20_____ days after service
of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you
for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the
Clerk of this Court within a reasonable period of time after service.

| | |
| --- | --- |
| CLERK | DATE |

(By) DEPUTY CLERK

AO 440  (Rev.  8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐  Served personally upon the defendant.  Place where served: _____

☐  Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

    Name of person with whom the summons and complaint were left: _____

☐  Returned unexecuted: _____

☐  Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

    I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
               Date                *Signature of Server*

_____
                *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | | |
|---|---|---|
| UNITED COAL COMPANY, LLC,<br>a Virginia Limited Liability<br>Company,<br>1005 Glenway Avenue,<br>Bristol, VA 24201,<br><br>     Plaintiff,<br><br>     v.<br><br>ITALIANA COKE, s.p.a.,<br>an Italian Company<br>Via Stalingrado 25<br>17014 S. Giuseppe di Cairo<br>Savona, Italy<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. _____ |

## COMPLAINT

Plaintiff United Coal Company, LLC (hereinafter, "United Coal"), through its undersigned

counsel, and for its complaint seeking declaratory judgment against Defendant Italiana Coke,

s.p.a. (hereinafter, "Italiana Coke"), states, claims and alleges as follows:

## INTRODUCTION

1.     This is an action seeking a judicial declaration that no valid or enforceable contract

exists between the parties for the purchase and sale of metallurgical coal for the period between

April 1, 2008 and March 31, 2009. Defendant Italiana Coke claims that the parties entered into a

binding contract obligating United Coal to supply Italiana Coke with approximately 80,000 metric

tons of metallurgical (or hard coking) coal between April 1, 2008 and March 31, 2009. United

Coal maintains that, notwithstanding negotiations, no binding or enforceable contract was ever

1

finalized, agreed upon or executed.    Italiana Coke has made demands that amount to an antagonistic assertion of rights and that create substantial operational uncertainty for United Coal. As a result of the parties' conflicting positions, an actual and justiciable controversy exists over the parties' respective rights and obligations.    This controversy can and should be fully resolved by way of declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

## PARTIES

2.      Plaintiff United Coal is a limited liability company existing and organized under the laws of Virginia with its principal place of business at 1005 Glenway Avenue, Bristol, Virginia 24201.    United Coal, for diversity purposes, is deemed to be a citizen of Virginia, Tennessee and Delaware.    Through its subsidiaries, United Coal's business operations include underground and surfacing coal mining, coal preparation plants and rail loading facilities in Buchanan, Tazewell and Dickinson Counties, Virginia, as well as Raleigh County, West Virginia.

3.      Defendant Italiana Coke is, upon information and belief, a corporation organized and existing under the laws of Italy with its office at Via Stalingrado 25, 17014 S. Giuseppe di Cairo, Savona, Italy.    Italiana Coke operates worldwide, and is involved in, among other things, manufacturing and supplying steel to various markets such as the automotive and building industries.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and it is between a citizen of Virginia and Tennessee, on the one hand, and a citizen/subject of a foreign state, on the other.

2

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim asserted occurred in or, alternatively, would have occurred in this District, performance of the contract that Italiana Coke alleges to exist, and which United Coal denies, would have taken place in this District, and Italiana Coke is subject to jurisdiction in this District.

6.     This Court has personal jurisdiction over Italiana Coke because it has transacted business in the Commonwealth of Virginia by entering into prior written and executed contracts for the purchase and sale of coal that were fully performed in Virginia, negotiating for additional contracts that would be performed in Virginia, and claiming to have completed a contract to be performed in Virginia that is the subject of this dispute.

## **FACTS**

7.     United Coal, through its subsidiaries, has supplied metallurgical or hard coking coal to Italiana Coke in connection with Italiana Coal's production of steel since 2006.  The parties' commercial relationships have been governed by one-year, written "Sale and Purchase Agreements" that have run from April $1^{st}$ through March $31^{st}$ of the following year.

8.     After extensive negotiation, Italiana Coke and one of United Company's subsidiaries, Wellmore Coal, LLC, executed a written Sale and Purchase Agreement for the purchase and sale of metallurgical coal for the year April 1, 2006 through March 30, 2007.

9.     After extensive negotiation, Italiana Coke executed two separate written Sale and Purchase Agreements for the purchase and sale of metallurgical coal for the year April 1, 2007 through March 30, 2008, one contract for coal from Wellmore Coal, LLC, and one contract for coal produced by Pocahontas Coal, LLC, another of United Coal's subsidiaries.

3

10.     In late 2007, negotiations began for a potential new coal purchase and sale agreement for the 2008-2009 year.  As had been the custom and practice in the prior years, it was understood that any agreement would require a meeting of the minds on all material terms and conditions and a final written and executed contract or contracts, and that no binding or enforceable agreement would exist unless and until a written agreement was executed.

