UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

ITALIANA COKE, S.R.L.,                                    :

                        Plaintiff,      :      Case No. 08-CV-4725 (JGK)

        vs.                                                 :

UNITED COAL COMPANY, LLC,                     :

                  Defendant.        :

------------------------------------------------ X

## ITALIANA COKE, S.R.L.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER OR STAY THE PROCEEDINGS

MAYER BROWN LLP
1675 Broadway
New York, NY 10019
(212) 506-2500

*Attorneys for Plaintiff Italiana Coke, S.r.l.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS .....................................................................................2

    A.    The Parties ...........................................................................2

    B.    Course Of Dealing ................................................................3

    C.    The Stockholm Meeting And The 2008-2009 Contract ...........................4

    D.    Part Performance Of The 2008-2009 Contract Prior To United's Breach..............4

    E.    The New York Meeting ...........................................................5

    F.    Italiana Coke's Demand Letter And The Subsequent Complaints .........................6

ARGUMENT .......................................................................................7

I.    PERSONAL JURISDICTION OVER UNITED IN NEW YORK IS PROPER................7

    A.    United Is Subject To The Specific Jurisdiction Of This Court ..............................8

        1.    New York's Long-arm Statute Confers Jurisdiction Over United..............8

        2.    Jurisdiction Over United Comports With Due Process ...........................12

    B.    Limited Jurisdictional Discovery Is Appropriate To Determine General Jurisdiction.............................................................................13

II.    VENUE IS PROPER IN NEW YORK..............................................................14

III.    UNITED'S REQUEST TO TRANSFER VENUE TO THE EASTERN DISTRICT OF VIRGINIA SHOULD BE DENIED ................................................................15

    A.    This Action Could Not Have Been Brought In Virginia ......................................16

    B.    The Interests Of Justice And Trial Efficiency Require Retention In This Forum...........................................................................17

        1.    The Eastern District Of Virginia Cannot Compel Arbitration..................17

        2.    Transfer Would Condone Unacceptable Forum Shopping........................19

        3.    Departure From The First-Filed Rule Is Warranted .................................19

    C.    Additional Factors Favor Venue In This Court ....................................................22

# TABLE OF CONTENTS

**Page**

    1.    Italiana Coke's Choice Of Forum Should Be Honored ............................22

    2.    The Remaining Factors Strongly Favor New York ..................................23

IV.    UNITED'S MOTION TO STAY SHOULD BE DENIED ...............................................24

CONCLUSION..................................................................................................................25

## TABLE OF AUTHORITIES

**Page**

*3H Enters., Inc. v. Dwyre*,
    182 F. Supp. 2d 249 (S.D.N.Y. 2001)........................................................................15

*Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*,
    98 F.3d 25 (2d Cir. 1996)..............................................................................8, 11

*Alicea v. Lasar Mfg. Co.*,
    1992 WL 230203 (S.D.N.Y. Aug. 31, 1992).......................................................14

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*,
    474 F. Supp. 2d 474 (S.D.N.Y. 2007)............................................20, 22, 23, 24, 25

*Beatie & Osborn LLP v. Patriot Scientific Corp.*,
    431 F. Supp. 2d 367 (S.D.N.Y. 2006)..........................................................17, 22

*Benjamin Sheridan Corp. v. Benjamin Air Rifle Co.*,
    827 F. Supp. 171 (W.D.N.Y. 1993) .......................................................................11

*Berkshire Capital Group, LLC v. Palmet Ventures, LLC*,
    2007 U.S. Dist. LEXIS 69987 (S.D.N.Y. Sept. 21, 2007).......................................11

*BHP Trading (UK) Ltd. v. Deep Sea Int'l Shipping Co.*,
    1991 WL 198747 (S.D.N.Y. Sept. 23, 1991)........................................................13

*Blum v. Salomon*,
    2006 WL 3851157 (S.D.N.Y. Dec. 28, 2006) .......................................................15

*Boehner v. Heise*,
    410 F. Supp. 2d 228 (S.D.N.Y. 2006).......................................................... 16, 22-23

*Capitol Records v. Optical Recording Corp.*,
    810 F. Supp. 1350 (S.D.N.Y. 1992)..........................................................................22

*Chemco Int'l Leasing, Inc. v. Meridian Eng'g, Inc.*,
    590 F. Supp. 539 (S.D.N.Y. 1984) .........................................................................8

*Clapp v. Greene*,
    743 F. Supp. 273 (S.D.N.Y. 1990) .......................................................................14

*Claudia v. Olivieri Footwear Ltd.*,
    1998 WL 164824 (S.D.N.Y. Apr. 7, 1998)............................................................24

*Cutco Indus., Inc. v. Naughton*,
    806 F.2d 361 (2d Cir. 1986).........................................................................8, 9, 11

# TABLE OF AUTHORITIES

**Page**

*Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*,
    218 Va. 533 (1977) ..............................................................................................17

*Distefano v. Carozzi N. Am., Inc.*,
    2002 WL 31640476 (E.D.N.Y. Nov. 16, 2002)....................................................24

*DLJ Mortgage Capital v. Cameron Fin. Group*,
    2007 WL 4325893 (S.D.N.Y. Dec. 4, 2007) .........................................................15

*Eagle Paper Int'l, Inc. v. Expolink, Ltd.*,
    2008 WL 170506 (E.D. Va. Jan. 17, 2008) ...........................................................17

*Emp. Ins. of Wausau v. Fox Entm't Group, Inc.*,
    522 F.3d 271 (2d Cir. 2008)............................................................................20, 21

*ESI, Inc. v. Coastal Corp.*,
    61 F. Supp. 2d 35 (S.D.N.Y. 1999) ...................................................................8, 12

*Fabrikant & Sons, Inc. v. Kahn, Inc.*,
    144 A.D.2d 264, 533 N.Y.S.2d 866 (1st Dept. 1988)............................................10

*Factors Etc., Inc. v. Pro Arts, Inc.*,
    579 F.2d 215 (2d Cir. 1978)....................................................................21, 22, 25

*Fed. Ins. Co. v. May Dep't. Stores Co.*,
    808 F. Supp. 347 (S.D.N.Y. 1992) ........................................................................21

*Forjone v. Leavitt*,
    2008 WL 1926680 (W.D.N.Y. Apr. 30, 2008) ......................................................14

*Geller v. Newell*,
    602 F. Supp. 501 (S.D.N.Y. 1984) ........................................................................10

*Gen. Capital Partners LLC v. Liberty Ridge, LLC*,
    2007 WL 3010028 (S.D.N.Y. Oct. 12, 2007) ........................................................23

*Gen. Instrument Corp. v. Tie Mfg., Inc.*,
    517 F. Supp. 1231 (S.D.N.Y. 1981).........................................................................9

*Gianino v. Panacya, Inc.*,
    2000 WL 1224810 (S.D.N.Y. Aug. 29, 2000)..........................................................8

*Greystone CDE, LLC v. Sante Fe Pointe L.P.*,
    2008 WL 482291 (S.D.N.Y. Feb. 20, 2008)......................................................24, 25

## TABLE OF AUTHORITIES

**Page**

*Gulf Ins. Co. v. Glassbrenner*,
    417 F.3d 353 (2d Cir. 2005).....................................................................................15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984)...............................................................................................17

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
    763 F.2d 55 (2d Cir. 1985)..................................................................................7, 13

*In re Magnetic Audiotape Antitrust Litig.*,
    334 F.3d 204 (2d Cir. 2003).....................................................................................7

*Interested London Underwriters v. Kelly Global Logistics, Inc.*,
    2008 WL 558038 (S.D.N.Y. Feb. 29, 2008)..........................................................16

*Int'l Shoe Co. v. State of Wash.*,
    326 U.S. 310 (1945)...............................................................................................12

*Lancaster v. Zufle*,
    165 F.R.D. 38 (S.D.N.Y. 1996) ............................................................................11

*Laumann Mfg. Corp. v. Castings USA*,
    913 F. Supp. 712 (E.D.N.Y. 1996) .......................................................................14

*Lawn v. Franklin*,
    328 F. Supp. 791 (S.D.N.Y. 1971) ...........................................................18, 19, 25