11.     Consistent with past-practice, the parties' exchanged, discussed and negotiated over a variety of potential contract terms relating to, among other things, price, quantities, moisture levels, force majeure events, purchase options and delivery requirements with the understanding that no enforceable contract would exist unless and until a meeting of the minds was reached on all terms, and unless and until a written agreement was executed.

12.     In March 2008, the parties exchanged drafts of a potential agreement.  Differences arose regarding various contract provisions, including purchase option and force majeure provisions.  Additionally, no final agreement on price was ever reached. In early April 2008, representatives of United Coal met with representatives of Italiana Coke in New York City to continue negotiating a potential purchase and sale contract for the 2008-2009 year, however no such agreement was ever reached.

13.     Neither United Coal nor any of its subsidiaries, on the one hand, and Italiana Coke, on the other hand, ever agreed on all material terms with respect to a potential contract to purchase and sell metallurgical coal between April 1, 2008 and March 31, 2009.

14.     Neither United Coal nor any of its subsidiaries, on the one hand, and Italiana Coke, on the other hand, ever executed a written contract with respect to the purchase and sale of metallurgical coal between April 1, 2008 and March 31, 2009.

4

15.    Notwithstanding the foregoing, Italiana Coke has taken the position that the parties reached an enforceable contract for the one-year period commencing April 1, 2008 and that United Coal is obligated, upon Italiana Coke's direction, to deliver, load, trim and stow approximately 80,000 metric tons of coal in ocean-going vessels chartered by Italiana Coke that are to dock at Lambert's Point Pier No. 6 in Norfolk, Virginia pursuant to that purported agreement.  According to Italiana Coke, the total sale price for such coal is approximately $10 million (between $123 and $135 per metric ton).

16.    Italiana Coke has indicated that it intends to nominate a vessel to be loaded for the first delivery of coal under the purported contract beginning in June 2008.  Italiana Coke has asserted that even though there is no final written and executed contract, United Coal's refusal to deliver coal to the Lambert's Point Pier No. 6 will expose United Coal to various legal claims and liabilities, including cover damages.  The current market price, per metric ton of like-quality metallurgical coal delivered FOBT is in excess of $275.

17.    Italiana Coke has made an antagonistic assertion of claim, namely that a valid and enforceable contract for the sale of coal exists between United Coal and Italiana Coke for the 2008-2009 year, that United Coal is in breach of said alleged contract, and that Italiana Coke has been and will continue to be damaged by United Coal's alleged refusal to honor the purported contract.

## COUNT ONE: DECLARATORY JUDGMENT

18.    United Coal incorporates by reference the allegations made in paragraphs 1 through 17 above as if each were separately restated here.

19.    Italiana Coke's assertion that United Coal is obligated to sell approximately 80,000 metric tons of metallurgical coal to it at certain prices and in certain quantities for the one-year

5

period beginning April 1, 2008 and that United Coal must begin performing when Italiana Coke nominates a vessel in June 2008 is an antagonistic assertion of rights.

20.     Italiana Coke's assertion creates significant uncertainty for United Coal, impairs its ability to negotiate with other companies for the sale and delivery of its finite amount of metallurgical coal during the time period at issue, and creates substantial logistical difficulties in its business operations.

21.     Without a prompt determination of whether or not a binding and enforceable agreement exists between the parties for the purchase and sale of metallurgical coal for the 2008-2009 year, United Coal cannot know with certainty whether it is exposing itself to liability if it does not accede to Italiana Coke's demands or if it undertakes to sell some or all of the finite amount of metallurgical coal that its subsidiaries can mine or have already mined, which sales would necessarily limit its ability to sell coal to Italiana Coke during the time period that Italiana Coke claims it has a binding contract to purchase said coal.

22.     A declaratory judgment in this case will serve a useful purpose in clarifying and settling the respective legal rights and obligations of the parties, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

WHEREFORE United Coal requests that the Court grant the following relief:

a.     Enter a declaratory judgment declaring that no valid or enforceable contract exists between United Coal, or any of its subsidiaries, on the one hand, and Italiana Coke, on the other, regarding the purchase and sale of metallurgical coal for the one-year period commencing April 1, 2008;

b.     Grant United Coal such other and further relief as the Court deems just and appropriate.