*Learning Network, Inc. v. Discovery Comm'ns*,
    11 Fed. Appx. 297 (4th Cir. 2001).........................................................................21

*Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*,
    15 N.Y.2d 443, 209 N.E.2d 68 (1965)...................................................................10

*Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc.*,
    2008 WL 833230 (S.D.N.Y. Mar. 26, 2008) ...................................................16, 23

*M. Shanken Commc'ns, Inc. v. Cigar500.com*,
    2008 WL 2696168 (S.D.N.Y. July 7, 2008) .......................................................7, 11

*Mayer v. Josiah Wedgwood & Sons, Ltd.*,
    601 F. Supp. 1523 (S.D.N.Y. 1985).......................................................................10

*McGowan v. Smith*,
    419 N.E.2d 321 (N.Y. 1981)..................................................................................11

# TABLE OF AUTHORITIES

**Page**

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*,
49 F.3d 323 (7th Cir. 1995) .............................................................................18, 19

*Micromuse , Inc. v. Aprisma Mgmt. Techs., Inc.*,
2005 WL 1241924 (S.D.N.Y. May 24, 2005) ......................................................14

*MidAmerican Energy Co. v. Coastal Gas Mktg. Co.*,
33 F. Supp. 2d 787 (N.D. Iowa 1998) ..................................................................19

*Mondo, Inc. v. Spitz*,
1998 WL 17744 (S.D.N.Y. Jan. 16, 1998) ...........................................................21

*Original Creatine Patent Co. v. Met-Rx USA, Inc.*,
387 F. Supp. 2d 564 (E.D. Va. 2005) .............................................................23, 24

*Packer v. TDI Sys., Inc.*,
959 F. Supp. 192 (S.D.N.Y. 1997) .........................................................................8

*PowerDsine, Inc. v. Broadcom Corp.*,
2008 WL 268808 (E.D.N.Y. Jan. 29, 2008) .........................................................23

*Reliance Ins. Co. v. Six Star, Inc.*,
155 F. Supp. 2d 49 (S.D.N.Y. 2001)......................................................................22

*Schnabel v. Ramsey Quantitative Sys., Inc.*,
322 F. Supp. 2d 505 (S.D.N.Y. 2004).............................................................. 21-22

*Sea Tow Servs. Int'l v. Pontin*,
472 F. Supp. 2d 349 (E.D.N.Y. 2007) ..................................................................15

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
450 F.3d 100 (2d Cir. 2006).....................................................................................8

*Stratagem Dev. Corp. v. Heron Int'l N.V.*,
153 F.R.D. 535 (S.D.N.Y. 1994) ..........................................................................14

*Sunward Elecs., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004).....................................................................................11

*Unique Indus., Inc. v. Sui & Sons Int'l Trading Corp.*,
2007 WL 3378256 (S.D.N.Y. Nov. 9, 2007).........................................................14

*Uniroyal, Inc. v. Heller*,
65 F.R.D. 83 (S.D.N.Y. 1974) ...............................................................................11

# TABLE OF AUTHORITIES

**Page**

*Ursa Minor Ltd. v. Aon Fin. Prods., Inc.*,
  2000 WL 1010278 (S.D.N.Y. July 21, 2000) .........................................................................22

*The Rockefeller Univ. v. Ligand Pharms. Inc.*,
  2008 WL 2139148 (S.D.N.Y. May 19, 2008) .....................................................................14

*Viacom Int'l, Inc. v. Melvin Simons Prods., Inc.*,
  774 F. Supp. 858 (S.D.N.Y. 1991) ...................................................................................10

*Wine Mkts. Int'l Inc. v. Bass*,
  939 F. Supp. 178 (E.D.N.Y. 1996) ...................................................................................24

**Statutes and Regulations**

Fed. R. Civ. P. 12(b)(3) ..........................................................................................................14

28 U.S.C. §1391(a) ...........................................................................................................15, 15

28 U.S.C. §1404(a) .....................................................................................................16, 20, 22

28 U.S.C. §1406(a) .........................................................................................................14, 16

N.Y. C.P.L.R. 302(a)(1) ...........................................................................................................8

Va. Code Ann. § 8.01-328.1 ...................................................................................................16

**Other Authorities**

Federal Arbitration Act § 4 ................................................................................................18, 19

CISG, Article 1(1)(a) .............................................................................................................24

## PRELIMINARY STATEMENT

Coal prices have risen steeply in the past few months.  As a result, shortly *after* the contractual term between plaintiff Italiana Coke, S.r.l. ("Italiana Coke") and defendant United Coal Company ("United") was to begin in April of 2008 at prices and terms agreed upon several months earlier in December of 2007, United notified Italiana Coke – at a meeting in this jurisdiction – that no binding contract between them existed and that Italiana Coke would have to purchase coal from United at more than *double* the price.  Following the meeting, Italiana Coke sent a demand letter to United, stating that it would pursue all available remedies if United failed to provide confirmation that it would abide by the terms of the contract within one week.  The very next day, without notifying Italiana Coke, United commenced an action in the Eastern District of Virginia (the "Virginia Action"), seeking a declaration that no contract between the parties exists.  United's motive for filing the Virginia Action is simple:  it seeks to avoid its agreement in order to unfairly take advantage of coal prices that have risen steeply in the past few months, and is a blatant attempt by United to win the race to the courthouse to circumvent the New York choice of law and forum selection clauses contained in the agreement at issue.

Shortly after learning that United had launched its preemptive strike, Italiana Coke commenced the instant action.  Italiana Coke seeks no less than $12 million in damages for breach of contract and promissory estoppel, or, alternatively, a declaration that the underlying contract is enforceable and an order directing the parties to arbitrate all disputes in accordance with the terms of the contract in New York, New York.

United's motion to dismiss, transfer or stay this action should be denied.  To do otherwise would be to countenance United's attempt to deprive Italiana Coke from litigating this case in New York, the forum that the parties had previously agreed upon.  The resolution of this dispute hinges upon a determination of the validity of a contract that – like each of the previous contracts

between the parties (the 2006-2007 Contract and the 2007-2008 Contract) – contains a New York choice of law clause, as well as a clause specifying New York, New York as the venue for arbitrating any dispute between the parties.  Indeed, it was at a meeting in New York that United breached the instant 2008-2009 Contract by telling Italiana Coke that it was changing its position and claiming that no contract between them existed.  As such, the exercise of jurisdiction in New York over United is proper.  Despite these facts, United filed its Complaint in Norfolk, Virginia, which is a venue that has no more than a slight connection to this dispute.  Neither the parties nor their respective witnesses reside in that jurisdiction.

Additionally, the Eastern District of Virginia has no power to compel the parties to arbitrate their dispute in New York, which is the relief Italiana Coke is seeking in this action.  It lacks personal jurisdiction over Italiana Coke.  Moreover, even though the Virginia Action was filed first, that filing is not entitled to preference because it was an anticipatory filing preceded by a demand letter from Italiana Coke.  In sum, to transfer or dismiss this action would condone and encourage the unacceptable forum shopping United has engaged in.

## STATEMENT OF FACTS[1]

### A.    The Parties

Plaintiff Italiana Coke is a corporation organized under the laws of Italy with its principal place of business in Savona, Italy.  Busdraghi Dec. ¶ 3.  It is a leading supplier of coke to foundries throughout Europe.  *Id.* ¶ 4.  Coke is a product obtained through chemical processing of coking coal.  *Id.*  Italiana Coke's production facilities are located in Italy.  *Id.* ¶ 5.  Within the last 14 years, it has never sold its products to any purchaser within Virginia or to any purchaser

---

[1] The following facts are either alleged in the Complaint or are based on the Declaration of Massimo Busdraghi ("Busdraghi Dec.") and the Declaration of Joseph De Simone ("De Simone Dec.") submitted herewith.  Citations to the Complaint, attached as De Simone Dec. Ex. E, shall take the form "Cmplt. ¶ __".

within the United States. *Id.* ¶ 11. It has no office, plant, equipment, employees or phone number in Virginia; is not registered with the Virginia Corporation Commission or otherwise licensed to do business there; and has no agent for service of process in Virginia. *Id.* ¶¶ 6-8. Prior to United's action, it had never sued or been sued in Virginia. *Id.* ¶ 10.