6

**UNITED COAL COMPANY, LLC**

Michael W. Robinson
VSB No. 26522
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
Phone: (703) 760-1600
Facsimile: (703) 821-8949
mwrobinson@venable.com

Brian L. Schwalb
VSB No. 34525
575 7th Street, NW
Washington, DC 20004-1601
Phone: (202)344-4356
Fax: (202)344-8300
blschwalb@venable.com

and

_____
Douglas E. Miller
VSB No. 38591
James H. Shoemaker, Jr.
VSB No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone: (757) 223-4500
Facsimile: (757) 249-1627
dmiller@pwhd.com

Attorneys for Plaintiff, United Coal Company, LLC

7



575 7th Street, NW
Washington, DC 20004

Telephone 202-344-4000
Facsimile 202-344-8300

www.venable.com

Brian L. Schwalb                 (202) 344-4356                 BL.Schwalb@venable.com

May 12, 2008

**BY E-MAIL, FACSIMILE & U.S. MAIL**

Joseph De Simone, Esquire
Mayer Brown LLP
1675 Broadway
New York, New York  10019-5820

Re:  *United Coal Company, LLC v. Italiana Coke, s.p.a.*
     Case No. 2:08-cv-212 (E.D. Va., Norfolk Division)

Dear Mr. De Simone:

United Coal Company has retained us in connection with the dispute between it and your client, Italiana Coke, regarding whether any contract exists between the parties for the purchase and sale of certain metallurgical coals for the 2008-2009 year.  I have reviewed your letter, dated May 6, and appreciate your efforts to lay out your client's perspective on the situation.  Italiana Coke's views on the facts and the law differ from those of United Coal.  In light of the claims and demands advanced in your letter, and the practical business exigencies raised by the disagreement, United Coal has filed a declaratory judgment action in the United States District Court for the Eastern District of Virginia, Norfolk Division, seeking a prompt declaration that there is no enforceable agreement between the parties.  A courtesy copy of the summons and complaint is attached.  Please let me know if you are authorized to accept service of process.

While I do not believe that it would be productive to debate each of the points in your letter, I would note that the four factors upon which you rely in asserting the existence of a binding contract, in fact, support the conclusion that no contract exists.  Especially in light of the two prior year's written and signed contracts, and the nature and complexity of the proposed transaction (*i.e.* an eight-figure metallurgical coal deal involving multiple international shipments over a year-long period), the suggestion that either side reasonably believed that there would be a binding agreement in the absence of a fully executed contract is strained.  Moreover, your client's contention that the recent delivery of the second of the two holds of coal "clearly was contemplated as a shipment under the parties' 2008-2009 contract and, as such, constitutes partial performance on United's part," contradicts the parties' April 3, 2008 signed agreement.  Indeed, your client paid for said second delivery using the significantly lower per ton price set out in the 2007-2008 contract.

# VENABLE LLP

Joseph De Simone, Esquire
May 12, 2008
Page 2


United Coal recognizes that reasonable minds sometimes disagree, and accordingly, it has proceeded with the Declaratory Judgment action on the assumption that a good faith business disagreement has arisen with a valued customer with whom it would like to continue a business relationship. United Coal believes that a prompt resolution of the disagreement is in everyone's best interests. While the parties were working to reach a final agreement for 2008-2009 year, the price of exported coking coal apparently moved dramatically. Without a final integrated and executed agreement that adequately addressed several issues that United Coal needed to have addressed for the 2008-2009 contract, the risk of price movement during negotiations was on both parties. If the parties are not able to resolve their disagreement, we believe that is the conclusion that the district court will reach.

In order to completely resolve the issues in dispute, however, and to ensure that Italiana Coke is able to obtain the coking coal it needs in what I understand to be a tight market (your letter even suggests that Italiana Coke might not be able to acquire the coal if United Coal does not supply it), United Coal is presently willing to offer to sell Italiana Coke the coal in the quantity and of the quality the parties were discussing at a price of $250 per metric ton, FOBT Pier 6, Norfolk Virginia, again assuming that a written agreement properly addressing all of the other material business terms (including force majeure, demurrage charges, the 10% buyer's option, etc.) is agreed upon and signed. That price is at considerable discount to the current market price for the Wellmore and Pocahontas coking coals, and is likely less than Italiana Coke could expect to find for similar coals meeting its specifications. United Coal would also be willing to accept the vessel nomination proposed for June 20-30, and supply one hold each of Pocahontas and Wellmore coal to that vessel at this price. If this is something that would be of interest to your client, please let me know right away, and the parties could work to agree upon and sign an appropriate written agreement.

Alternatively, if Italiana Coke is not willing to resolve the dispute in its entirety along the foregoing lines, but instead would prefer to continue the disagreement over whether a binding 2008-2009 contract was ever reached, United Coal would be willing to sell Italiana Coke 40,000 metric tons of Wellmore Coal at the current market price of $275 per ton, FOBT, and 40,000 metric tons of Pocahontas Coal at the current market price of $295 per ton, FOBT, with the understanding that Italiana Coke would have the right to continue claiming that a binding agreement was already reached at different prices. If your client would be interested in this alternative approach, please let me know, and we can circulate a draft of an appropriate written agreement.

# VENABLE LLP

Joseph De Simone, Esquire
May 12, 2008
Page 3


In sum, as I hope is evident to you from this letter, while United Coal does not agree with Italiana Coke's contentions, it remains open and willing to work with Italiana Coke to resolve, or at least narrow, the parties' obvious disagreement.