Defendant United is a limited liability company organized under the laws of Virginia, with its principal place of business in Bristol, Virginia. *See* De Simone Dec. Ex. B ("Va. Cmplt.") ¶ 2. It operates coal mines, coal preparation facilities, and rail loading facilities located in Virginia and West Virginia. *Id.*

### B.    Course Of Dealing

Since 2006, Italiana Coke has entered into yearly supply contracts with United for the purchase of Wellmore High Volatile Coking Coal and Pocahontas Low Volatile Coking Coal ("Wellmore" and "Pocahontas" coal) from United's mines in Virginia and West Virginia. Busdraghi Dec. ¶ 15. These contracts were negotiated by representatives from Italiana Coke, United, and Agenzia Carboni, United's Italian Agent ("United's Agent"), at meetings held at Italiana Coke in Italy and at yearly coal-industry conventions held in various locations throughout the world. *Id.* ¶ 16. The contract in dispute was negotiated in Stockholm, Sweden. *Id.* ¶¶ 22-24. None of the contracts between the parties were negotiated in Virginia. *Id.* ¶ 21.

Each year, the parties have entered into contracts with a choice of law clause specifying that the agreement would be governed by New York law, and an exclusive forum selection clause compelling the parties to arbitrate all disputes related to the contract in New York, New York (together, the "NY Clauses"). *Id.* ¶¶ 15-17 & Ex. A ("2006-2007 Contract"), Ex. B ("2007-2009 Contract"). Each yearly contract also specified that coal would be loaded onto railroad cars by United at its mines in West Virginia and Virginia, and shipped via Norfolk Southern Railroads to the Port of Norfolk, Virginia. *See* 2006-2007 Contract ¶ 6; 2007-2008

Contract ¶ 6.  Once the coal was delivered to the Port of Norfolk, it was loaded onto chartered vessels, with the risk of loss passing to Italiana Coke ("FOBT") upon loading.  Busdraghi Dec. ¶ 17.  These vessels then delivered the coal to Italiana Coke's facilities in Italy.  *Id.*

### C.    The Stockholm Meeting And The 2008-2009 Contract

On or about December 4, 2007, representatives from Italiana Coke and United met in Stockholm, Sweden (the "Stockholm meeting") to negotiate the terms of sale and purchase agreements for Wellmore and Pocahontas coal for the period between April 1, 2008 and March 31, 2009 (collectively, the "2008-2009 Contract").  *Id.* ¶ 22.  At that meeting, the parties agreed upon all material terms of the 2008-2009 Contract.  *Id.* ¶ 23.  Shortly thereafter, the terms of the 2008-2009 Contract agreed upon at the Stockholm meeting were memorialized and confirmed in emails exchanged between Italiana Coke, United and United's Agent.  *Id.* ¶¶ 25-28.  The parties agreed that aside from the material terms negotiated at the Stockholm meeting (such as price and quantity), all other terms of the 2008-2009 Contract would be the same as those contained in prior contracts between the parties, including the NY Clauses.  *Id.* ¶ 24.  In the emails exchanged between the parties memorializing and confirming the agreement, United requested a minor change to the moisture quality of the Pocahontas coal, which Italiana Coke readily accepted.  *Id.* ¶ 28 & Ex. E.  United's Agent in Italy subsequently emailed written contracts to Italiana Coke on January 14, 2008, setting forth the terms of the 2008-2009 Contract entered into at the Stockholm meeting.  *Id.* ¶ 29 & Exs. F, G.

### D.    Part Performance Of The 2008-2009 Contract Prior To United's Breach

In an email dated March 4, 2008, Italiana Coke set forth a shipping schedule for the 2008-2009 Contract.  Busdraghi Dec. ¶ 30 & Ex. H.  United responded that Italiana Coke's shipping schedule seemed acceptable.  *Id.*  As the termination date for the 2007-2008 Contract approached, United remained obligated to ship approximately 7,500 metric tons of Pocahontas

4

coal and 14,000 metric tons of Wellmore coal to Italiana Coke under the terms of the 2007-2008 Contract. *Id.* ¶ 31.  On or around March 6, 2008, United notified Italiana Coke by email of production problems that necessitated a delay on the shipment of Wellmore coal that remained due under the 2007-2008 Contract. *Id*. ¶ 32.  United suggested replacing the installment of Wellmore coal with an extra installment of Pocahontas coal. *Id.*  On or around March 7, 2008, Italiana Coke agreed to this replacement, and proposed a new shipping schedule for the remaining coal due to be shipped under the 2007-2008 Contract, as well as for all 2008 deliveries under the 2008-2009 Contract. *Id.* ¶ 33.  By email dated March 10, 2008, United reiterated its offer to ship the final installment of Pocahontas coal due under the 2007-2008 Contract, along with an additional installment of Pocahontas coal under the 2008-2009 Contract. *Id.* ¶ 34.  In an email response sent later that day, Italiana Coke accepted United's proposal, with the understanding that the additional installment of Pocahontas coal would be considered as part of the 2008-2009 Contract and would be sold at the 2008-2009 Contract price of $135 per metric ton. *Id.* Thereafter, on or around March 26, 2008, United caused the two installments of Pocahontas coal to be loaded together on a train bound for Italiana Coke's chartered vessel docked at Norfolk, Virginia. *Id.* ¶ 35.

> **E.    The New York Meeting**

Less than a week before the commencement of the 2008-2009 Contract term, United sent Italiana Coke another written version of the 2008-2009 Contract via email, with minor changes regarding the force majeure clause and the 10% buyer's option. *Id.* ¶ 36 & Ex. L.  United did not propose any other changes. *Id.*  ¶ 36.  The parties had previously agreed to meet during the first week in April 2008, in New York, New York. *Id.*  ¶ 37.  On or around April 3, 2008, representatives from Italiana Coke and United met in New York, New York (the "NY Meeting"). *Id.* ¶ 38.  Italiana Coke understood that one of the purposes of the NY Meeting would be to sign

the 2008-2009 Contract that had been circulated by United on March 26, 2008. *Id.* At the NY

Meeting, however, United's representatives took the surprising position that no contract existed

for the 2008-2009 year, and that they were under no obligation to load the first installment of

Pocahontas coal under the 2008-2009 contract. *Id.* Instead, United's representatives insisted that

Italiana Coke would have to purchase coal from United at the "spot" price, which was more than

double the price agreed upon at the Stockholm meeting. *Id*.

When talks resumed later in the day in New York, the parties reached an interim

agreement under which United's obligations under the 2007-2008 Contract would be considered

fully satisfied, and the parties agreed to reserve their rights regarding the question of the

existence of the 2008-2009 Contract. *Id.* ¶ 39 & Ex. M. The parties agreed that United would

deliver the second installment of Pocahontas coal that had previously been meant by all parties to

be delivered under the terms of the 2008-2009 Contract and had already been loaded for Italiana

Coke prior to the NY Meeting, in place of the Wellmore coal United would still have been

obligated to deliver under the terms of the 2007-2008 Contract. *Id.*

### F.    Italiana Coke's Demand Letter And The Subsequent Complaints

After the NY Meeting, Italiana Coke sent a letter to United, expressing shock at United's

attempt to unilaterally renegotiate the terms of a contract the parties had already entered into. *Id.*

¶ 40. Italiana Coke's letter also included a request for confirmation of the proposed details of the

parties' first coal shipment under the 2008-2009 Contract. *Id.* Instead, United sent a letter to

Italiana Coke, rejecting the request for shipment. *Id.* ¶ 41.