I look forward to hearing back from you promptly as to how your client would like to proceed.

Sincerely,

Brian L. Schwalb

Enclosures

cc.    Mr. Brian D. Sullivan
       Douglas Miller, Esq.
       Michael Robinson, Esq.

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____Eastern_____   District of   _____Virginia_____

Norfolk Division

United Coal Company, LLC

V.

Italiana Coke, s.p.a.

## SUMMONS IN A CIVIL CASE

CASE NUMBER:   2:08cv212

TO: (Name and address of Defendant)

Italiana Coke, s.p.a.
an Italian Company
Via Stalingrado 25
17014 S. Giuseppe di Cairo
Savona, Italy

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Douglas E. Miller
Patten, Wornom, Hatten & Diamonstein, LC
12350 Jefferson Avenue
Newport News, VA 23602
USA

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

_____Fernando Galindo_____          _____5/8/08_____
CLERK                                     DATE

_____Lisa Woodcock_____
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

☐ Other (specify): _____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                    Date                Signature of Server

                                       _____
                                       Address of Server

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## NOTICE

### CONSENT TO TRIAL BY MAGISTRATE JUDGE

Pursuant to Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c) you may request to have your case conducted before a United States Magistrate Judge upon consent of all parties and approval by a United States District Judge. In order to proceed before a Magistrate Judge, a consent form must be filed with the Clerk's Office. It may be filed jointly or separately. The consent form may be printed from the U.S. District Court website (listed below) or obtained from the Clerk's Office. Please refer to the previously mentioned rule for further information.

### FINANCIAL INTEREST DISCLOSURE STATEMENT

Pursuant to Local Rule 7.1, a financial disclosure statement must be filed by a "nongovernmental corporation, partnership, trust, [or] other similar entity that is a party to, or that appears in, an action or proceeding in this Court." This statement should be filed in duplicate with the party's "first appearance, pleading, petition, motion, response, or other request addressed to the Court". The financial interest disclosure statement may be printed from the U.S. District Court website (listed below) or obtained from the Clerk's Office. Please refer to the previously mentioned rule for further information. Failure to file the financial interest disclosure statement as required by Local Rule 7.1 will result in this first submission being filed subject to defect by the Clerk.

### WEBSITE AND CLERK'S OFFICES ADDRESSES

The website address for the U.S. District Court for the Eastern District of Virginia is www.vaed.uscourts.gov. If you do not have access to a computer, contact one of the Clerk's Offices listed below to obtain either of these forms:

Albert V. Bryan United States Courthouse
401 Courthouse Square
Alexandria, VA 22314
(703) 299-2101

Walter E. Hoffman United States Courthouse
600 Granby Street
Norfolk, VA 23510
(757) 222-7201

Lewis F. Powell, Jr. United States Courthouse
1000 East Main Street
Richmond, VA 23219
(804) 916-2220

United States Courthouse
2400 West Avenue
Newport News, VA 23607
(757) 247-0784

## PROCEDURE FOR CIVIL MOTIONS

This case has been assigned to United States District Judge Jerome B. Friedman.

Pursuant to Local Rule 7, a memorandum of law shall accompany all motions (unless excepted by the rule).

After all briefs are in, it is incumbent upon counsel for the moving party to confer with opposing counsel and advise the Clerk's Office by letter when a ruling or determination by submission is desired. See Local Rule 26 for discovery motion procedures.

Requests for ruling or determination without oral argument may be addressed by letter to the court.

Requests for oral argument should also be communicated to the court by letter. If Judge Friedman determines he will allow oral argument, counsel will be notified by the Judge's courtroom deputy or his secretary and a date and time will be selected.

Absent a request for hearing, the motions will be referred automatically to Judge Friedman.

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF VIRGINIA
### 600 GRANBY STREET
### NORFOLK, VIRGINIA 23510

CHAMBERS OF
JEROME B. FRIEDMAN
DISTRICT JUDGE

Dear Counsel:

Please confer with your client to consider proceeding before a United States Magistrate Judge and be prepared to make that consent, or lack thereof, known at the Scheduling Conference. The substantive rights of the parties are not affected by this decision.

Parties frequently consent to have the United States Magistrate Judges in the Norfolk and Newport News Divisions decide their cases. The court is requesting that counsel confer with their clients before the Scheduling Conference and be prepared to sign a Consent to Proceed Before a United States Magistrate Judge form at the Scheduling Conference, if they so choose. If the senior attorney in charge of the case will not be appearing at the Scheduling Conference, the court requests that the attorney who does appear at the Scheduling Conference be prepared to indicate whether or not the client will consent to trial before a Magistrate Judge.

All parties in the case must consent to have the case heard by a United States Magistrate Judge or the case will remain with me.