Thereafter, on May 6, 2008, Italiana Coke, through its undersigned attorneys, sent a letter

to United, explaining the factual and legal reasons supporting Italiana Coke's position that

United had breached the 2008-2009 Contract and advising United of Italiana Coke's potential

claims under New York law. De Simone Dec. Ex. A. Italiana Coke concluded that "[i]f United

6

does not confirm in writing that it will abide by the terms of that agreement by May 13, 2008, [Italiana Coke] will have no choice but to pursue all legal and equitable remedies." *Id.* The very next day, on May 7, 2008, United filed a complaint in the Eastern District of Virginia (the "Virginia Complaint"), seeking a judicial declaration that no contract existed. *Id.* ¶ 3. United did not notify Italiana Coke that it had filed the action until May 12, 2008. *Id.* ¶ 4. United's counsel subsequently purported to effect service of process on Italiana Coke by sending a copy of the summons and the Virginia Complaint to one of Italiana Coke's officers via Federal Express delivery on May 23, 2008, which was received on May 27, 2008. *Id.* ¶ 5.

On May 20, 2008, Italiana Coke initiated the instant action for breach of contract against United (the "Complaint"), seeking, *inter alia*, a judicial declaration that the 2008-2009 Contract is valid and enforceable and that the parties must arbitrate their disputes in New York, in accordance with the arbitration clause contained in the 2008-2009 Contract. *See* Cmplt. ¶¶ 41-48. In addition, the Complaint asserts claims for (i) specific performance, (ii) money damages resulting from United's breach of contract, and (iii) promissory estoppel. *Id.* ¶¶ 49-56, 64-74. Italiana Coke served United via hand delivery on May 27, 2008. De Simone Dec. Ex. F.

## ARGUMENT

## I.     PERSONAL JURISDICTION OVER UNITED IN NEW YORK IS PROPER

At this early stage of litigation, Italiana Coke is only required to make a *prima facie* showing of jurisdiction in order to avoid dismissal, even if United offers controverting evidence. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). In assessing whether Italiana Coke has made the required showing, all pleadings and affidavits should be construed in the light most favorable to it, and where doubts exist, they should be resolved in Italiana Coke's favor. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir. 1985); *M. Shanken Commc'ns, Inc. v. Cigar500.com*, 2008 WL 2696168, at *3 (S.D.N.Y. July 7, 2008)

(Koeltl, J.).  As described below, Italiana Coke has made a *prima facie* showing that jurisdiction is proper in this case.

      A.      **United Is Subject To The Specific Jurisdiction Of This Court**

      1.      New York's Long-arm Statute Confers Jurisdiction Over United[2]

New York's long-arm statute provides that jurisdiction over a nonresident, such as United, may be exercised by the Court if:  (i) United "transacted business" within New York; and (ii) the claim against United "arises out of" that business transaction.  N.Y. C.P.L.R. § 302(a)(1); *see Cutco Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986).  In determining whether a nonresident corporation has "transacted business" within the state, New York courts evaluate the "totality of the circumstances," including "whether the contract was negotiated or executed in New York" and "whether the contract contains a New York choice-of-law, forum-selection or consent to jurisdiction clause."  *ESI, Inc. v. Coastal Corp.*, 61 F. Supp. 2d 35, 57 (S.D.N.Y. 1999); *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996).  Because the New York long-arm statute is a "single act" statute, even an isolated contact with New York, if meaningful enough, is sufficient to confer jurisdiction.  *Packer v. TDI Sys., Inc.*, 959 F. Supp. 192, 197 (S.D.N.Y. 1997); *Chemco Int'l Leasing, Inc. v. Meridian Eng'g, Inc.*, 590 F. Supp. 539, 541 (S.D.N.Y. 1984) ("New York courts recognize that where a defendant has entered the state, even for a day, to negotiate and execute a contract on which suit is eventually brought, § 302(a)(1) confers personal jurisdiction."); *Gianino v. Panacya, Inc.*, 2000 WL 1224810, at *5 (S.D.N.Y. Aug. 29, 2000) ("Transacting business ... requires only a minimal quantity of activity, provided that it is of the right nature and quality.").

United asserts that "there are … no allegations of contractual negotiations in New York."

---

[2] Personal jurisdiction is determined by New York law.  *See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 102-03 (2d Cir. 2006).  United does not contend otherwise.

Mot. at 11. However, United's entire Virginia complaint is premised on the notion that the NY

Meeting (and other communications between the parties during this time frame) were

negotiations regarding the contract – to argue otherwise here is blatantly contradictory and

patently without merit. It is beyond cavil that, at the NY Meeting, United's representatives

asserted that no binding contract between the parties existed and attempted to negotiate a sale of

coal at *twice* the previously agreed-upon price. Busdraghi Dec. ¶ 38.[3]  When Italiana Coke's

representatives refused to agree to United's price gauging terms, the parties negotiated and then

entered into an interim agreement in order to, among other things, fulfill the remaining coal

requirements of the 2007-2008 Contract and to preserve each side's arguments with respect to

the formation of the 2008-2009 Contract (which has become the subject of this action and the

Virginia Action). Mot. at 4. In addition, the interim agreement substituted the Pocahontas coal

that had previously been meant by all parties to be delivered under the terms of the 2008-2009

Contract and had already been loaded for Italiana Coke prior to the NY Meeting for the

remaining Wellmore coal due under the 2007-2008 Contract. *Id.* ¶ 39.

   Significantly, the meeting between the parties in New York was one of only two in-

person meetings regarding the 2008-2009 Contract and the only meeting that took place within

the US. The importance of the NY Meeting, including United's breach of the 2008-2009

Contract, the negotiations that ensued, and the interim agreement that was entered into, cannot be

---

[3] United, attempting to rely on *Cutco,* mischaracterizes the NY Meeting as an attempt "to
renegotiate an agreement." Mot. at 11. Not only does United misrepresent the facts regarding
the NY Meeting (see above), it mischaracterizes *Cutco* on the law as well. In fact, the *Cutco*
court found that personal jurisdiction was satisfied under factually similar circumstances as those
at bar, and held that post-contractual acts, such as the NY Meeting, are relevant to a Court's
jurisdictional analysis. 806 F.2d at 367 ("Acts performed by a defendant subsequent to the
execution of a contract are ordinarily of jurisdictional consequence."). Likewise, United's
reliance on *Gen. Instrument Corp. v. Tie Mfg., Inc.*, 517 F. Supp. 1231 (S.D.N.Y. 1981) is
misplaced, as the cause of action in that case (unlike the instant matter) arose before
the nonresident defendant had any contact with New York.

minimized by United's empty rhetoric, and plainly is sufficient to confer jurisdiction in this

matter as "transact[ing] business" in New York.  *Viacom Int'l, Inc. v. Melvin Simons Prods.*,

Inc., 774 F. Supp. 858, 865 (S.D.N.Y. 1991) (defendant's entry into New York to negotiate or

sign a contract is a "weighty factor" in determining whether defendant has transacted business in

New York); *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1530-31 (S.D.N.Y.

1985) ("Preliminary negotiations in New York that are essential to the existence of the contract

provide sufficient contact to establish New York's personal jurisdiction over the nondomiciliary

defendant."); *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.,* 209 N.E.2d 68, 75, 15

N.Y.2d 443, 456-57 (1965) ("[T]he statutory test may be satisfied by a showing of other

purposeful acts performed … in this State in relation to the contract, albeit preliminary or

subsequent to its execution."); *Geller v. Newell,* 602 F. Supp. 501, 503 (S.D.N.Y. 1984) (finding

jurisdiction where defendant, during a one day visit to New York, negotiated and agreed in

principle on a contract, but executed the contract in Georgia); *Fabrikant & Sons, Inc. v. Kahn,*

*Inc.*, 144 A.D.2d 264, 533 N.Y.S.2d 866 (1st Dept. 1988) (finding jurisdiction where defendant

had a single meeting in New York followed by further business dealings outside the state).

     In addition, the NY Clauses support a finding that United transacted business in New

York.  United admits, as it must, that all previous coal contracts between the parties contained a

New York choice-of-law and a New York forum-selection clause for arbitration.  To avoid the

jurisdiction of this Court, United now claims for the first time that the NY Clauses "were not

acceptable" as part of the 2008-2009 Contract, because United "wanted the application of

Virginia law and Virginia judicial, as opposed to arbitral, forum."  Mot. at 11-12.  This contrived

assertion is belied by the correspondence exchanged between the parties memorializing their

agreement and the written versions of the 2008-2009 Contract that United sent to Italiana Coke

on two occasions:  once in January of 2008 and again less than a week before the NY Meeting.