Thank you for your cooperation in this matter.

Very truly yours,

/s/ Jerome B. Friedman

dgs

## Rhoades, Lynne A.

| | |
|---|---|
| **From:** | cmecf@vaed.uscourts.gov |
| **Sent:** | Thursday, May 08, 2008 12:30 PM |
| **To:** | cmecf@vaed.uscourts.gov |
| **Subject:** | Activity in Case 2:08-cv-00212-JBF-FBS United Coal Company, LLC v. Italiana Coke, s.p.a. Summons Issued |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

<div align="center">

**U.S. District Court**

**Eastern District of Virginia**

</div>

## Notice of Electronic Filing

The following transaction was entered on 5/8/2008 at 12:29 PM EDT and filed on 5/8/2008
**Case Name:**         United Coal Company, LLC v. Italiana Coke, s.p.a.
**Case Number:**       2:08-cv-212
**Filer:**
**Document Number:** 3

**Docket Text:**
**Summons with one copy issued as to Italiana Coke, s.p.a. and mailed to counsel 5/8/08. (Attachments: # (1) Magistrate's notice and Judge's instructions)(lwoo)**


**2:08-cv-212 Notice has been electronically mailed to:**

Douglas Edwin Miller     dmiller@pwhd.com, debbie@pwhd.com

Michael W. Robinson     mwrobinson@venable.com, larhoades@venable.com

James Harrell Shoemaker , Jr     jshoemaker@pwhd.com, sthompson@pwhd.com

**2:08-cv-212 Notice has been delivered by other means to:**

Brian Lawrence Schwalb
Schwalb Donnenfeld & Schwalb PC
1155 21st St NW
Suite 210
Washington, DC 20036

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a

5/8/2008

**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091796605 [Date=5/8/2008] [FileNumber=1352396-0]
[7b95a5f3a2813e56bbf98d81eb2d3a2ba6807268dd2eb8bffba67e8c9bb964d9a247
349abe8775fd4b1b8f94744afd2dbe29bccb53c08d47ba6e1a7efef7f904]]
**Document description:** Magistrate's notice and Judge's instructions
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091796605 [Date=5/8/2008] [FileNumber=1352396-1]
[75ac5d930fa5795b9fdfd6bc4bd01cecdb658869a866a0dab10c742cdfdf0c14ae18
96b9c0628ada92f41439ac0d49c8899f6b32914313359bd16c75e859d86a]]

5/8/2008



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| UNITED COAL COMPANY, LLC, <br> a Virginia Limited Liability <br> Company, <br> 1005 Glenway Avenue, <br> Bristol, VA 24201, <br><br> Plaintiff, <br><br> v. <br><br> ITALIANA COKE, s.p.a., <br> an Italian Company <br> Via Stalingrado 25 <br> 17014 S. Giuseppe di Cairo <br> Savona, Italy <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) CIVIL ACTION NO. 2:08cv212 <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT

Plaintiff United Coal Company, LLC (hereinafter, "United Coal"), through its undersigned

counsel, and for its complaint seeking declaratory judgment against Defendant Italiana Coke,

s.p.a. (hereinafter, "Italiana Coke"), states, claims and alleges as follows:

### INTRODUCTION

1.    This is an action seeking a judicial declaration that no valid or enforceable contract

exists between the parties for the purchase and sale of metallurgical coal for the period between

April 1, 2008 and March 31, 2009. Defendant Italiana Coke claims that the parties entered into a

binding contract obligating United Coal to supply Italiana Coke with approximately 80,000 metric

tons of metallurgical (or hard coking) coal between April 1, 2008 and March 31, 2009. United

Coal maintains that, notwithstanding negotiations, no binding or enforceable contract was ever

1

finalized, agreed upon or executed. Italiana Coke has made demands that amount to an antagonistic assertion of rights and that create substantial operational uncertainty for United Coal. As a result of the parties' conflicting positions, an actual and justiciable controversy exists over the parties' respective rights and obligations. This controversy can and should be fully resolved by way of declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

## PARTIES

2.    Plaintiff United Coal is a limited liability company existing and organized under the laws of Virginia with its principal place of business at 1005 Glenway Avenue, Bristol, Virginia 24201. United Coal, for diversity purposes, is deemed to be a citizen of Virginia, Tennessee and Delaware. Through its subsidiaries, United Coal's business operations include underground and surfacing coal mining, coal preparation plants and rail loading facilities in Buchanan, Tazewell and Dickinson Counties, Virginia, as well as Raleigh County, West Virginia.

3.    Defendant Italiana Coke is, upon information and belief, a corporation organized and existing under the laws of Italy with its office at Via Stalingrado 25, 17014 S. Giuseppe di Cairo, Savona, Italy. Italiana Coke operates worldwide, and is involved in, among other things, manufacturing and supplying steel to various markets such as the automotive and building industries.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and it is between a citizen of Virginia and Tennessee, on the one hand, and a citizen/subject of a foreign state, on the other.