Both versions of the contract – *drafted by United* – contained the NY Clauses, without any

indication whatsoever that such clauses were not acceptable to United.  Busdraghi Dec. Exs. F,

L.  Indeed, contrary to United's newly-minted story, at no point prior to the filing of complaints

in New York and Virginia did it propose any changes to the NY Clauses.  *See id.* ¶ 36.

      Recognizing that the NY Clauses heavily weigh in favor of establishing jurisdiction over

United, United contends that a choice of law provision is "not dispositive."  *See* Mot. at 12.

However, the "totality of the circumstances" test does not consider *any* one factor as dispositive.

*Agency Rent A Car Sys.*, 98 F.3d at 29.  Importantly, courts have held that New York choice-of-

law and forum-selection clauses constitute significant contact with the state and are relevant in

determining whether a nondomiciliary transacted business in New York.  *Lancaster v. Zufle*, 165

F.R.D. 38, 41 (S.D.N.Y. 1996); *Uniroyal, Inc. v. Heller*, 65 F.R.D. 83, 91 (S.D.N.Y. 1974)

(noting that a New York choice of law clause is "a significant contact with this state"); *Cutco*,

806 F.2d at 367 (recognizing that choice of law provisions are relevant in determining whether

"a nondomicilliary 'transacted business' for CPLR 302(a)(1) purposes"); *Benjamin Sheridan

Corp. v. Benjamin Air Rifle Co.*, 827 F. Supp. 171, 176 (W.D.N.Y. 1993).[4]

      Finally, courts require merely an "'articulable nexus between the business transacted and

the cause of action.'"  *M. Shanken*, 2008 WL 2696168, at *6 (Koeltl, J.) (quoting *McGowan v.

Smith*, 419 N.E.2d 321, 323 (N.Y. 1981)).  Specific jurisdiction need not "be grounded upon

either the final act or the ultimate act causing the injury.  It is sufficient if the cause of action is

---

[4] Indeed, even the cases United relies on recognize that a choice-of-law clause is a significant and
relevant factor in analyzing personal jurisdiction. *Sunward Elecs., Inc. v. McDonald*, 362 F.3d
17, 23 (2d Cir. 2004) ("A choice of law clause is a significant factor in a personal jurisdiction
analysis because the parties, by so choosing, invoke the benefits and protections of New York
law."); *Berkshire Capital Group, LLC v. Palmet Ventures, LLC*, 2007 U.S. Dist. LEXIS 69987,
at *9 (S.D.N.Y. Sept. 21, 2007).

related to and grows out of the transaction of business in New York." *ESI, Inc.*, 61 F. Supp. 2d at 62. There is clearly a substantial relationship between United's activities in New York and the underlying claims at issue: the NY Meeting, *inter alia*, is the place where United first expressed its intention to breach the 2008-2009 Contract, and was the catalyst for a series of interactions between the parties that led to the instant litigation. *See* Cmplt. ¶¶ 32-34. Accordingly, the contacts satisfy the requirements of the New York long-arm statute.

### 2.  Jurisdiction Over United Comports With Due Process

The exercise of jurisdiction under the New York long-arm statute will comport with due process if "the defendant purposefully avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *ESI, Inc.*, 61 F. Supp. 2d at 57. Due process also requires a finding that United has purposefully established "minimum contacts" with New York, and the quality and nature of United's New York contacts are "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316-17 (1945).

In light of the facts alleged in the Complaint regarding the NY Meeting, this Court's exercise of personal jurisdiction over United fully satisfies the requirements of due process. *ESI, Inc.*, 61 F. Supp. 2d at 62-63. Moreover, given that the 2008-2009 Contract, as well as all previous contracts between the parties, contained the NY Clauses, the exercise of personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id.*

Indeed, for the purpose of a due process analysis, it makes no difference whether the NY Meeting is properly viewed from Italiana Coke's perspective (as the place where United's breach of contract occurred, *see* Cmplt. ¶ 6) or from United's (as the place where Italiana Coke wrongfully asserted the existence of an enforceable contract during ongoing negotiations, *see* Mot. at 4). Under either view, the NY Meeting provides a sufficient basis for concluding that

defendant United "purposefully availed" itself of the privilege of conducting activities in New York, either by negotiating a contract or through breaching one, and therefore the constitutional standards for the assertion of jurisdiction by a New York Court over a foreign defendant are met.

### B.     Limited Jurisdictional Discovery Is Appropriate To Determine General Jurisdiction

As discussed above, Italiana Coke easily has demonstrated a *prima facie* showing of specific jurisdiction over United.  As such, there is no need for this Court to determine whether general jurisdiction exists.  However, assuming, *arguendo*, this Court were to determine general jurisdiction, Italiana Coke requests limited jurisdictional discovery.

Jurisdictional discovery is granted where, as here, a plaintiff has "at the very least … made a sufficient start" toward establishing jurisdiction. *BHP Trading (UK) Ltd. v. Deep Sea Int'l Shipping Co.*, 1991 WL 198747, at *5 (S.D.N.Y. Sept. 23, 1991) (finding no basis for long-arm jurisdiction over nonresident corporate defendant, but permitting jurisdictional discovery regarding general jurisdiction).  The glaring omissions in United's motion and supporting declaration highlight why jurisdictional discovery is necessary as to general jurisdiction.  United states in a conclusory fashion that it "does not *regularly* transact business in New York." Sullivan Dec. ¶ 3;  Mot. at 8.  It does not deny whether it in fact conducts some business in New York.  Jurisdictional discovery is necessary to find out exactly what business United transacts in New York, and whether its self-serving legal characterizations are warranted.  Tellingly, United has not denied selling products to New York, soliciting business in or from New York, or obtaining substantial revenue from New York – all factors that are important in determining whether United is subject to the jurisdiction of this Court.  *Hoffritz*, 763 F.2d at 58.  Because this information is not publicly available and lies solely in United's possession, limited jurisdictional discovery into these issues is warranted to determine whether general jurisdiction over United is

proper.[5] *Unique Indus., Inc. v. Sui & Sons Int'l Trading Corp.*, 2007 WL 3378256, at *7

(S.D.N.Y. Nov. 9, 2007) ("While the Court is not yet prepared to rule whether this [one]

transaction is enough to establish personal jurisdiction, it is certainly a 'sufficient start toward

establishing jurisdiction.'").  Thus, even if this Court finds that Italiana Coke has not made a

*prima facie* jurisdictional showing as to general jurisdiction, it should grant discovery on the

issue of defendant United's contacts with New York.  *Stratagem Dev. Corp. v. Heron Int'l N.V.*,

153 F.R.D. 535, 547-48 (S.D.N.Y. 1994) (declining to rule on motion to dismiss pending

jurisdictional discovery); *Alicea v. Lasar Mfg. Co.*, 1992 WL 230203, at *1 (S.D.N.Y. Aug. 31,

1992) (same).

## II.    <u>VENUE IS PROPER IN NEW YORK</u>

United seeks dismissal of this action pursuant to Rule 12(b)(3) for improper venue, or,

alternatively, seeks transfer pursuant to 28 U.S.C. § 1406(a) to the Eastern District of Virginia.

Mot. at 13-14.  28 U.S.C. § 1391(a) provides that a civil action may be brought in "a judicial

district in which a substantial part of the events or omissions giving rise to the claim occurred."

28 U.S.C. § 1391(a).  Significantly, on a Rule 12(b)(3) motion, the Court "must accept the facts

alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor."

*Micromuse Inc. v. Aprisma Mgmt. Techs.*, 2005 WL 1241924, at *2 (S.D.N.Y. May 24, 2005).