2

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim asserted occurred in or, alternatively, would have occurred in this District, performance of the contract that Italiana Coke alleges to exist, and which United Coal denies, would have taken place in this District, and Italiana Coke is subject to jurisdiction in this District.

6.    This Court has personal jurisdiction over Italiana Coke because it has transacted business in the Commonwealth of Virginia by entering into prior written and executed contracts for the purchase and sale of coal that were fully performed in Virginia, negotiating for additional contracts that would be performed in Virginia, and claiming to have completed a contract to be performed in Virginia that is the subject of this dispute.

## FACTS

7.    United Coal, through its subsidiaries, has supplied metallurgical or hard coking coal to Italiana Coke in connection with Italiana Coal's production of steel since 2006.  The parties' commercial relationships have been governed by one-year, written "Sale and Purchase Agreements" that have run from April 1st through March 31st of the following year.

8.    After extensive negotiation, Italiana Coke and one of United Company's subsidiaries, Wellmore Coal, LLC, executed a written Sale and Purchase Agreement for the purchase and sale of metallurgical coal for the year April 1, 2006 through March 30, 2007.

9.    After extensive negotiation, Italiana Coke executed two separate written Sale and Purchase Agreements for the purchase and sale of metallurgical coal for the year April 1, 2007 through March 30, 2008, one contract for coal from Wellmore Coal, LLC, and one contract for coal produced by Pocahontas Coal, LLC, another of United Coal's subsidiaries.

3

10.    In late 2007, negotiations began for a potential new coal purchase and sale agreement for the 2008-2009 year.  As had been the custom and practice in the prior years, it was understood that any agreement would require a meeting of the minds on all material terms and conditions and a final written and executed contract or contracts, and that no binding or enforceable agreement would exist unless and until a written agreement was executed.

11.    Consistent with past-practice, the parties' exchanged, discussed and negotiated over a variety of potential contract terms relating to, among other things, price, quantities, moisture levels, force majeure events, purchase options and delivery requirements with the understanding that no enforceable contract would exist unless and until a meeting of the minds was reached on all terms, and unless and until a written agreement was executed.

12.    In March 2008, the parties exchanged drafts of a potential agreement.  Differences arose regarding various contract provisions, including purchase option and force majeure provisions.  Additionally, no final agreement on price was ever reached. In early April 2008, representatives of United Coal met with representatives of Italiana Coke in New York City to continue negotiating a potential purchase and sale contract for the 2008-2009 year, however no such agreement was ever reached.

13.    Neither United Coal nor any of its subsidiaries, on the one hand, and Italiana Coke, on the other hand, ever agreed on all material terms with respect to a potential contract to purchase and sell metallurgical coal between April 1, 2008 and March 31, 2009.

14.    Neither United Coal nor any of its subsidiaries, on the one hand, and Italiana Coke, on the other hand, ever executed a written contract with respect to the purchase and sale of metallurgical coal between April 1, 2008 and March 31, 2009.

4

15.    Notwithstanding the foregoing, Italiana Coke has taken the position that the parties reached an enforceable contract for the one-year period commencing April 1, 2008 and that United Coal is obligated, upon Italiana Coke's direction, to deliver, load, trim and stow approximately 80,000 metric tons of coal in ocean-going vessels chartered by Italiana Coke that are to dock at Lambert's Point Pier No. 6 in Norfolk, Virginia pursuant to that purported agreement.  According to Italiana Coke, the total sale price for such coal is approximately $10 million (between $123 and $135 per metric ton).

16.    Italiana Coke has indicated that it intends to nominate a vessel to be loaded for the first delivery of coal under the purported contract beginning in June 2008.  Italiana Coke has asserted that even though there is no final written and executed contract, United Coal's refusal to deliver coal to the Lambert's Point Pier No. 6 will expose United Coal to various legal claims and liabilities, including cover damages.  The current market price, per metric ton of like-quality metallurgical coal delivered FOBT is in excess of $275.

17.    Italiana Coke has made an antagonistic assertion of claim, namely that a valid and enforceable contract for the sale of coal exists between United Coal and Italiana Coke for the 2008-2009 year, that United Coal is in breach of said alleged contract, and that Italiana Coke has been and will continue to be damaged by United Coal's alleged refusal to honor the purported contract.

## COUNT ONE: DECLARATORY JUDGMENT

18.    United Coal incorporates by reference the allegations made in paragraphs 1 through 17 above as if each were separately restated here.

19.    Italiana Coke's assertion that United Coal is obligated to sell approximately 80,000 metric tons of metallurgical coal to it at certain prices and in certain quantities for the one-year

5

period beginning April 1, 2008 and that United Coal must begin performing when Italiana Coke nominates a vessel in June 2008 is an antagonistic assertion of rights.