United contends that a "substantial part" of the events giving rise to the underlying claim

---

[5] Although United states in its brief that it "has no significant contact with New York … is not licensed to transact business in New York … [and] has no resident agent in New York," *see* Mot. at 13, its factual declaration submitted with the brief contains no sworn averment to support this argument.  As such, these unfounded assertions should not be credited by the Court.  *Forjone v. Leavitt*, 2008 WL 1926680, at *2 (W.D.N.Y. Apr. 30, 2008) (noting, in the context of a motion to dismiss, that "conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits, and are unsupported by factual averments, will not be accepted as true"); *Capp v. Greene*, 743 F. Supp. 273, 276 (S.D.N.Y. 1990).  These contacts, if they exist, would subject United to general jurisdiction in New York.  *The Rockefeller Univ. v. Ligand Pharms. Inc.*, 2008 WL 2139148, at *4 (S.D.N.Y. May 19, 2008); *Laumann Mfg. Corp. v. Castings USA*, 913 F. Supp. 712, 715-16 (E.D.N.Y. 1996).

did not occur in New York.  Mot. at 14.  This argument is easily refuted.  In *Gulf Ins. Co. v. Glassbrenner*, 417 F.3d 353, 357 (2d Cir. 2005), on which United principally relies, the Second Circuit recognized that "where the alleged breach occurred" is an important factor in determining whether venue is proper.  In addition, courts in this District interpreting *Glassbrenner* have suggested that negotiations, by themselves, may be enough to confer venue, even if they constitute only one communication.  *DLJ Mortgage Capital v. Cameron Fin. Group*, 2007 WL 4325893, *4-5 (S.D.N.Y. Dec. 4, 2007); *Sea Tow Servs. Int'l v. Pontin*, 472 F. Supp. 2d 349, 363 (E.D.N.Y. 2007).  As a substantial part of the events giving rise to Italiana Coke's claims, including the breach of the underlying contract, occurred in New York, *see supra* Part I.A.1, Italiana Coke has met its burden of showing that venue is proper.  *Blum v. Salomon*, 2006 WL 3851157, at *2 (S.D.N.Y. Dec. 28, 2006).

Venue is also proper in New York pursuant to 28 U.S.C. § 1391(a)(3), which provides that a civil action may be brought in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."  Because United is subject to personal jurisdiction in New York, s*ee supra* Part I.A, and because the Virginia courts lack jurisdiction over Italiana Coke, venue is proper in New York under this provision as well.[6]

## III.   UNITED'S REQUEST TO TRANSFER VENUE TO THE EASTERN DISTRICT OF VIRGINIA SHOULD BE DENIED

In deciding whether to transfer an action, courts must first determine whether the case could have been brought in the proposed transferee district.  *Boehner v. Heise*, 410 F. Supp. 2d 228, 241 (S.D.N.Y. 2006).  Then, courts assess whether the totality of the circumstances

---

[6] *3H Enters., Inc. v. Dwyre*, 182 F. Supp. 2d 249, 258 (S.D.N.Y. 2001), on which United relies, is inapposite, because the defendants did not transact business in New York, all of the defendants resided in Texas and all of the actions regarding the alleged tort occurred in Texas.

warrants transfer, considering the following factors: (i) convenience of witnesses and the parties; (ii) location of relevant documents and the relative ease of access to sources of proof; (iii) the locus of the operative facts; (iv) the availability of process to compel the attendance of unwilling witnesses; (v) the relative means of the parties; (vi) the comparative familiarity of each district with the governing law; (vii) the weight accorded to plaintiff's choice of forum; (viii) judicial economy and the interests of justice and (ix) the presence of a forum selection clause. [7]  *Id.*; *Longview Equity Fund, L.P. v. iWorld Projects & Sys., Inc.*, 2008 WL 833230, at *3 (S.D.N.Y. Mar. 26, 2008).  Significantly, "[t]he burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice."  *Id.*  As demonstrated below, the application of this test strongly favors denying transfer.

### A.    This Action Could Not Have Been Brought In Virginia

United cannot satisfy the threshold requirement that this action could have been brought in the proposed transferee district because the Virginia courts lack personal jurisdiction over Italiana Coke.  *Boehner*, 410 F. Supp. 2d at 241; *Longview*, 2008 WL 833230, at *2.  United has not and cannot demonstrate that the underlying cause of action "arose out of" any business transaction that occurred in Virginia.  *See* VA. CODE ANN. § 8.01-328.1.  United's complaint is founded on the assertion that no contract was formed between United and Italiana Coke. Significantly, no negotiations, meetings or other facts regarding the formation of the contract took place in Virginia, and the breach occurred in New York.  *Danville Plywood Corp. v. Plain & Fancy Kitchens, Inc.*, 218 Va. 533, 534 (1977) (contract for sale of goods from Virginia to

---

[7] "Courts generally consider the same factors when deciding whether to transfer pursuant to 28 U.S.C. § 1404(a) or § 1406(a)."  *Interested London Underwriters v. Kelly Global Logistics, Inc.*, 2008 WL 558038, at *5 (S.D.N.Y. Feb. 29, 2008).

Pennsylvania insufficient to confer jurisdiction where contract was negotiated and executed in Pennsylvania). Moreover, United cannot establish jurisdiction on the basis of Italiana Coke's past coal purchases from Virginia because the mere act of entering into a contract with a state resident does not constitute the necessary "minimum contacts" to justify the exercise of general jurisdiction over a nonresident company. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) ("[P]urchases and related trips, standing alone, are not a sufficient basis for a State's assertion of [general] jurisdiction."); *Eagle Paper Int'l, Inc. v. Expolink, Ltd.*, 2008 WL 170506, at *5 (E.D. Va. Jan. 17, 2008) (finding no jurisdiction where contracts for sale of goods were negotiated and executed outside of Virginia, and defendant's only contact with Virginia consisted of occasional electronic and telephonic communications).[8]

### B. The Interests Of Justice And Trial Efficiency Require Retention In This Forum

United has failed to provide a compelling argument as to why transfer would "further trial efficiency and the interest of justice." *Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 397 (S.D.N.Y. 2006). Rather, consideration of these factors overwhelmingly favors retention of this action in New York.

#### 1. The Eastern District Of Virginia Cannot Compel Arbitration

In the interest of justice, this Court should maintain this case because, unlike the Virginia court, where a related action is pending, this Court has the power to compel the parties to arbitrate their dispute in accordance with the terms of the contract. It is well-established that the decision to stay or compel an arbitration must be rendered by the court sitting in the district

---

[8] Contrary to United's assertion, these contracts were not "fully performed" in Virginia. In fact, approximately 50% of the coal originated in mines located in West Virginia, and only passed through Virginia on the way to the Port of Norfolk. *See* Busdraghi Dec. ¶ 17. Although the coal was loaded onto vessels chartered by Italiana Coke at the Port of Norfolk, the Virginia Supreme Court has held that even if the risk of loss passed to Italiana Coke at that time, that is insufficient to confer jurisdiction. *Danville*, 218 Va. at 534.

where the arbitration has been commenced or is designated to take place. *Lawn v. Franklin*, 328 F. Supp. 791, 793-94 (S.D.N.Y. 1971) (holding that proper district for deciding questions of arbitrability is the district in which the arbitration "proceedings" are to take place). Section 4 of the Federal Arbitration Act ("FAA") requires a "geographic link between the site of the arbitration and the district which, by compelling arbitration or directing its scope, exercises preliminary control." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995). As a result, "where the arbitration agreement contains a forum selection clause, only the district *in that forum* can issue a [Section 4] order compelling arbitration." *Id.*

All of the previous agreements between the parties and the agreement at issue include the NY Clauses. *See* Busdraghi Dec. ¶ 24. In this action, Italiana Coke is seeking, *inter alia*, a declaratory judgment that, in accordance with the terms of the contract, the parties shall arbitrate their dispute. Under Section 4, this Court has the authority to compel arbitration in its own district, whereas the Virginia court lacks that power. Thus, if this Court were to transfer this case to the Eastern District of Virginia, and that court were to ultimately find that the contract at issue is valid and enforceable, the Virginia court would not be able to compel the parties to arbitrate their dispute in New York, the contractually chosen forum.[9]