20.    Italiana Coke's assertion creates significant uncertainty for United Coal, impairs its ability to negotiate with other companies for the sale and delivery of its finite amount of metallurgical coal during the time period at issue, and creates substantial logistical difficulties in its business operations.

21.    Without a prompt determination of whether or not a binding and enforceable agreement exists between the parties for the purchase and sale of metallurgical coal for the 2008-2009 year, United Coal cannot know with certainty whether it is exposing itself to liability if it does not accede to Italiana Coke's demands or if it undertakes to sell some or all of the finite amount of metallurgical coal that its subsidiaries can mine or have already mined, which sales would necessarily limit its ability to sell coal to Italiana Coke during the time period that Italiana Coke claims it has a binding contract to purchase said coal.

22.    A declaratory judgment in this case will serve a useful purpose in clarifying and settling the respective legal rights and obligations of the parties, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

WHEREFORE United Coal requests that the Court grant the following relief:

a.    Enter a declaratory judgment declaring that no valid or enforceable contract exists between United Coal, or any of its subsidiaries, on the one hand, and Italiana Coke, on the other, regarding the purchase and sale of metallurgical coal for the one-year period commencing April 1, 2008;

b.    Grant United Coal such other and further relief as the Court deems just and appropriate.

6

**UNITED COAL COMPANY, LLC**

Michael W. Robinson
VSB No. 26522
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
Phone:  (703) 760-1600
Facsimile:  (703) 821-8949
mwrobinson@venable.com

Brian L. Schwalb
VSB No. 34525
575 7th Street, NW
Washington, DC  20004-1601
Phone:  (202)344-4356
Fax:  (202)344-8300
blschwalb@venable.com

and

_____
Douglas E. Miller
VSB No. 38591
James H. Shoemaker, Jr.
VSB No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, VA  23602
Telephone:  (757) 223-4500
Facsimile:  (757) 249-1627
dmiller@pwhd.com

Attorneys for Plaintiff, United Coal Company, LLC

7

JS 44 (Rev. 12/07)    Case 2:08-cv-00212-JBF    **CIVIL COVER SHEET**    Filed 05/07/2008    Page 1 of 2

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| **(a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| United Coal Company, LLC | Italiana Coke, s.p.a. |
| **(b)** County of Residence of First Listed Plaintiff  Bristol, VA | County of Residence of First Listed Defendant  Savona, Italy |
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known)  Joseph De Simone |
| See attachment | Mayer Brown, LLP, 1675 Broadway, New York, NY 10019; (212) 506-2500 |

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): 28 U.S.C. §2201(a)

Brief description of cause: Declaratory Judgment - Alleged Contract Rights

**VII. REQUESTED IN COMPLAINT:**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint    JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY**    (See instructions)    JUDGE _____    DOCKET NUMBER _____

DATE  5/7/08    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**From:** De Simone, Joseph [mailto:JDeSimone@mayerbrown.com]
**Sent:** Friday, May 23, 2008 3:32 PM
**To:** Schwalb, Brian L.
**Subject:** Italiana Coke

Brian

Regarding your question re service of process, Mayer Brown LLP is not authorized to accept service of process of the Virginia lawsuit on behalf of our client.

Joe

_____

IRS CIRCULAR 230 NOTICE.  Any tax advice expressed above by Mayer Brown LLP was not intended or written to be used, and cannot be used, by any taxpayer to avoid U.S. federal tax penalties.  If such advice was written or used to support the promotion or marketing of the matter addressed above, then each offeree should seek advice from an independent tax advisor.

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

6/26/2008

# PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.

DONALD N. PATTEN
ROBERT R. HATTEN
ALAN A. DIAMONSTEIN
H. DUNCAN GARNETT, JR.[1]
AVERY T. WATERMAN, JR.[1]
ELEANOR WESTON BROWN[2]
SOUTH T. PATTERSON
JAMES H. SHOEMAKER, JR.
HUGH B. McCORMICK, III
STEVEN A. MEADE
DOUGLAS E. MILLER
PATRICK R. PETTITT
TODD M. LYNN
WILLIAM W. C. HARTY
JENNIFER WEST VINCENT

[1] Admitted in VA, DC and LA
[2] Admitted in VA and NC
[3] Admitted in VA, DC, PA and NY

ATTORNEYS AND COUNSELORS AT LAW
SUITE 300
12350 JEFFERSON AVENUE
NEWPORT NEWS, VIRGINIA 23602

———————————

(757) 223-4500

FAX (757) 249-1627
WRITER'S DIRECT DIAL: (757) 223-4585
WRITER'S E-MAIL: dmiller@pwhd.com
WEBSITE: http://www.pwhd.com