---

[9] To the extent United argues that Italiana Coke is seeking a declaration that the parties shall arbitrate their dispute, rather than petitioning this Court to compel arbitration, this argument is a red herring. Because United contests the validity of the underlying agreement containing the arbitration clause, it was premature for Italiana Coke to compel arbitration at the time it filed this action. If this Court declares that the parties shall arbitrate their dispute, and United refuses to submit to arbitration, Italiana Coke will certainly move to compel arbitration in this Court at that time. Further, United's contention that "if either court were to hold that a binding agreement exists, neither court would then continue to retain jurisdiction over the case since, as Italiana Coke maintains, the purported contract mandates that Italiana Coke's remaining claims be resolved by arbitration" oversimplifies the issue. Mot. at 18. It is possible that a Court could find that the parties reached a valid and enforceable agreement, but decline to enforce the arbitration clause contained therein, or find that the parties reached an agreement on all terms except the arbitration clause. In either instance, it would be necessary for Italiana Coke to pursue

2.      Transfer Would Condone Unacceptable Forum Shopping

Transferring Italiana Coke's claim to Virginia would condone and encourage the type of forum shopping that Section 4 of the FAA was designed to avert.  "[T]he statute was intended to require a party seeking to compel arbitration to apply to the proper court" to streamline the "path toward arbitration" and prevent "scattershot attacks in various judicial fora."  *Lauer*, 49 F.3d at 329.  United clearly filed its action to circumvent the NY Clauses.  *See infra* Part III.B.3. Significantly, in *Lawn*, the court held that the "first-filed" rule did not apply because (as in the instant action) New York was the only district that could properly determine the arbitrability issue.  328 F. Supp. at 794-95.  The court recognized that "[t]he mere priority of an action in another Federal District does not oust the Court of power to determine which is the better forum."  *Id.*;  *MidAm. Energy Co. v. Coastal Gas Mktg. Co.*, 33 F. Supp. 2d 787, 793 (N.D. Iowa 1998) (first-filed rule was inapplicable because the lawsuit was really a preemptive strike designed to deprive the other party of its choice of forum for the arbitration).  As such, this Court should disregard the first-filed rule and retain this action.

3.      Departure From The First-Filed Rule Is Warranted

Where, as here, there are two competing actions, courts will not apply the first-filed rule (i) "where 'special circumstances' warrant giving priority to the second suit," including anticipatory filings and forum shopping, and (ii) "where the 'balance of convenience' favors the second-filed action."  *Emp. Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 275-76 (2d

---

its claims for breach of contract.  Italiana Coke has also asserted a claim for promissory estoppel, so even if a court found that the parties did not have a valid and enforceable agreement, Italiana Coke would still be entitled to pursue its claims for equitable relief. Finally, to the extent that United asserts that this Court's continuing jurisdiction will be unnecessary because it will submit to arbitration if a court finds that the underlying agreement is valid and enforceable, it would be unfair to rely on that representation, as there is nothing to stop United from reaching a contrary decision once a determination is made on the validity of the contract.  Thus, this action should remain in the jurisdiction that has the power to compel arbitration.

Cir. 2008). Significantly, the factors relevant to the balance of convenience analysis in connection with the first-filed rule "are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. 1404(a)." *Id.* at 275. As a result, "where the first-filed rule is invoked in support of a motion to transfer, the court considers the rule as one among several factors in the overall calculus of efficiency and the interests of justice." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n  v. LaFarge N. Am., Inc.*, 474 F. Supp. 2d at 474, 481 (S.D.N.Y. 2007). Because United's first-filed action was anticipatory and motivated solely by forum shopping, this Court should deny transfer. Alternatively, this Court should retain this action because the balance of convenience under Section 1404(1) favors this district.

　　　Departure from the first-filed rule is warranted (i) "where the first-filed lawsuit is an improper anticipatory declaratory judgment action" or (ii) "'where forum shopping *alone* motivated the choice of the situs for the first suit.'" *Wausau*, 522 F.3d at 275-76. Here, the circumstances regarding the filing of United's complaint clearly indicate an attempt by United to preempt an imminent action by Italiana Coke, the true plaintiff, in this District. United filed its declaratory judgment action one day after receiving a demand letter from Italiana Coke. The demand letter set forth the bases of its claims against United under New York law. *See* De Simone Dec. ¶ 2 & Ex A. The letter concluded that "[i]f United does not confirm in writing that it will abide by the terms of that agreement by May 13, 2008, Italiana Coke will have no choice but to pursue all available legal and equitable remedies." *Id.* Tellingly, United did not notify Italiana Coke that it had filed an action until May 12, 2008. *Id.* ¶ 4. United's improper forum shopping is further evidenced by the fact that it selected the Eastern District of Virginia, a venue with virtually no nexus to this dispute. In fact, United's headquarters are in the Western District

of Virginia – over 400 miles away from the Norfolk courthouse.  United's headquarters are

almost as far away from the SDNY (under 600 miles) as the Norfolk courthouse.[10]

     Because United's action was clearly an anticipatory filing – suggesting a veritable "race

to the courthouse" – triggered by Italiana Coke's notification of its intention to sue, this Court

should decline to apply the first-filed rule.  *Mondo Inc. v. Spitz*, 1998 WL 17744, at *2 (S.D.N.Y.

Jan. 16, 1998) (finding declaratory judgment case anticipatory after plaintiff received letter

setting out bases of legal claims and notice of defendant's intention to file suit); *Factors Etc.,*

*Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 217 (2d Cir. 1978) (holding that filing was anticipatory

because Factors had "warned" in a letter to Pro Arts that if it did not cease activity it "would be

subject to a lawsuit for injunctive relief, damages and an accounting"); *Fed. Ins. Co. v. May*

*Dep't Stores Co.*, 808 F. Supp. 347, 350 (S.D.N.Y. 1992) (dismissing anticipatory action

triggered by letter informing Federal that "if it did not satisfy May's claim under the Policy by

May 15, 1992, May planned to sue on the Policy"); *compare with Wausau*, 522 F.3d at 276-77

("Insurers' declaratory judgment suit was not an improper anticipatory action-an action filed in

response to specific, direct threat of litigation" because "there was no notice letter or other

communication conveying a specific threat of litigation.").[11]

---

[10] *The Learning Network, Inc. v. Discovery Commc'ns*, 11 Fed. Appx. 297, 301 (4th Cir. 2001), relied on by United, recognizes that "[i]n some cases, there may come a point after which the potential lawsuit that may otherwise have given rise to a proper declaratory judgment action has becomes so certain or imminent, that the declaratory judgment action is merely an improper act of forum shopping, or a race to the courthouse."

[11] United's reliance on *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505 (S.D.N.Y. 2004) is misplaced.  Unlike *Schnabel*, Italiana Coke's letter was not a negotiating letter. Moreover, in *Schnabel*, plaintiff filed its action in the district in which it resides, developed the program at issue and met with defendant. The *Schnabel* Court also noted that plaintiff's second and third causes of action asserted direct claims for breach of contract, providing "even more reason to apply the first-filed rule and stay the action." 322 F. Supp. 2d at 514.  *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001) is inapposite because there was "no suggestion in this chronology, however, that Plaintiff filed suit in response

Courts in this circuit also disregard the first-filed rule where, as here, the competing actions are filed within a short time of each other. *Am. S.S.*, 474 F. Supp. 2d at 481 (departing from first-filed rule, partly because there was "only a short span of time between the filing of the two actions"); *Ursa Minor Ltd. v. Aon Fin. Prods., Inc.*, 2000 WL 1010278, at *11 (S.D.N.Y. July 21, 2000) (holding that "courts in this district have paid 'little regard to dates of filing' when competing suits were commenced within a short period of each other"—nine days in that case) (citing *Factors*, 579 F.2d at 218 (five days)); *Capitol Records v. Optical Recording Corp.*, 810 F. Supp. 1350, 1355 (S.D.N.Y.1992) (20 days)). Within a week of learning of United's anticipatory filing, Italiana Coke filed this action. De Simone Dec. ¶¶ 4-6. As United concedes, both actions were purportedly served on the same day (Mot. at 7), the parties' respective responses were originally due on the same day, and by mutual agreement, were both extended to July 1, 2008. De Simone Dec. ¶ 8. As such, departure from the first-filed rule is justified here.