KEVIN M. DIAMONSTEIN[3]
VERONICA E. MEADE SHEPPARD[4]
LINDSEY A. CARNEY
ERIN E. HIERONIMUS

OF COUNSEL
I. LEAKE WORNOM, JR.
STANLEY W. DRUCKER
WILLIAM M. MARTIN, III
J. CONARD METCALF[5, 6]
ALLAN R. STALEY

NEAL J. PATTEN (RETIRED)
THOMAS R. WATKINS (1925-1995)

———————————

[4] Admitted in VA, DC and MD
[5] Admitted in CO and WA
[6] VA Pending

May 27, 2008

Fernando Galindo, Clerk
United States District Court
For the Eastern District of Virginia
2400 West Avenue
Newport News, VA 23607

> **Re:    United Coal Company, LLC v. Italiana Coke, s.p.a.**
> **Case No. 2:08cv212**

Dear Mr. Galindo:

Enclosed please find the Return of Service with regard to service of the Complaint against the corporate Defendant, Italiana Coke, s.p.a.

Thank you very much for your continuing attention. If you have any questions or need additional information, do not hesitate to call me directly.

Very truly yours,

Douglas E. Miller

DEM:dc

Enclosure

cc:    Brian L. Schwalb (w/ encl., via email and first class mail)
       Brian D. Sullivan, United Coal Company, LLC (w/ encl.)
       Joseph DeSimone (w/ encl., via fax and mail)

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me(1) | **DATE**<br>May 27, 2008 |
| NAME OF SERVER *(PRINT)*<br>Douglas E. Miller | **TITLE**<br>Attorney |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

  Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

XX Other (specify): Delivered by Federal Express (confirmation attached) to the attention of Dr. Massimo Busdramni as officer of defendant Italiana Coke, S.P.A. under the provisions of Article 10 of the Hague Convention on Service of Process. Courtesy copy provided to counsel, Joseph DeSimone.

## STATEMENT OF SERVICE FEES

| TRAVEL<br>0.00 | SERVICES<br>$25.00 Federal Express Fee | TOTAL<br>$25.00 |
|---|---|---|

## DECLARATION OF SERVER

  I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ___May 27, 2008___
         Date

Signature of Server
Douglas E. Miller
Patten, Wornom, Hatten & Diamonstein, LC
12350 Jefferson Avenue, #300, Newport News, VA 23602

         *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

ORIGINAL

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Eastern | District of | Virginia |

Norfolk Division

United Coal Company, LLC

V.

Italiana Coke, s.p.a.

## SUMMONS IN A CIVIL CASE

CASE NUMBER:  2:08cv212

TO: (Name and address of Defendant)

Italiana Coke, s.p.a.
an Italian Company
Via Stalingrado 25
17014 S. Giuseppe di Cairo
Savona, Italy

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Douglas E. Miller
Patten, Wornom, Hatten & Diamonstein, LC
12350 Jefferson Avenue
Newport News, VA  23602
USA

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

| Fernando Galindo | | 5/8/08 |
| CLERK | | DATE |

Lisa Woodcock

(By) DEPUTY CLERK

**Debbie Crowder**

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Tuesday, May 27, 2008 2:07 PM |
| **To:** | Debbie Crowder |
| **Subject:** | FedEx Shipment 792704681634 Delivered |

---

```
This tracking update has been requested by:

Company Name:             12350jeff360
Name:                     Debbie Crowder
E-mail:                   Debbie@pwhd.com
```

---

```
Our records indicate that the following shipment has been delivered:

Reference:                DEM/United Coal #050363
Ship (P/U) date:          May 23, 2008
Delivery date:            May 27, 2008 6:49 PM
Sign for by:              .MAGAZINO
Delivered to:             Receptionist/Front Desk
Service type:             FedEx International Priority
Packaging type:           FedEx Envelope
Number of pieces:         1
Weight:                   1.00 lb.
Special handling/Services: Deliver Weekday

Tracking number:          792704681634
```

```
Shipper Information              Recipient Information
DEBBIE CROWDER                   DR. MASSIMO BUSDRANNI
12350JEFF360                     ITALIANA COKE, S.P.A.
12350 JEFFERSON AVE;STE 360      SAVONA;.
NEWPORT NEWS                     CAIRO MONTENOTTE
VA                               IT
US                               17014
23602
```

```
Please do not respond to this message. This email was sent from an unattended
mailbox. This report was generated at approximately 1:06 PM CDT
on 05/27/2008.

To learn more about FedEx Express, please visit our website at fedex.com.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above,
or visit us at fedex.com.

This tracking update has been sent to you by FedEx on the behalf of the
Requestor noted above. FedEx does not validate the authenticity of the
requestor and does not validate, guarantee or warrant the authenticity of the
request, the requestor's message, or the accuracy of this tracking update. For
tracking results and fedex.com's terms of use, go to fedex.com.

Thank you for your business.
```