### C.    Additional Factors Favor Venue In This Court

#### 1.    Italiana Coke's Choice Of Forum Should Be Honored

"[T]he district court must give due deference to the plaintiff's choice of forum which should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's forum." *Am. S.S.*, 474 F. Supp. 2d at 480; *Beatie & Osborn LLP*, 431 F. Supp. 2d at 395. Moreover, "plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim." *Boehner*, 410 F. Supp. 2d at 241. A substantial part of the events underlying the claim occurred in New York; therefore, Italiana Coke's choice of forum is

---

to a direct threat of litigation" or that "Defendants indicated to Plaintiff a firm intention to commence an action and that Plaintiff raced to this Court in anticipation of such filing." Also, in *Reliance*, the forum of the first-filed action was contained in a forum selection clause that the parties agreed upon, negating a claim of forum shopping. *Id.*

entitled to significant weight. United has not and cannot meet its burden because neither party resides in the Eastern District of Virginia, and none of the events giving rise to Italiana Coke's claims occurred there. *See supra* pp. 2-7.

      2.      <u>The Remaining Factors Strongly Favor New York</u>

An analysis of the remaining factors strongly favors New York over Virginia as the proper forum to adjudicate this dispute:

- The convenience of the parties and witnesses supports retention of venue in New York. United merely asserts that "its witnesses . . . are in Virginia" (Mot. at 16), conveniently neglecting to mention that its principal place of business and witnesses reside in Bristol, Virginia, over 400 miles from the Eastern District of Virginia. Va Cmplt. ¶ 2. United's witnesses would, thus, have to travel extensively, regardless of whether the action is pending in Norfolk or New York. Because Italiana Coke's witnesses reside in Italy, Norfolk is likewise inconvenient. Busdraghi Dec. ¶ 12. Judge Friedman, who is overseeing the Virginia Action, has recognized that New York is a more convenient location than Norfolk for a party traveling from abroad, like Italiana Coke. *Original Creatine Patent Co. v. Met-Rx USA, Inc.*, 387 F. Supp. 2d 564, 570 (E.D. Va. 2005). Further, the parties selected New York as the location for the resolution of their disputes, suggesting that it is mutually convenient.

- The locus of operative facts favors New York. Significantly, "[t]he operative facts for a matter arising out of a contract are where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *PowerDsine, Inc. v. Broadcom Corp.*, 2008 WL 268808, at * 8 (E.D.N.Y. Jan. 29, 2008). This district has a greater interest in resolving this action because of the events that transpired at the NY Meeting. *See supra* pp. 5-6.

- The contractual choice of forum clause strongly favors maintaining the action in New York. This Court has recognized that "[f]orum selection clauses are properly considered as an additional factor in a § 1404 analysis." *Longview*, 2008 WL 833230, at *3; *Gen. Capital Partners LLC v. Liberty Ridge, LLC*, 2007 WL 3010028, at * 4 (S.D.N.Y. Oct. 12, 2007) ("the presence of [a] forum selection clause [. . .] naming New York as an agreed-upon forum for disputes weighs in favor of keeping the action in this District"). Because of the NY Clauses in the current and prior contracts, this factor strongly weighs in Italiana Coke's favor.

- As this Court, not Virginia, is most familiar with New York law, which governs the current and prior contracts between the parties, this Court should retain jurisdiction. *Am. S.S.*, 474 F. Supp. 2d at 486 (while "federal courts in other states are capable of construing New York law, . . . the forum's familiarity with the governing law may be a factor even in contract cases"). Further, if the parties agreed-upon choice of law clause were ruled not to apply, the United Nations Convention on Contracts for the International Sale of Goods ("CISG"), not Virginia law, would govern this dispute. *Claudia v. Olivieri Footwear Ltd.*, 1998 WL 164824, at

*4 (S.D.N.Y. Apr. 7, 1998) ("When two foreign nations are signatories to this Convention, as are the United States and Italy, the Convention governs contracts for the sale of goods between parties whose places of business are in these different nations, absent a choice-of-law provision to the contrary.") (citing CISG, Article 1(1)(a)).

• The ease of access to sources of proof is a neutral factor. "The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents." *Am. S.S.*, 474 F. Supp. 2d at 484. Moreover, United asserts that "its witnesses and documentary evidence are in Virginia", without specifying where in Virginia such documents or witnesses are located. Mot. at 16. United does not assert that it has an office or any employees in Norfolk. Rather, United's documents relevant to this matter are likely located at its principal place of business in Bristol, Virginia. Va. Cmplt. ¶ 2. All of Italiana Coke's documents relevant to this matter are located in Italy. Busdraghi Dec. ¶ 13. As a result, this factor does not favor either jurisdiction.

• The relative docket conditions of the courts are inconsequential. Without citing any authority, United suggests that docket congestion here requires transfer. Mot. at 16. However, courts have not given much importance to relative docket congestion. *Distefano v. Carozzi N. Am., Inc.*, 2002 WL 31640476, at * 4 (E.D.N.Y. Nov. 16, 2002) ("Although docket congestion might favor transfer . . ., this factor does not carry Defendant's burden of tipping the balance in favor of transfer."); *Wine Mkts. Int'l Inc. v. Bass*, 939 F. Supp. 178, 183 (E.D.N.Y. 1996) (denying transfer despite a comparative analysis by movant of the higher caseload in the Eastern District than in the proposed transferee district). Even Judge Friedman has recognized that relative docket conditions are inconsequential in making transfer determinations. *Original Creatine*, 387 F. Supp. 2d at 572 ("The court . . . cannot allow its ability to dispose of a matter quickly to outweigh other more significant reasons in favor of a transfer.").

In conclusion, consideration of the relevant factors overwhelmingly favors retention of this action in New York. Accordingly, United's motion to transfer should be denied.

## IV.    UNITED'S MOTION TO STAY SHOULD BE DENIED

As the party moving for the stay, United bears the burden of establishing its need. *See Greystone CDE, LLC v. Sante Fe Pointe L.P.*, 2008 WL 482291, at *1 (S.D.N.Y. Feb. 20, 2008). United has not even articulated why a stay is warranted under the factors typically considered by courts in this Circuit. *Id.; Am. S.S.*, 474 F. Supp. 2d at 482. United's principal argument is that it was the first party to file suit. However, departure from the first-filed rule is warranted for the various reasons stated above. For those reasons, and because the Eastern District of Virginia cannot grant the relief requested by Italiana Coke, United's motion should be denied.

24

In similar cases, where the first-filed action was anticipatory, motivated by forum shopping, and filed close in time to the second-filed action, courts in this circuit have recognized that departure from the rule is appropriate and have denied stay motions in the second-filed action.  *Greystone*, 2008 WL 482291 at 2; *Am. S.S.*, 474 F. Supp. 2d at 491.[12]

## **CONCLUSION**

For the foregoing reasons, Italiana Coke respectfully requests that this Court deny United's motion and grant such other and further relief as this Court deems just and proper.

Dated: July 28, 2008

By:    _____/s/_____
Joseph De Simone, Esq.
Leslie Chebli, Esq.
Attorneys for Defendant Italiana Coke, S.r.l.
Mayer Brown LLP
1675 Broadway
New York, NY 10019
Telephone:    (212) 506-2500
Facsimile:    (212) 262-1910
E-mail:   jdesimone@mayerbrown.com
          lchebli@mayerbrown.com

---

[12] While there are cases holding that the first-filed court should be the court to decide whether the first-filed rule or an exception thereto applies, there are also analogous cases in this Circuit where a second-filed court has made this determination, including cases denying motions to transfer and stay the second-filed actions.  *Factors*, 579 F.2d at 219 (denying transfer and stay of second-filed action where first-filed suit was triggered by a notice letter); *Am. S.S.*, 474 F. Supp. 2d at 489 (denying transfer and stay of second-filed action where first action "began little more than a month" before the second-filed action and the first-filed court has not devoted significant judicial resources to that action); *Greystone*, 2008 WL 482291 at *2 (declining stay based on defendants' first filing where defendants did not serve process in the competing action until the day before plaintiff filed its action, did not disclose the filing of their action while they negotiated with plaintiff and filed their action after defendants were on notice of plaintiff's intent to pursue available remedies); *Lawn*, 328 F. Supp. at 794-95.  Thus, this Court has the authority to decline to apply the first-filed rule and decide this motion.