UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

................................................. X

ITALIANA COKE, S.R.L.,                    :
                                                         Case No. 08-CV-4725 (JGK)
                          Plaintiff,         :

           vs.                               :   DECLARATION OF
                                                 JOSEPH DE SIMONE, ESQ.
UNITED COAL COMPANY, LLC,          :

                          Defendant.         :

................................................. X

I, JOSEPH DE SIMONE, hereby make the following declaration:

1.       I am a partner of the law firm Mayer Brown LLP, attorneys for Plaintp

2.       iff Italiana Coke, S.r.l. ("Italiana Coke"), and have personal knowledge of the

facts set forth herein.  I submit this declaration in support of Italiana Coke's opposition to

Defendant's motion to dismiss, transfer, or stay this action.

3.       On May 6, 2008, Italiana Coke, through its attorneys at Mayer Brown LLP, sent a

letter to United Coal Company ("United"), explaining the factual and legal reasons supporting

Italiana Coke's position that a valid and enforceable contract for the sale of coal existed between

the parties for the period from April 1, 2008 to March 31, 2009 (the "2008-2009 Contract").  The

letter requested written confirmation that United would abide by the terms of the 2008-2009

Contract, and stated that Italiana Coke would pursue all legal and equitable remedies available to

it if United did not confirm in writing that it would abide by the terms of the 2008-2009

Contract.  A true and correct copy of a letter sent from Mayer Brown LLP to United, dated May

6, 2008, is attached hereto as Exhibit A.

4.      The next day, on May 7, 2008, United filed a complaint in the Eastern District of Virginia, Norfolk Division, without notifying Italiana Coke.  A true and correct copy of United's complaint is attached hereto as Exhibit B.

5.      On May 12, 2008, United's counsel notified Italiana Coke's counsel, Mayer Brown LLP, of the action filed by United in the Eastern District of Virginia, Norfolk Division on May 7, 2008.  A true and correct copy of a letter sent from United's counsel to Mayer Brown LLP on May 12, 2008 is attached hereto as Exhibit C.

6.      United's counsel subsequently purported to effect service of process on Italiana Coke by sending a copy of the summons and complaint to one of Italiana Coke's officers via Federal Express delivery on May 23, 2008.  A true and correct copy of an executed summons filed in the Eastern District of Virginia on May 30, 2008 is attached hereto as Exhibit D.

7.      On May 20, 2008, Italiana Coke filed the underlying action for breach of contract against United Coal in the Southern District of New York, seeking, *inter alia*, a judicial declaration that the 2008-2009 Contract is valid and enforceable and that the parties must arbitrate their disputes in accordance with the arbitration clause contained in the 2008-2009 Contract, or in the alternative, for specific performance or money damages.  A true and correct copy of Italiana Coke's complaint is attached hereto as Exhibit E.

8.      Italiana Coke served United via hand delivery on May 27, 2008.  A true and correct copy of an affidavit of service filed in the Southern District of New York on June 9, 2008 is attached hereto as Exhibit F.

9.     Both parties' respective responses, in this action and in the Eastern District of Virginia action, were originally due on the same day, and by mutual agreement, were both extended to July 1, 2008.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2008
New York, New York

_____
Joseph De Simone

# Exhibit A

MAYER·BROWN

Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

Main Tel (212) 506-2500
Main Fax (212) 262-1910
www.mayerbrown.com

May 6, 2008

BY UPS OVERNIGHT, FAX AND EMAIL

Joseph De Simone
Direct Tel (212) 506-2559
Direct Fax (212) 849-5559
jdesimone@mayerbrown.com

Brian D. Sullivan
Vice President, Secretary & General Counsel
United Coal Company
1005 Glenway Avenue
Bristol, VA 24201-3473

Re:    Italiana Coke - 2008/2009 Contract

Dear Mr. Sullivan:

        We represent Italiana Coke ("IC") and are writing in response to your letter to IC, dated April 18, 2008, in which you appear to deny the existence of a binding contract for the sale of coal by United Coal Company ("United") to IC for the 2008-2009 year.  United's position is extremely troubling, especially in light of the communications between the parties which clearly reveal the existence of a valid and enforceable contract.

## I.    Factual Background

        As you are no doubt aware, representatives of IC and United orally agreed to the terms of a contract for the sale of coal for the 2008-2009 year at a meeting held in Stockholm, Sweden, on or around December 4, 2007 (the "Stockholm meeting").  A few days later, on December 7, 2007, Monica Zappalaglio of Agenzia Carboni  – United's agent in Italy – memorialized the terms of the agreement in an email to both IC and United that included a description of the goods to be sold (Wellmore and Pocahontas coal), the term of the agreement (April 1, 2008 to March 31, 2009), the quantity to be sold (80,000 metric tons, plus or minus 10% at the buyer's option ), and the price ($123/MTC for Wellmore and $135/MTC for Pocahontas, plus a freight fuel surcharge).  Further, Agenzia Carboni's email stated, "All other terms and conditions as per current contracts in force."  On December 10, 2007, IC followed up with an additional confirmatory email to Ralph Haring, United's Vice President of Sales, stating "we wish to confirm what we agreed . . . ." and setting forth contract terms identical to those memorialized in Agenzia Carboni's email.  Significantly, in response, on December 14, 2007, Mr. Haring sent an email to IC stating that, aside from United's request for a variance in the "contractual moisture quality" of some of the coal to be shipped, United could "confirm" the contract as memorialized in IC's email.  IC's prompt acceptance of this minor contractual modification[1] was

---

[1]        The moisture variance request is clearly not an "essential" or "material" contract term, as evidenced by Mr. Haring's admission in his December 14, 2007 email that "[a]ll of our other customers … have agreed to this small variance." (emphasis added).

Mayer Brown LLP

Brian D. Sullivan
May 6, 2008
Page 2

communicated by Agenzia Carboni to United.

Importantly, the drafts circulated by United's agent, Agenzia Carboni, by their clear language, indicated that a contract had been formed at the Stockholm meeting.[2]  Indeed, in an email to Agenzia Carboni, IC specifically stated that the terms and conditions in the draft contracts were in accordance with those agreed upon at the Stockholm meeting.  Moreover, although United sent IC several emails regarding production difficulties experienced at United's mines over the next several months, at no point did United ever suggest that no contract for the sale of coal had been formed for the 2008-2009 year.[3]  For example, United's email to IC dated March 4, 2008, which describes production problems at United's coal mines, concludes by stating that shipments of Wellmore coal for "next year's business," might "fall behind for the next several months."  Far from indicating a lack of agreement, this email – and others like it – indicate that both United and IC were conducting business with the understanding that a valid contract for the 2008-2009 coal year had been entered into at the Stockholm meeting.

## II.    Discussion

### A.    The Parties Agreed To Be Bound

United's letter of April 18, 2008 asserts that there is "no contractual obligation for [IC] to purchase, or for [United] to sell, 2008-2009 coal" because the parties "never agreed upon and executed a written agreement for the 2008-2009 coal year."  This assertion is contrary to the well-established legal standard for contract formation under New York Law, which holds that in certain circumstances such as ours, where all the substantial terms of a contract have been agreed upon, an informal agreement can be considered binding even if the parties contemplate subsequently memorializing their contract in a formal document.  *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984) (citing *Municipal Consultants & Publishers, Inc. v. Town of Ramapo*, 47 N.Y.2d 144, 390 N.E.2d 1143, 1145 (1979)).

Under New York law, the key to contract formation is not the existence of a signed document, but rather the intention of the parties to be bound by their agreement.  *See Bitumenes Orinoco, S.A. v. New Brunswick Power Holding Corp.*, 2007 WL 485617, at *12  (S.D.N.Y. Feb. 13, 2007) ("'What matters are the parties' expressed intentions, [their] words and deeds [] which constituted objective signs in a given set of circumstances.'") (quoting *R.G. Group, Inc.*, 751 F.2d 69 at 74).  In determining whether the parties intended to be bound, New York courts look to the following factors:

---

[2]       These draft contracts contain a New York choice of law clause, as do the parties' prior contracts for the year 2007-2008.  Accordingly, we analyze the contract herein under New York law, without prejudice to and reserving IC's right to argue that New York is not the applicable law.

[3]       As you know, IC has been extremely accommodating regarding United's production difficulties and has greatly reduced its contractual requirements to assist United.

Brian D. Sullivan
May 6, 2008
Page 3

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Orinoco, S.A.*, 2007 WL 485617, at *12 (quoting *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985)). From the correspondence between IC and United detailed above, it is clear that these factors weigh heavily in favor of IC's claim that a valid contract was entered into at the Stockholm meeting, even in the absence of a signed contract.

First, at the time the contract was entered into, neither party made any express reservation to be bound only by a writing.[4] Rather, all of the communications between the parties acknowledged the existence of an agreement. Agenzia Carboni's email of December 7, 2007 stated that "we confirm with pleasure the following Terms and Conditions agreed for the contract year 2008/2009." Similarly, IC's December 10, 2007 email to United clearly states that its purpose is to "confirm what we agreed." Most importantly, in response, on December 14, 2007, Mr. Haring sent an email to IC stating that, aside from United's request for a variance in the "contractual moisture quality" of some of the coal to be shipped, United could "confirm" the contract as memorialized in IC's email. Moreover, this and subsequent correspondence also evinces a clear understanding between the parties that a binding contract existed, including United's request for "a variance on our contractual moisture quality," and United's emails of February 18 and March 4, 2008, noting production delays and assuring IC that the only consequence would be that "earlier shipments … on next year's business might fall behind a few months." (emphasis added). Far from a reservation not to be bound except by a writing, United's language clearly indicates that it intended to be bound by the agreement reached at the Stockholm meeting.

Second, United partially performed by shipping two holds of coal to the port where IC's boat was waiting. Although the first hold of coal was meant as a shipment under the parties' 2007-2008 coal contract, the second hold was clearly contemplated as a shipment under the parties' 2008-2009 contract, and as such, constitutes partial performance on United's part.

Third, all of the terms of the contract were agreed upon at the Stockholm meeting, as evidenced by the confirmation emails sent by both parties, which included the goods at issue, the term of the agreement, the quantity to be sold, and the price term and incorporated the remaining

---

[4]      United's assertion that its March 8, 2008 email to IC operated as an express reservation not to be bound absent a writing cannot be taken seriously, as it was sent over three months after the contract at issue had been entered into and confirmed via email, and less than a month before the start of the 2008-2009 contract term was to commence. Indeed, this was the first time that United notified IC that the contract had to be "signed by both UCC and Italiana Coke prior to any shipments under the 2008 agreement" and indicated that certain clauses would have to be revised.

Brian D. Sullivan
May 6, 2008
Page 4

terms from the parties' existing contract for the 2007-2008 year. United's recent assertion that two minor issues – the precise wording of the force majeure clause and the "10% buyer's option" – remained to be negotiated is merely a belated effort to undermine the agreement reached in December. Tellingly, United did not even raise these issues until March 26, 2008. Moreover, even the revised draft by United accompanying the March 26, 2008 email references the "AGREEMENT made the 4th day of December 2007 . . . ." United's attempt to create outstanding issues is belied by the fact that all of the parties have acknowledged that the "essential" or "material" issues were agreed to orally at the Stockholm meeting.

Finally, this agreement is not the type of contract that must always be set down in a formal writing. This is evident from, *inter alia*, emails between IC and United on May 26, 2007 and June 5, 2007, in which the parties, via email, agreed to enter a contract for the sale of coal over and above their existing 2007-2008 agreement. From this prior course of dealing, it is clear that the contract at issue is not the type that requires a writing to be valid and enforceable.

B.    The Statute Of Frauds Does Not Bar The Enforcement Of The Contract

To the extent that United intends to raise a Statute of Frauds defense to bar the enforcement of the oral agreement reached by the parties, that argument will not withstand scrutiny. While a formal contract was never executed, the Statute of Frauds only requires a "writing sufficient to indicate that a contract for sale has been made … and signed by the party against whom enforcement is sought or by his authorized agent or broker." N.Y. U.C.C. 2-201(1). In this case, Agenzia Carboni's December 7, 2007 email, reciting the terms of the contract, and Ralph Haring's confirmatory email on behalf of United, bearing his signature block, clearly demonstrate that a contract was entered into by the parties at the Stockholm meeting. Because New York courts have recognized that emails satisfy the Statute of Frauds' "signed writing" requirement, the Statute of Frauds does not bar enforcement of the contract at issue. *See, e.g.*, *Rosenfeld v. Zerneck*, 4 Misc.3d 193, 195-96, 776 N.Y.S.2d 458, 460 (N.Y. Sup. Ct. 2004); *Bazak Int'l Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377, 383-85 (S.D.N.Y. 2005).

Moreover, these emails, and others exchanged between the parties, also satisfy the "merchant's exception" to the Statute of Frauds provided in the Uniform Commercial Code ("U.C.C."), which clearly states that:

> Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

N.Y. U.C.C. § 2-201(2). Significantly, courts have recognized that emails can satisfy the "writing in confirmation" requirement so as to invoke the merchant's exception. *See Bazak Int'l Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377, 383-85 (S.D.N.Y. 2005) (upholding as

Brian D. Sullivan
May 6, 2008
Page 5

enforceable contract where buyer orally agreed to purchase goods from seller, then sent an email to confirm agreement and received no repudiation from seller); *Bazak Int'l Corp. v. Mast Indus., Inc.,* 73 N.Y.2d 113, 538 N.Y.S.2d 503, 535 N.E.2d 633, 638 (1989) (*"Mast Industries"*) (holding that purchase orders retained without objection were sufficient for the purposes of the "merchant's exception" because they "afford a basis for believing that they reflect a real transaction between the parties."). In the instant case, Agenzia Carboni's December 7, 2007 email, IC's December 10, 2007 email, and United's December 14, 2007 email constitute writings "in confirmation" of the agreement reached at the Stockholm meeting, and as such, satisfy the Statute of Frauds.

C.    United is Estopped From Denying the Existence of the Contract.

Even assuming, *arguendo*, that no enforceable contract exists, the doctrine of promissory estoppel requires United to fulfill the terms of the agreement laid out at the Stockholm meeting. In New York, promissory estoppel has three elements: "'a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance.' " *Esquire Radio & Elec., Inc. v. Montgomery Ward & Co., Inc.*, 804 F.2d 787, 793 (2d Cir. 1986) (quoting Restatement (Second) of Contracts § 90 (1981)). Here, IC relied on United's promise to sell a certain amount of coal to IC over the course of the 2008-2009 coal year from the time of the Stockholm meeting up until just before the first delivery of coal was have been made in April of 2008. Because of its reliance on the agreement, IC did not contract with anyone else for the purchase of the coal it requires for the 2008-2009 year. Further, in the interim, the price of coal has risen significantly and IC will be injured if it is required to purchase its coal requirements at market prices – if it can even acquire the coal it requires – rather than at those prices negotiated and agreed upon at the Stockholm meeting. Permitting United to avoid the contract at issue in the face of the oral agreement and IC's detrimental reliance would unjustly enrich United and unfairly prejudice IC.

D.    The Oral Agreements in Enforceable Under the CISG

Finally, we note that if New York law does not apply to the instant dispute (a point we do not at all concede), the question of contract formation would be governed by the United Nations Convention on Contracts for the International Sale of Goods ("CISG") which applies to all sales transactions where the parties have their places of business in different Contracting States and have not agreed upon a choice of law provision to govern their contractual disputes. *See* S. Treaty Doc. No. 98-9 (1983), 19 I.L.M. 668 (1980-) (entered into force on Jan. 1, 1988), 52 Fed. Reg. 6262-80, 7737 (1987), U.N. Doc. A/Conf.97/18 (1980) [hereinafter "CISG"], arts. 1, 6. Both Italy and the United States are signatories to the CISG, which expressly disclaims any statute of frauds or parole evidence rule, and instead, embraces a practical approach that recognizes freedom of contract: "A contract of sale need not be concluded in or evidenced by writing and is not subject to any other requirement as to form. It may be proved by any means, including witnesses." CISG, art. 11; *see also TeeVee Toons, Inc. v. Gerhard Schubert GmbH,*

Brian D. Sullivan
May 6, 2008
Page 6

2006 WL 2463537, at *7 (S.D.N.Y. Aug. 23, 2006) ("Unlike American contract law, the CISG contains no statute of frauds."); *Atla-Medine v. Crompton Corp.,* 2001 WL 1382592, at *5 n.6 (S.D.N.Y. Nov. 7, 2001) ("Where applicable, the CISG may render enforceable agreements not evidenced by a writing and therefore subject to the Statute of Frauds."). Thus, under the CISG, the oral agreement entered into between IC and United is a valid and enforceable contract.

\*          \*          \*

In conclusion, because a valid and enforceable contract for the sale of coal exists between United and IC for the 2008-2009 year, and because United is currently in breach of that agreement, IC has been damaged and will continue to incur damages based on United's refusal to honor the agreement reached at the Stockholm meeting. If United does not confirm in writing that it will abide by the terms of that agreement by May 13, 2008, IC will have no choice but to pursue all available legal and equitable remedies. We look forward to your prompt response.

Very truly yours,

*Joseph De Simone / al*

Joseph De Simone


cc:    Massimo Busdraghi
       Pietro Palandri
       Stefano Tomisti

# Exhibit B



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

UNITED COAL COMPANY, LLC,       )
a Virginia Limited Liability    )
Company,                         )
1005 Glenway Avenue,             )
Bristol, VA 24201,               )
                                 )
        Plaintiff,               )
                                 )
        v.                       )   CIVIL ACTION NO. 2:08cv212
                                 )
ITALIANA COKE, s.p.a.,           )
an Italian Company               )
Via Stalingrado 25               )
17014 S. Giuseppe di Cairo       )
Savona, Italy                    )
                                 )
        Defendant.               )

FILED

5-7-08
MAY - 7 2008

CLERK, US DISTRICT COURT
NORFOLK, VA

## COMPLAINT

Plaintiff United Coal Company, LLC (hereinafter, "United Coal"), through its undersigned

counsel, and for its complaint seeking declaratory judgment against Defendant Italiana Coke,

s.p.a. (hereinafter, "Italiana Coke"), states, claims and alleges as follows:

### INTRODUCTION

1.      This is an action seeking a judicial declaration that no valid or enforceable contract

exists between the parties for the purchase and sale of metallurgical coal for the period between

April 1, 2008 and March 31, 2009. Defendant Italiana Coke claims that the parties entered into a

binding contract obligating United Coal to supply Italiana Coke with approximately 80,000 metric

tons of metallurgical (or hard coking) coal between April 1, 2008 and March 31, 2009. United

Coal maintains that, notwithstanding negotiations, no binding or enforceable contract was ever

1

finalized, agreed upon or executed. Italiana Coke has made demands that amount to an antagonistic assertion of rights and that create substantial operational uncertainty for United Coal. As a result of the parties' conflicting positions, an actual and justiciable controversy exists over the parties' respective rights and obligations. This controversy can and should be fully resolved by way of declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

**PARTIES**

2.     Plaintiff United Coal is a limited liability company existing and organized under the laws of Virginia with its principal place of business at 1005 Glenway Avenue, Bristol, Virginia 24201. United Coal, for diversity purposes, is deemed to be a citizen of Virginia, Tennessee and Delaware. Through its subsidiaries, United Coal's business operations include underground and surfacing coal mining, coal preparation plants and rail loading facilities in Buchanan, Tazewell and Dickinson Counties, Virginia, as well as Raleigh County, West Virginia.

3.     Defendant Italiana Coke is, upon information and belief, a corporation organized and existing under the laws of Italy with its office at Via Stalingrado 25, 17014 S. Giuseppe di Cairo, Savona, Italy. Italiana Coke operates worldwide, and is involved in, among other things, manufacturing and supplying steel to various markets such as the automotive and building industries.

**JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and it is between a citizen of Virginia and Tennessee, on the one hand, and a citizen/subject of a foreign state, on the other.

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim asserted occurred in or, alternatively, would have occurred in this District, performance of the contract that Italiana Coke alleges to exist, and which United Coal denies, would have taken place in this District, and Italiana Coke is subject to jurisdiction in this District.

6.    This Court has personal jurisdiction over Italiana Coke because it has transacted business in the Commonwealth of Virginia by entering into prior written and executed contracts for the purchase and sale of coal that were fully performed in Virginia, negotiating for additional contracts that would be performed in Virginia, and claiming to have completed a contract to be performed in Virginia that is the subject of this dispute.

### FACTS

7.    United Coal, through its subsidiaries, has supplied metallurgical or hard coking coal to Italiana Coke in connection with Italiana Coal's production of steel since 2006. The parties' commercial relationships have been governed by one-year, written "Sale and Purchase Agreements" that have run from April 1st through March 31st of the following year.

8.    After extensive negotiation, Italiana Coke and one of United Company's subsidiaries, Wellmore Coal, LLC, executed a written Sale and Purchase Agreement for the purchase and sale of metallurgical coal for the year April 1, 2006 through March 30, 2007.

9.    After extensive negotiation, Italiana Coke executed two separate written Sale and Purchase Agreements for the purchase and sale of metallurgical coal for the year April 1, 2007 through March 30, 2008, one contract for coal from Wellmore Coal, LLC, and one contract for coal produced by Pocahontas Coal, LLC, another of United Coal's subsidiaries.

3

10. In late 2007, negotiations began for a potential new coal purchase and sale agreement for the 2008-2009 year. As had been the custom and practice in the prior years, it was understood that any agreement would require a meeting of the minds on all material terms and conditions and a final written and executed contract or contracts, and that no binding or enforceable agreement would exist unless and until a written agreement was executed.

11. Consistent with past-practice, the parties' exchanged, discussed and negotiated over a variety of potential contract terms relating to, among other things, price, quantities, moisture levels, force majeure events, purchase options and delivery requirements with the understanding that no enforceable contract would exist unless and until a meeting of the minds was reached on all terms, and unless and until a written agreement was executed.

12. In March 2008, the parties exchanged drafts of a potential agreement. Differences arose regarding various contract provisions, including purchase option and force majeure provisions. Additionally, no final agreement on price was ever reached. In early April 2008, representatives of United Coal met with representatives of Italiana Coke in New York City to continue negotiating a potential purchase and sale contract for the 2008-2009 year, however no such agreement was ever reached.

13. Neither United Coal nor any of its subsidiaries, on the one hand, and Italiana Coke, on the other hand, ever agreed on all material terms with respect to a potential contract to purchase and sell metallurgical coal between April 1, 2008 and March 31, 2009.

14. Neither United Coal nor any of its subsidiaries, on the one hand, and Italiana Coke, on the other hand, ever executed a written contract with respect to the purchase and sale of metallurgical coal between April 1, 2008 and March 31, 2009.

4

15.     Notwithstanding the foregoing, Italiana Coke has taken the position that the parties reached an enforceable contract for the one-year period commencing April 1, 2008 and that United Coal is obligated, upon Italiana Coke's direction, to deliver, load, trim and stow approximately 80,000 metric tons of coal in ocean-going vessels chartered by Italiana Coke that are to dock at Lambert's Point Pier No. 6 in Norfolk, Virginia pursuant to that purported agreement.  According to Italiana Coke, the total sale price for such coal is approximately $10 million (between $123 and $135 per metric ton).

16.     Italiana Coke has indicated that it intends to nominate a vessel to be loaded for the first delivery of coal under the purported contract beginning in June 2008.  Italiana Coke has asserted that even though there is no final written and executed contract, United Coal's refusal to deliver coal to the Lambert's Point Pier No. 6 will expose United Coal to various legal claims and liabilities, including cover damages.  The current market price, per metric ton of like-quality metallurgical coal delivered FOBT is in excess of $275.

17.     Italiana Coke has made an antagonistic assertion of claim, namely that a valid and enforceable contract for the sale of coal exists between United Coal and Italiana Coke for the 2008-2009 year, that United Coal is in breach of said alleged contract, and that Italiana Coke has been and will continue to be damaged by United Coal's alleged refusal to honor the purported contract.

## COUNT ONE: DECLARATORY JUDGMENT

18.     United Coal incorporates by reference the allegations made in paragraphs 1 through 17 above as if each were separately restated here.

19.     Italiana Coke's assertion that United Coal is obligated to sell approximately 80,000 metric tons of metallurgical coal to it at certain prices and in certain quantities for the one-year

5

period beginning April 1, 2008 and that United Coal must begin performing when Italiana Coke nominates a vessel in June 2008 is an antagonistic assertion of rights.

20.     Italiana Coke's assertion creates significant uncertainty for United Coal, impairs its ability to negotiate with other companies for the sale and delivery of its finite amount of metallurgical coal during the time period at issue, and creates substantial logistical difficulties in its business operations.

21.     Without a prompt determination of whether or not a binding and enforceable agreement exists between the parties for the purchase and sale of metallurgical coal for the 2008-2009 year, United Coal cannot know with certainty whether it is exposing itself to liability if it does not accede to Italiana Coke's demands or if it undertakes to sell some or all of the finite amount of metallurgical coal that its subsidiaries can mine or have already mined, which sales would necessarily limit its ability to sell coal to Italiana Coke during the time period that Italiana Coke claims it has a binding contract to purchase said coal.

22.     A declaratory judgment in this case will serve a useful purpose in clarifying and settling the respective legal rights and obligations of the parties, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

WHEREFORE United Coal requests that the Court grant the following relief:

a.     Enter a declaratory judgment declaring that no valid or enforceable contract exists between United Coal, or any of its subsidiaries, on the one hand, and Italiana Coke, on the other, regarding the purchase and sale of metallurgical coal for the one-year period commencing April 1, 2008;

b.     Grant United Coal such other and further relief as the Court deems just and appropriate.

6

**UNITED COAL COMPANY, LLC**

Michael W. Robinson
VSB No. 26522
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
Phone: (703) 760-1600
Facsimile: (703) 821-8949
mwrobinson@venable.com

Brian L. Schwalb
VSB No. 34525
575 7th Street, NW
Washington, DC 20004-1601
Phone: (202)344-4356
Fax: (202)344-8300
blschwalb@venable.com

and

Douglas E. Miller
VSB No. 38591
James H. Shoemaker, Jr.
VSB No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone: (757) 223-4500
Facsimile: (757) 249-1627
dmiller@pwhd.com

Attorneys for Plaintiff, United Coal Company, LLC

7

Court Name: EASTERN DISTRICT OF VIRGINIA
Division: 2
Receipt Number: 200004419
Cashier ID: tlevinso
Transaction Date: 05/07/2008
Payer Name: PATTEN WORNOM HATTEN DIAMONS
TE
------------------------------------
CIVIL FILING FEE
 For: PATTEN WORNOM HATTEN DIAMONSTE
 Amount:        $350.00
------------------------------------
CHECK
 Check/Money Order Num: 79370
 Amt Tendered: $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

PATTEN WORNOM HATTEN & DIAMONSTEIN

2:08cv212

**§JS 44** (Rev. 12/07)

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

United Coal Company, LLC

**(b)** County of Residence of First Listed Plaintiff  Bristol, VA

(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

See attachment

## DEFENDANTS

Italiana Coke, s.p.a.

County of Residence of First Listed Defendant  Savona, Italy

(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)  Joseph De Simone
Mayer Brown, LLP, 1675 Broadway, New York, NY 10019; (212) 506-2500

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☒ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §2201(a)

Brief description of cause:
Declaratory Judgment - Alleged Contract Rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint

JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE

DOCKET NUMBER

DATE
5/7/08

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

Michael W. Robinson
VSB No. 26522
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
Phone: (703) 760-1600
Facsimile: (703) 821-8949
mwrobinson@venable.com

Brian L. Schwalb
VSB No. 34525
575 7th Street, NW
Washington, DC 20004-1601
Phone: (202)344-4356
Fax: (202)344-8300
blschwalb@venable.com

and

Douglas E. Miller
VSB No. 38591
James H. Shoemaker, Jr.
VSB No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone: (757) 223-4500
Facsimile: (757) 249-1627
dmiller@pwhd.com

Attorneys for Plaintiff, United Coal Company, LLC

~~~~~~~~~~~~~~~~~Section Break (Next Page)~~~~~~~~~~~~~~~~~

1

# PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.

DONALD N. PATTEN
ROBERT R. HATTEN
ALAN A. DIAMONSTEIN
H. DUNCAN GARNETT, JR.
AVERY T. WATERMAN, JR.[1]
ELEANOR WESTON BROWN[2]
SOUTH T. PATTERSON
JAMES H. SHOEMAKER, JR.
HUGH B. MCCORMICK, III
STEVEN A. MEADE
DOUGLAS E. MILLER
PATRICK R. PETTITT
TODD M. LYNN
WILLIAM W. C. HARTY
JENNIFER WEST VINCENT

ATTORNEYS AND COUNSELORS AT LAW
SUITE 300
12350 JEFFERSON AVENUE
NEWPORT NEWS, VIRGINIA 23602

(757) 223-4500

FAX (757) 249-1627
WRITER'S DIRECT DIAL: (757) 223-4585
WRITER'S E-MAIL: dmiller@pwhd.com
WEBSITE: http://www.pwhd.com

KEVIN M. DIAMONSTEIN[3]
VERONICA E. MEADE SHEPPARD[4]
LINDSEY A. CARNEY
ERIN E. HIERONIMUS

OF COUNSEL
I. LEAKE WORNOM, JR.
STANLEY W. DRUCKER
WILLIAM M. MARTIN, III
J. CONARD METCALF[5, 6]
ALLAN R. STALEY

NEAL J. PATTEN (RETIRED)
THOMAS R. WATKINS (1925-1995)

[1] Admitted in VA, DC and LA
[2] Admitted in VA and NC
[3] Admitted in VA, DC, PA and NY

[4] Admitted in VA, DC and MD
[5] Admitted in CO and WA
[6] VA Pending

May 7, 2008

**VIA HAND DELIVERY**
Fernando Galindo, Clerk
United States District Court
For the Eastern District of Virginia
2400 West Avenue
Newport News, VA  23607

    **Re:**    **United Coal Company, LLC v. Italiana Coke, s.p.a.**

Dear Mr. Galindo:

    Enclosed please find the following with regard to the above-captioned matter:

1.     Original and one copy of Complaint;

2.     Check in the amount of $350.00 for filing fees;

3.     Civil Cover Sheet;

4.     Two copies of Financial Interest Disclosure Statement of Plaintiff;

5.     Summons in a Civil Action.

    Please prepare the copy for service and return it to me in the enclosed return envelope.

# PATTEN, WORNOM, HATTEN & DIAMONSTEIN, L.C.

May 7, 2008
Page 2


Thank you very much for your continuing attention.  If you have any questions or need additional information, do not hesitate to call me directly.

Very truly yours,

Douglas E. Miller

DEM:dc

Enclosures

cc:    Brian L. Schwalb, Esq. (w/ encl., via email and first class mail)
       Brian D. Sullivan, United Coal Company, LLC (w/ encl.)

# Exhibit C



| | | |
|---|---|---|
| 575 7th Street, NW<br>Washington, DC 20004 | Telephone 202-344-4000<br>Facsimile 202-344-8300 | www.venable.com |

| | | |
|---|---|---|
| **Brian L. Schwalb** | **(202) 344-4356** | BLSchwalb@venable.com |

May 12, 2008

**BY E-MAIL, FACSIMILE & U.S. MAIL**

Joseph De Simone, Esquire
Mayer Brown LLP
1675 Broadway
New York, New York 10019-5820

Re:    *United Coal Company, LLC v. Italiana Coke, s.p.a.*
          Case No. 2:08-cv-212 (E.D. Va., Norfolk Division)

Dear Mr. De Simone:

United Coal Company has retained us in connection with the dispute between it and your client, Italiana Coke, regarding whether any contract exists between the parties for the purchase and sale of certain metallurgical coals for the 2008-2009 year. I have reviewed your letter, dated May 6, and appreciate your efforts to lay out your client's perspective on the situation. Italiana Coke's views on the facts and the law differ from those of United Coal. In light of the claims and demands advanced in your letter, and the practical business exigencies raised by the disagreement, United Coal has filed a declaratory judgment action in the United States District Court for the Eastern District of Virginia, Norfolk Division, seeking a prompt declaration that there is no enforceable agreement between the parties. A courtesy copy of the summons and complaint is attached. Please let me know if you are authorized to accept service of process.

While I do not believe that it would be productive to debate each of the points in your letter, I would note that the four factors upon which you rely in asserting the existence of a binding contract, in fact, support the conclusion that no contract exists. Especially in light of the two prior year's written and signed contracts, and the nature and complexity of the proposed transaction (*i.e.* an eight-figure metallurgical coal deal involving multiple international shipments over a year-long period), the suggestion that either side reasonably believed that there would be a binding agreement in the absence of a fully executed contract is strained. Moreover, your client's contention that the recent delivery of the second of the two holds of coal "clearly was contemplated as a shipment under the parties' 2008-2009 contract and, as such, constitutes partial performance on United's part," contradicts the parties' April 3, 2008 signed agreement. Indeed, your client paid for said second delivery using the significantly lower per ton price set out in the 2007-2008 contract.

# VENABLE®LLP

Joseph De Simone, Esquire
May 12, 2008
Page 2


United Coal recognizes that reasonable minds sometimes disagree, and accordingly, it has proceeded with the Declaratory Judgment action on the assumption that a good faith business disagreement has arisen with a valued customer with whom it would like to continue a business relationship. United Coal believes that a prompt resolution of the disagreement is in everyone's best interests. While the parties were working to reach a final agreement for 2008-2009 year, the price of exported coking coal apparently moved dramatically. Without a final integrated and executed agreement that adequately addressed several issues that United Coal needed to have addressed for the 2008-2009 contract, the risk of price movement during negotiations was on both parties. If the parties are not able to resolve their disagreement, we believe that is the conclusion that the district court will reach.

In order to completely resolve the issues in dispute, however, and to ensure that Italiana Coke is able to obtain the coking coal it needs in what I understand to be a tight market (your letter even suggests that Italiana Coke might not be able to acquire the coal if United Coal does not supply it), United Coal is presently willing to offer to sell Italiana Coke the coal in the quantity and of the quality the parties were discussing at a price of $250 per metric ton, FOBT Pier 6, Norfolk Virginia, again assuming that a written agreement properly addressing all of the other material business terms (including force majeure, demurrage charges, the 10% buyer's option, etc.) is agreed upon and signed. That price is at considerable discount to the current market price for the Wellmore and Pocahontas coking coals, and is likely less than Italiana Coke could expect to find for similar coals meeting its specifications. United Coal would also be willing to accept the vessel nomination proposed for June 20-30, and supply one hold each of Pocahontas and Wellmore coal to that vessel at this price. If this is something that would be of interest to your client, please let me know right away, and the parties could work to agree upon and sign an appropriate written agreement.

Alternatively, if Italiana Coke is not willing to resolve the dispute in its entirety along the foregoing lines, but instead would prefer to continue the disagreement over whether a binding 2008-2009 contract was ever reached, United Coal would be willing to sell Italiana Coke 40,000 metric tons of Wellmore Coal at the current market price of $275 per ton, FOBT, and 40,000 metric tons of Pocahontas Coal at the current market price of $295 per ton, FOBT, with the understanding that Italiana Coke would have the right to continue claiming that a binding agreement was already reached at different prices. If your client would be interested in this alternative approach, please let me know, and we can circulate a draft of an appropriate written agreement.

# VENABLE°LLP

---

Joseph De Simone, Esquire
May 12, 2008
Page 3


In sum, as I hope is evident to you from this letter, while United Coal does not agree with Italiana Coke's contentions, it remains open and willing to work with Italiana Coke to resolve, or at least narrow, the parties' obvious disagreement.

I look forward to hearing back from you promptly as to how your client would like to proceed.

Sincerely,

Brian L. Schwalb

Enclosures

cc.    Mr. Brian D. Sullivan
       Douglas Miller, Esq.
       Michael Robinson, Esq.

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

_____Eastern_____     District of _____Virginia_____

Norfolk Division

United Coal Company, LLC

V.

Italiana Coke, s.p.a.

## SUMMONS IN A CIVIL CASE

CASE NUMBER:  2:08cv212

TO: (Name and address of Defendant)

Italiana Coke, s.p.a.
an Italian Company
Via Stalingrado 25
17014 S. Giuseppe di Cairo
Savona, Italy

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Douglas E. Miller
Patten, Wornom, Hatten & Diamonstein, LC
12350 Jefferson Avenue
Newport News, VA  23602
USA

an answer to the complaint which is served on you with this summons, within _____20_____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

Fernando Galindo
CLERK

_____5/8/08_____
DATE

Lisa Woodcock
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                Date                    *Signature of Server*


                                   _____
                                    *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## NOTICE

### CONSENT TO TRIAL BY MAGISTRATE JUDGE

Pursuant to Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c) you may request to have your case conducted before a United States Magistrate Judge upon consent of all parties and approval by a United States District Judge. In order to proceed before a Magistrate Judge, a consent form must be filed with the Clerk's Office. It may be filed jointly or separately. The consent form may be printed from the U.S. District Court website (listed below) or obtained from the Clerk's Office. Please refer to the previously mentioned rule for further information.

### FINANCIAL INTEREST DISCLOSURE STATEMENT

Pursuant to Local Rule 7.1, a financial disclosure statement must be filed by a "nongovernmental corporation, partnership, trust, [or] other similar entity that is a party to, or that appears in, an action or proceeding in this Court." This statement should be filed in duplicate with the party's "first appearance, pleading, petition, motion, response, or other request addressed to the Court". The financial interest disclosure statement may be printed from the U.S. District Court website (listed below) or obtained from the Clerk's Office. Please refer to the previously mentioned rule for further information. Failure to file the financial interest disclosure statement as required by Local Rule 7.1 will result in this first submission being filed subject to defect by the Clerk.

### WEBSITE AND CLERK'S OFFICES ADDRESSES

The website address for the U.S. District Court for the Eastern District of Virginia is www.vaed.uscourts.gov. If you do not have access to a computer, contact one of the Clerk's Offices listed below to obtain either of these forms:

Albert V. Bryan United States Courthouse
401 Courthouse Square
Alexandria, VA 22314
(703) 299-2101

Walter E. Hoffman United States Courthouse
600 Granby Street
Norfolk, VA 23510
(757) 222-7201

Lewis F. Powell, Jr. United States Courthouse
1000 East Main Street
Richmond, VA 23219
(804) 916-2220

United States Courthouse
2400 West Avenue
Newport News, VA 23607
(757) 247-0784

## <u>PROCEDURE FOR CIVIL MOTIONS</u>

This case has been assigned to United States District Judge Jerome B. Friedman.

Pursuant to Local Rule 7, a memorandum of law shall accompany all motions (unless excepted by the rule).

After all briefs are in, it is incumbent upon counsel for the moving party to confer with opposing counsel and advise the Clerk's Office by letter when a ruling or determination by submission is desired. See Local Rule 26 for discovery motion procedures.

Requests for ruling or determination without oral argument may be addressed by letter to the court.

Requests for oral argument should also be communicated to the court by letter. If Judge Friedman determines he will allow oral argument, counsel will be notified by the Judge's courtroom deputy or his secretary and a date and time will be selected.

Absent a request for hearing, the motions will be referred automatically to Judge Friedman.

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF VIRGINIA
### 600 GRANBY STREET
### NORFOLK, VIRGINIA 23510

CHAMBERS OF
JEROME B. FRIEDMAN
DISTRICT JUDGE

Dear Counsel:

Please confer with your client to consider proceeding before a United States Magistrate Judge and be prepared to make that consent, or lack thereof, known at the Scheduling Conference. The substantive rights of the parties are not affected by this decision.

Parties frequently consent to have the United States Magistrate Judges in the Norfolk and Newport News Divisions decide their cases. The court is requesting that counsel confer with their clients before the Scheduling Conference and be prepared to sign a Consent to Proceed Before a United States Magistrate Judge form at the Scheduling Conference, if they so choose. If the senior attorney in charge of the case will not be appearing at the Scheduling Conference, the court requests that the attorney who does appear at the Scheduling Conference be prepared to indicate whether or not the client will consent to trial before a Magistrate Judge.

All parties in the case must consent to have the case heard by a United States Magistrate Judge or the case will remain with me.

Thank you for your cooperation in this matter.

Very truly yours,

/s/ Jerome B. Friedman

dgs

## Rhoades, Lynne A.

**From:** cmecf@vaed.uscourts.gov
**Sent:** Thursday, May 08, 2008 12:30 PM
**To:** cmecf@vaed.uscourts.gov
**Subject:** Activity in Case 2:08-cv-00212-JBF-FBS United Coal Company, LLC v. Italiana Coke, s.p.a. Summons Issued

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### Eastern District of Virginia

## Notice of Electronic Filing

The following transaction was entered on 5/8/2008 at 12:29 PM EDT and filed on 5/8/2008
**Case Name:**      United Coal Company, LLC v. Italiana Coke, s.p.a.
**Case Number:**    2:08-cv-212
**Filer:**
**Document Number:** 3

**Docket Text:**
**Summons with one copy issued as to Italiana Coke, s.p.a. and mailed to counsel 5/8/08. (Attachments: # (1) Magistrate's notice and Judge's instructions)(lwoo)**


**2:08-cv-212 Notice has been electronically mailed to:**

Douglas Edwin Miller     dmiller@pwhd.com, debbie@pwhd.com

Michael W. Robinson     mwrobinson@venable.com, larhoades@venable.com

James Harrell Shoemaker , Jr     jshoemaker@pwhd.com, sthompson@pwhd.com

**2:08-cv-212 Notice has been delivered by other means to:**

Brian Lawrence Schwalb
Schwalb Donnenfeld & Schwalb PC
1155 21st St NW
Suite 210
Washington, DC 20036

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a

5/8/2008

**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091796605 [Date=5/8/2008] [FileNumber=1352396-0]
[7b95a5f3a2813e56bbf98d81eb2d3a2ba6807268dd2eb8bffba67e8c9bb964d9a247
349abe8775fd4b1b8f94744afd2dbe29bccb53c08d47ba6e1a7efef7f904]]
**Document description:** Magistrate's notice and Judge's instructions
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091796605 [Date=5/8/2008] [FileNumber=1352396-1]
[75ac5d930fa5795b9fdfd6bc4bd01cecdb658869a866a0dab10c742cdfdf0c14ae18
96b9c0628ada92f41439ac0d49c8899f6b32914313359bd16c75e859d86a]]



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

UNITED COAL COMPANY, LLC, )
a Virginia Limited Liability )
Company, )
1005 Glenway Avenue, )
Bristol, VA 24201, )
  )
    Plaintiff, )
  )
    v. ) CIVIL ACTION NO. 2:08cv 212
  )
ITALIANA COKE, s.p.a., )
an Italian Company )
Via Stalingrado 25 )
17014 S. Giuseppe di Cairo )
Savona, Italy )
  )
    Defendant. )

## COMPLAINT

Plaintiff United Coal Company, LLC (hereinafter, "United Coal"), through its undersigned

counsel, and for its complaint seeking declaratory judgment against Defendant Italiana Coke,

s.p.a. (hereinafter, "Italiana Coke"), states, claims and alleges as follows:

### INTRODUCTION

1.    This is an action seeking a judicial declaration that no valid or enforceable contract

exists between the parties for the purchase and sale of metallurgical coal for the period between

April 1, 2008 and March 31, 2009. Defendant Italiana Coke claims that the parties entered into a

binding contract obligating United Coal to supply Italiana Coke with approximately 80,000 metric

tons of metallurgical (or hard coking) coal between April 1, 2008 and March 31, 2009. United

Coal maintains that, notwithstanding negotiations, no binding or enforceable contract was ever

1

finalized, agreed upon or executed. Italiana Coke has made demands that amount to an antagonistic assertion of rights and that create substantial operational uncertainty for United Coal. As a result of the parties' conflicting positions, an actual and justiciable controversy exists over the parties' respective rights and obligations. This controversy can and should be fully resolved by way of declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

## PARTIES

2.    Plaintiff United Coal is a limited liability company existing and organized under the laws of Virginia with its principal place of business at 1005 Glenway Avenue, Bristol, Virginia 24201. United Coal, for diversity purposes, is deemed to be a citizen of Virginia, Tennessee and Delaware. Through its subsidiaries, United Coal's business operations include underground and surfacing coal mining, coal preparation plants and rail loading facilities in Buchanan, Tazewell and Dickinson Counties, Virginia, as well as Raleigh County, West Virginia.

3.    Defendant Italiana Coke is, upon information and belief, a corporation organized and existing under the laws of Italy with its office at Via Stalingrado 25, 17014 S. Giuseppe di Cairo, Savona, Italy. Italiana Coke operates worldwide, and is involved in, among other things, manufacturing and supplying steel to various markets such as the automotive and building industries.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and it is between a citizen of Virginia and Tennessee, on the one hand, and a citizen/subject of a foreign state, on the other.

2

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim asserted occurred in or, alternatively, would have occurred in this District, performance of the contract that Italiana Coke alleges to exist, and which United Coal denies, would have taken place in this District, and Italiana Coke is subject to jurisdiction in this District.

6.    This Court has personal jurisdiction over Italiana Coke because it has transacted business in the Commonwealth of Virginia by entering into prior written and executed contracts for the purchase and sale of coal that were fully performed in Virginia, negotiating for additional contracts that would be performed in Virginia, and claiming to have completed a contract to be performed in Virginia that is the subject of this dispute.

## FACTS

7.    United Coal, through its subsidiaries, has supplied metallurgical or hard coking coal to Italiana Coke in connection with Italiana Coal's production of steel since 2006. The parties' commercial relationships have been governed by one-year, written "Sale and Purchase Agreements" that have run from April 1st through March 31st of the following year.

8.    After extensive negotiation, Italiana Coke and one of United Company's subsidiaries, Wellmore Coal, LLC, executed a written Sale and Purchase Agreement for the purchase and sale of metallurgical coal for the year April 1, 2006 through March 30, 2007.

9.    After extensive negotiation, Italiana Coke executed two separate written Sale and Purchase Agreements for the purchase and sale of metallurgical coal for the year April 1, 2007 through March 30, 2008, one contract for coal from Wellmore Coal, LLC, and one contract for coal produced by Pocahontas Coal, LLC, another of United Coal's subsidiaries.

3

10.    In late 2007, negotiations began for a potential new coal purchase and sale agreement for the 2008-2009 year. As had been the custom and practice in the prior years, it was understood that any agreement would require a meeting of the minds on all material terms and conditions and a final written and executed contract or contracts, and that no binding or enforceable agreement would exist unless and until a written agreement was executed.

11.    Consistent with past-practice, the parties' exchanged, discussed and negotiated over a variety of potential contract terms relating to, among other things, price, quantities, moisture levels, force majeure events, purchase options and delivery requirements with the understanding that no enforceable contract would exist unless and until a meeting of the minds was reached on all terms, and unless and until a written agreement was executed.

12.    In March 2008, the parties exchanged drafts of a potential agreement. Differences arose regarding various contract provisions, including purchase option and force majeure provisions. Additionally, no final agreement on price was ever reached. In early April 2008, representatives of United Coal met with representatives of Italiana Coke in New York City to continue negotiating a potential purchase and sale contract for the 2008-2009 year, however no such agreement was ever reached.

13.    Neither United Coal nor any of its subsidiaries, on the one hand, and Italiana Coke, on the other hand, ever agreed on all material terms with respect to a potential contract to purchase and sell metallurgical coal between April 1, 2008 and March 31, 2009.

14.    Neither United Coal nor any of its subsidiaries, on the one hand, and Italiana Coke, on the other hand, ever executed a written contract with respect to the purchase and sale of metallurgical coal between April 1, 2008 and March 31, 2009.

4

15.    Notwithstanding the foregoing, Italiana Coke has taken the position that the parties reached an enforceable contract for the one-year period commencing April 1, 2008 and that United Coal is obligated, upon Italiana Coke's direction, to deliver, load, trim and stow approximately 80,000 metric tons of coal in ocean-going vessels chartered by Italiana Coke that are to dock at Lambert's Point Pier No. 6 in Norfolk, Virginia pursuant to that purported agreement.  According to Italiana Coke, the total sale price for such coal is approximately $10 million (between $123 and $135 per metric ton).

16.    Italiana Coke has indicated that it intends to nominate a vessel to be loaded for the first delivery of coal under the purported contract beginning in June 2008.  Italiana Coke has asserted that even though there is no final written and executed contract, United Coal's refusal to deliver coal to the Lambert's Point Pier No. 6 will expose United Coal to various legal claims and liabilities, including cover damages.  The current market price, per metric ton of like-quality metallurgical coal delivered FOBT is in excess of $275.

17.    Italiana Coke has made an antagonistic assertion of claim, namely that a valid and enforceable contract for the sale of coal exists between United Coal and Italiana Coke for the 2008-2009 year, that United Coal is in breach of said alleged contract, and that Italiana Coke has been and will continue to be damaged by United Coal's alleged refusal to honor the purported contract.

### COUNT ONE: DECLARATORY JUDGMENT

18.    United Coal incorporates by reference the allegations made in paragraphs 1 through 17 above as if each were separately restated here.

19.    Italiana Coke's assertion that United Coal is obligated to sell approximately 80,000 metric tons of metallurgical coal to it at certain prices and in certain quantities for the one-year

5

period beginning April 1, 2008 and that United Coal must begin performing when Italiana Coke nominates a vessel in June 2008 is an antagonistic assertion of rights.

20.    Italiana Coke's assertion creates significant uncertainty for United Coal, impairs its ability to negotiate with other companies for the sale and delivery of its finite amount of metallurgical coal during the time period at issue, and creates substantial logistical difficulties in its business operations.

21.    Without a prompt determination of whether or not a binding and enforceable agreement exists between the parties for the purchase and sale of metallurgical coal for the 2008-2009 year, United Coal cannot know with certainty whether it is exposing itself to liability if it does not accede to Italiana Coke's demands or if it undertakes to sell some or all of the finite amount of metallurgical coal that its subsidiaries can mine or have already mined, which sales would necessarily limit its ability to sell coal to Italiana Coke during the time period that Italiana Coke claims it has a binding contract to purchase said coal.

22.    A declaratory judgment in this case will serve a useful purpose in clarifying and settling the respective legal rights and obligations of the parties, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

WHEREFORE United Coal requests that the Court grant the following relief:

a.    Enter a declaratory judgment declaring that no valid or enforceable contract exists between United Coal, or any of its subsidiaries, on the one hand, and Italiana Coke, on the other, regarding the purchase and sale of metallurgical coal for the one-year period commencing April 1, 2008;

b.    Grant United Coal such other and further relief as the Court deems just and appropriate.

6

**UNITED COAL COMPANY, LLC**

Michael W. Robinson
VSB No. 26522
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
Phone: (703) 760-1600
Facsimile: (703) 821-8949
mwrobinson@venable.com

Brian L. Schwalb
VSB No. 34525
575 7th Street, NW
Washington, DC 20004-1601
Phone: (202)344-4356
Fax: (202)344-8300
blschwalb@venable.com

and

Douglas E. Miller
VSB No. 38591
James H. Shoemaker, Jr.
VSB No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone: (757) 223-4500
Facsimile: (757) 249-1627
dmiller@pwhd.com

Attorneys for Plaintiff, United Coal Company, LLC

7

JS 44 (Rev. 12/07)    Case 2:08-cv-00212-JBF **CIVIL COVER SHEET** Filed 05/07/2008    Page 1 of 2

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| **I. (a) PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| United Coal Company, LLC | Italiana Coke, s.p.a. |
| **(b)** County of Residence of First Listed Plaintiff  Bristol, VA | County of Residence of First Listed Defendant  Savona, Italy |
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY) |
|  | NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| **(c)** Attorney's (Firm Name, Address, and Telephone Number)  See attachment | Attorneys (If Known)  Joseph De Simone  Mayer Brown, LLP, 1675 Broadway, New York, NY  10019; (212) 506-2500 |

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☒ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §2201
Brief description of cause:
Declaratory Judgment - Alleged Contract Rights

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint    JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY**    (See instructions)    JUDGE    DOCKET NUMBER

DATE  5/7/08    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

# Exhibit D

ORIGINAL

FILED

MAY 3 0 2008

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

%AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Virginia

Norfolk Division

United Coal Company, LLC

V.

Italiana Coke, s.p.a.

## SUMMONS IN A CIVIL CASE

CASE NUMBER: 2:08cv212

TO: (Name and address of Defendant)

Italiana Coke, s.p.a.
an Italian Company
Via Stalingrado 25
17014 S. Giuseppe di Cairo
Savona, Italy

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Douglas E. Miller
Patten, Wornom, Hatten & Diamonstein, LC
12350 Jefferson Avenue
Newport News, VA 23602
USA

an answer to the complaint which is served on you with this summons, within ____20____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

Fernando Galindo
_____
CLERK

5/8/08
_____
DATE

Lisa Woodcock _____
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[1] | **DATE**<br>May 27, 2008 |
| **NAME OF SERVER** *(PRINT)*<br>Douglas E. Miller | **TITLE**<br>Attorney |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

XX Other (specify): Delivered by Federal Express (confirmation attached) to the attention of Dr. Massimo Busdranni as officer of defendant Italiana Coke, S.P.A. under the provisions of Article 10 of the Hague Convention on Service of Process. Courtesy copy provided to counsel, Joseph DeSimone.

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| 0.00 | $25.00 Federal Express Fee | $25.00 |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on ___May 27, 2008___
        Date

_____
*Signature of Server*

Douglas E. Miller
Patten, Wornom, Hatten & Diamonstein, LC
12350 Jefferson Avenue, #300, Newport News, VA 23602

*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# Debbie Crowder

| | |
|---|---|
| **From:** | TrackingUpdates@fedex.com |
| **Sent:** | Tuesday, May 27, 2008 2:07 PM |
| **To:** | Debbie Crowder |
| **Subject:** | FedEx Shipment 792704681634 Delivered |

---

This tracking update has been requested by:

```
Company Name:            12350jeff360
Name:                    Debbie Crowder
E-mail:                  Debbie@pwhd.com
```

---

Our records indicate that the following shipment has been delivered:

```
Reference:               DEM/United Coal #050363
Ship (P/U) date:         May 23, 2008
Delivery date:           May 27, 2008 6:49 PM
Sign for by:             .MAGAZINO
Delivered to:            Receptionist/Front Desk
Service type:            FedEx International Priority
Packaging type:          FedEx Envelope
Number of pieces:        1
Weight:                  1.00 lb.
Special handling/Services: Deliver Weekday
```

Tracking number:         <u>792704681634</u>

```
Shipper Information            Recipient Information
DEBBIE CROWDER                 DR. MASSIMO BUSDRANNI
12350JEFF360                   ITALIANA COKE, S.P.A.
12350 JEFFERSON AVE;STE 360    SAVONA;.
NEWPORT NEWS                   CAIRO MONTENOTTE
VA                             IT
US                             17014
23602
```

Please do not respond to this message. This email was sent from an unattended mailbox. This report was generated at approximately 1:06 PM CDT on 05/27/2008.

To learn more about FedEx Express, please visit our website at <u>fedex.com</u>.

All weights are estimated.

To track the latest status of your shipment, click on the tracking number above, or visit us at <u>fedex.com</u>.

This tracking update has been sent to you by FedEx on the behalf of the Requestor noted above. FedEx does not validate the authenticity of the requestor and does not validate, guarantee or warrant the authenticity of the request, the requestor's message, or the accuracy of this tracking update. For tracking results and fedex.com's terms of use, go to <u>fedex.com</u>.

Thank you for your business.

# Exhibit E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X

ITALIANA COKE, S.R.L.,                          :     Case No.

              Plaintiff,           :

vs.                                             :     **COMPLAINT**

UNITED COAL COMPANY, LLC,                        :

             Defendant.           :     **JURY TRIAL DEMANDED**

-------------------------------------------------- X

Plaintiff, Italiana Coke, S.r.l. ("Italiana Coke"), by its attorneys, Mayer Brown LLP, as

and for its Complaint against United Coal Company, LLC ("Defendant"), allege as follows:

## NATURE OF THE CASE

1.     This is an action for breach of contract seeking specific performance or, in the

alternative, money damages resulting from Defendant's failure to supply Italiana Coke with

coking coal at the agreed upon price, damaging Italiana Coke in an amount not less than

$12,000,000.00. Specifically, in early December 2007, the parties agreed, *inter alia*, that

Defendants would supply Italiana Coke with (i) Wellmore High Volatile Coking Coal at a price

of $123.00 per metric ton and (ii) Pocahantas Low Volatile Coking Coal at a price of $135.00

per metric ton from April 1, 2008 through March 31, 2009 (the "2008-2009 Contract"). Faced

with the rising price of coking coal, a few days *after* the commencement of the contractual term,

Defendant notified Italiana Coke of its position that no contract exists for the 2008-2009 coal

year. Instead of complying with existing contractual terms, Defendant is attempting to hold

Italiana Coke hostage by offering to supply Italiana Coke with coking coal at *more than double*

the agreed upon price.  To date, Defendant has failed to cure its breach or otherwise honor its obligations to Italiana Coke under the 2008-2009 Contract.

## PARTIES

2.      Italiana Coke is an Italian corporation with its principal place of business in Savona, Italy.  Italiana Coke is a leading supplier of coke in Europe for the foundry industry.

3.      Defendant United Coal Company, LLC is a limited liability company organized under the laws of the Commonwealth of Virginia, with its principal place of business in Bristol, Virginia.

## JURISDICTION AND VENUE

4.      This court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because:  (i) there is diversity of citizenship between plaintiff and defendant; and (ii) the matter in controversy exceeds $75,000, exclusive of interest and costs.

5.      Venue is proper in this district (i) under 28 U.S.C. § 1391(a)(2) or (3), as the judicial district in which a substantial part of the events giving rise to the claims alleged herein occurred and where Defendant is subject to personal jurisdiction.  In addition, all of the agreements entered into between Italiana Coke and Defendant, including the agreement at issue here, contain a New York choice of law clause and provide that any disputes, controversies or claims between the parties in connection with the agreement shall be determined by arbitration at New York, New York.

6.      This court has personal jurisdiction over Defendant because it has transacted business in this district, including in connection with the transactions and occurrences giving rise to this action.

2

## FACTUAL BACKGROUND

### Prior Course of Dealing

7.     Prior to 2006, Italiana Coke purchased coal from Defendant's predecessor, Rapoca Sales. Upon the acquisition of Rapoca Sales in January 2006, Defendant assumed Rapoca Sales' contracts with Italiana Coke for the supply of coal to Italiana Coke for the remainder of the contractual term.

8.     Since then, Italiana Coke has purchased Wellmore High Volatile Coking Coal and Pocahontas Low Volatile Coking Coal ("Wellmore" and "Pocahontas" coal) from Defendant, pursuant to yearly supply contracts that last from April 1st through March 31st of the following year. Each year, the parties would meet and agree on all of the material terms of the supply contracts. Both parties understood that the "handshake agreements" entered into at these meetings were binding, valid and enforceable contracts. The terms of those contracts would later be memorialized in a writing. The parties would then commence performance under the contracts before they were fully executed.

9.     For example, Italiana Coke and Defendant entered into sale and purchase agreements for both Wellmore and Pocahontas Coal for the period between April 1, 2006 and March 31, 2007 (collectively, the "2006-2007 Contract"). The parties met and agreed on all terms of the 2006-2007 Contract. In May of 2006, before the execution of a signed writing, Defendant shipped its first installment of coal to Italiana Coke under the 2006-2007 Contract. It was not until months later, in July of 2006, that the 2006-2007 Contract was fully executed. Thus, prior to the execution of a signed 2006-2007 Contract, the parties performed their obligations, with Defendant supplying coal to Italiana Coke at its request.

3

10. The 2006-2007 Contract contained a choice of law clause specifying that the agreement would be governed by and construed in accordance with the laws of the State of New York, as well as a clause compelling the parties to arbitrate all disputes related to the 2006-2007 Contract in New York, New York.

11. The following year, Italiana Coke and Defendant entered into sale and purchase agreements for Wellmore and Pocahontas coal for the period between April 1, 2007 and March 31, 2008 (collectively, the "2007-2008 Contract"). As with the 2006-2007 Contract, the parties met and agreed upon all terms for the 2007-2008 Contract, and the first installment of coal was shipped by Defendant to Italiania Coke before the 2007-2008 Contract was fully executed. Thus, prior to the execution of the 2007-2008 Contract, the parties again performed their obligations, with Defendant supplying coal to Italiana Coke at its request.

12. The 2007-2008 Contract contained a choice of law clause specifying that the agreement would be governed by and construed in accordance with the laws of the State of New York, as well as a clause compelling the parties to arbitrate all disputes related to the 2007-2008 Contract in New York, New York.

**The 2008-2009 Contract**

13. On or about December 4, 2007, representatives from Italiana Coke and Defendant met in Stockholm, Sweden (the "Stockholm meeting"), to negotiate the terms of sale and purchase agreements for Wellmore and Pocahontas coal for the period between April 1, 2008 and March 31, 2009 (collectively, the "2008-2009 Contract"). Massimo Busdraghi and Stefano Tomisti attended the meeting on behalf of Italiana Coke. Ralph Haring, Vice President of Sales, and Gary Chilcot of Defendant and Monica Zappalaglio of Agenzia Carboni, Defendant's Italian agent ("Defendant's Agent"), attended the meeting on behalf of Defendant.

4

14.   Defendant's Agent is, *inter alia,* responsible for promoting the sale of Defendant's products and keeps in close contact with Defendant's customers, informing them about developments in the U.S. coal market, and participating in negotiations between the parties.

15.   At the Stockholm meeting, the parties agreed upon all terms of the 2008-2009 Contract, including a description of the goods to be sold (Wellmore and Pocahontas coal), the term of the agreement (April 1, 2008 to March 31, 2009), the quantity of coal to be sold (40,000 metric tons of Wellmore coal and 40,000 metric tons of Pocahontas coal, plus or minus 10% of each amount at the buyer's option), and the price ($123 per metric ton of Wellmore coal and $135 per metric ton of Pocahontas coal, plus a freight fuel surcharge). The parties further agreed that all other terms of the agreement would be the same as the 2007-2008 Contract. As discussed above, the 2007-2008 Contract contains a New York choice of law clause and compels the parties to arbitrate their disputes in New York, New York.

16.   On December 7, 2007, Defendant's Agent sent an email memorializing the agreement reached at the Stockholm meeting to the representatives of Italiana Coke and Defendant that were present at the Stockholm meeting, referencing the meeting and stating "we confirm with pleasure the following Terms and Conditions agreed for the contract year 2008/2009." The email listed the specific terms the parties had agreed upon for the 2008-2009 Contract at the Stockholm meeting, including a price of $135.00 per metric ton for Pocahontas coal and a price of $123.00 per metric ton for Wellmore coal. Defendant's Agent further stated, "[a]ll other terms and conditions as per current contracts in force." A true copy of this email is attached hereto as Exhibit A.

5

17.   Similarly, on December 10, 2007, Italiana Coke memorialized the agreement reached at the Stockholm meeting in an email to Defendant, addressed to Ralph Haring, Gary Chilcot, and Defendant's Agent, stating that "we wish to confirm what we agreed" and setting forth contract terms identical to those memorialized in the December 7, 2007 email from Defendant's Agent.  A true copy of this email is attached hereto as Exhibit B.

18.   In response to Italiana Coke's December 10, 2007 email, Ralph Haring, Defendant's Vice President of Sales, sent an email to Italiana Coke on December 14, 2007, stating that Defendant could "confirm" the terms of the contract entered into at the Stockholm meeting and memorialized in Italiana Coke's email.  Mr. Haring's email also requested "a variance" in the "contractual moisture quality" for the Pocahontas coal under the 2008-2009 Contract.  Mr. Haring specified that this was a "small variance" that had been agreed to by "[a]ll of our other customers" and that he "look[ed] forward to Italiana Coke's acceptance."  A true copy of this email is attached hereto as Exhibit C.

19.   Italiana Coke communicated its acceptance of this small variance to Defendant's Agent.  Italiana Coke's acceptance was conveyed by Defendant's Agent to Defendant via email dated December 18, 2007.  *See* Exhibit C.

20.   On or about January 14, 2008, Defendant's Agent sent an email to Italiana Coke, attaching draft contracts, memorializing the terms of the 2008-2009 Contract entered into at the Stockholm meeting.  Each of these documents began with the following language, "THIS AGREEMENT made the 4th day of December 2007, where United Coal Company, LLC (SELLER), hereby agrees to sell coal and Italiana Coke S.p.a. (BUYER), agrees to buy coal under the terms and conditions hereinafter set forth."

6

21.     On or about March 4, 2008, Defendant sent an email to Italiana Coke, describing production difficulties at Defendant's Wellmore coal mine and stating that Defendant "will not be able to load any coal in May 2008." In this email, Defendant further notified Italiana Coke that "their earlier shipments of Wellmore on next year's business might fall behind for the next several months."

22.     In light of Defendant's production difficulties and the parties' close business relationship, Italiana Coke sent an email to Defendant, dated March 4, 2008, offering to reschedule the May 2008 coal shipment under the 2008-2009 Contract to sometime in the second half of June. In this email, Italiana Coke also set forth a shipping schedule for the completion the the 2008-2009 Contract.

23.     In response to Italiana Coke's email, later that day, Defendant sent Italiana Coke an email thanking Italiana Coke for its "understanding and flexibility" and stating that Italiana Coke's shipping schedule seemed acceptable.

24.     Subsequently, the parties attempted to work out a shipping schedule for the remainder of the 2007-2008 Contract as a result of the production difficulties experienced by Defendant. Italiana Coke was accommodating regarding Defendant's production difficulties and greatly reduced its contractual requirements to assist Defendant.

**Defendant's Efforts to Undermine the Contract and Eventual Breach**

25.     As the March 31, 2008 termination date for the 2007-2008 Contract approached, Defendant remained obligated to ship approximately 7,500 metric tons of Pocahontas Coal and 14,000 metric tons of Wellmore Coal to Italiana Coke under the terms of the 2007-2008 Contract.

26.     On March 10, 2008, Defendant notified Italiana Coke by email of their inability to ship the balance of Wellmore Coal due under the 2007-2008 Contract. Defendant stated, however, that the final installment of Pocahontas coal due under the parties' 2007-2008 Contract was available to be shipped. In addition, Defendant offered to provide an extra installment of 9,000-10,000 metric tons of Pocahontas coal. The parties agreed that this extra installment would be considered as the first shipment of Pocahontas coal under the 2008-2009 Contract, and as such, it would be sold at the 2008-2009 price – which was higher than the price under the 2007-2008 Contract.

27.     Thus, by the email dated March 10, 2008, Defendant offered to ship the final installment of Pocahontas coal due under the 2007-2008 Contract, along with an additional installment of Pocahontas coal under the 2008-2009 Contract. In an email response sent later that day, Italiana Coke accepted Defendant's proposal, with the understanding that the additional installment of Pocahontas coal would be considered as part of the 2008-2009 Contract that had been entered into at the Stockholm meeting. Indeed, Italiana Coke's email specifically noted that the parties would have to discuss setting a new date for the remaining installment of Wellmore Coal still due under the 2007-2008 Contract. At no time did Defendant contradict or in any way disagree with Italiana Coke's understanding of the shipping arrangement set out in their email of March 10, 2008.

28.     Thereafter, on or around March 26, 2008, Defendant caused the two installments of Pocahontas coal to be loaded together into a train bound for Italiana Coke's waiting vessel docked at Norfolk, Virginia. Italiana Coke reasonably interpreted the first installment – to be purchased at the 2007-2008 Contract price – as satisfying the balance of Defendant's obligation to sell Pocahontas Coal under the 2007-2008 Contract, and the second installment – to be

8

purchased at the 2008-2009 Contract price – as Defendant's first shipment of Pocahontas coal under the 2008-2009 Contract.

29.     Less than a week before the start of the 2008-2009 Contract term, Defendant sent an email to Italiana Coke, attaching two "revised" draft contracts, containing Defendant's proposed, minor modifications to the 2008-2009 Contract. Aside from Defendant's two minor modifications, which favored Defendant, these "revised" contracts contained all of the terms agreed to by the parties at the Stockholm meeting, including, importantly, the price terms.

30.     At Italiana Coke's suggestion, the parties subsequently agreed to meet during the first week in April, 2008, in New York, NY.

31.     On or around April 3, 2008, representatives from Italiana Coke and Defendant met in New York, New York (the "NY meeting"). The NY meeting was attended by the same individuals that were present at the Stockholm meeting: Ralph Haring, Gary Chilcot and Monica Zappalaglio on behalf of Defendant, and Massimo Busdraghi and Stefano Tomisti on behalf of Italiana Coke.

32.     Italiana Coke understood that one of the purposes of the NY meeting would be to execute the 2008-2009 Contract that had been circulated by Defendant via email just days before, on March 26, 2008.

33.     However, at the NY meeting, Defendant surprised Italiana Coke by stating they had recently been advised by Defendant's legal department that no contract existed for the 2008-2009 year. Instead, Defendant informed Italiana Coke that it would have to purchase coal from Defendant at the "spot" price, which was more than double the price agreed upon at the Stockholm meeting.

9

34.     When talks resumed later in the day, the parties reached an interim agreement, whereby Defendant would deliver to Italiana Coke the second installment of Pocahontas coal that had previously been meant by all parties to be delivered under the terms of the 2008-2009 Contract and had already been loaded for Italiana Coke prior to the NY meeting, in place of the Wellmore coal Defendant would otherwise still have been obligated to deliver to Italiana Coke under the terms of the 2007-2008 Contract. In so doing, the parties agreed that Defendant's obligations under the 2007-2008 Contract would be fully satisfied. Finally, the parties agreed to reserve their rights regarding the question of the existence of the 2008-2009 Contract, stating "a dispute has arisen between Buyer and Seller about the existence of a contract for the coal year beginning April 1, 2008 . . . ."

35.     After the meeting, Italiana Coke sent a letter to Defendant on April 15, 2008 expressing shock at Defendant's unfounded assertion that no contract existed for 2008-2009. In its letter, Italiana Coke reiterated that a binding agreement was entered into at the Stockholm meeting and memorialized by both parties in their subsequent correspondence. In conformance with the 2008-2009 Contract, and all previous contracts between the parties, Italiana Coke's letter also included a request for confirmation of the proposed details of the parties' first coal shipment under the 2008-2009 Contract (the "stem request"). Pursuant to the terms of 2008-2009 Contract (and all previous contracts between the parties), Italiana Coke's stem request triggered a duty for Defendant to confirm the details of the request within five (5) business days.

36.     However, by letter dated April 18, 2008, Defendant rejected Italiana Coke's stem request, reasserting its position that "no contract exists for the 2008-2009 coal year" and that "there is presently no contractual obligation for Italiana Coke to purchase, or for United to sell, 2008-2009 coal."

37. On May 6, 2008, Italiana Coke, through its undersigned attorneys, sent a letter to Defendant, explaining the factual and legal reasons supporting Italiana Coke's position and requesting written confirmation by May 13, 2008 that Defendant would abide by the terms of the 2008-2009 Contract.

38. Without notifying Italiana Coke, the very next day, on May 7, 2008, Defendant filed a complaint in the United States District Court for the Eastern District of Virginia, Norfolk Division, seeking a declaratory judgment that no contract exists between the parties for the 2008-2009 coal year. To date, Defendant has not served the complaint on Italiana Coke.

39. Five days later, on May 12, 2008, Defendant's counsel sent a letter to Italiana Coke's counsel, informing Italiana Coke of the declaratory judgment action, attaching a copy of the Complaint, and once again denying the existence of a binding contract between the parties for the 2008-2009 coal year. A true copy of this letter, with attachments, is attached hereto as Exhibit D.

40. As a result of the foregoing, Italiana Coke has been substantially damaged and will continue to incur damages based on Defendant's refusal to honor the agreement entered into at the Stockholm meeting.

## FIRST CAUSE OF ACTION

### (Declaratory Judgment)

41. Italiana Coke repeats and realleges the allegations set forth in paragraphs 1-40 above with the same force an effect as if set forth fully herein.

42. At the Stockholm meeting, Italiana Coke and Defendant entered into a valid, binding and enforceable contract for the sale of coal, from April 1, 2008- March 31, 2009.

11

43. The terms of the contract agreed upon at the Stockholm meeting were memorialized and confirmed in emails exchanged between Italiana Coke, Defendant and Defendant's Agent.

44. Defendant's refusal to sell coal to Italiana Coke pursuant to the 2008-2009 Contract at the eleventh hour is a transparent attempt to avoid the terms of a valid and enforceable contract and to extract a significantly higher price from Italiana Coke.

45. Defendant's denial of the existence of the 2008-2009 Contract shortly after its term began has created significant financial uncertainty for Italiana Coke, impairs Italiana Coke's ability to operate its facilities and by extension, to fulfill Italiana Coke's contractual obligations to its customers, and creates substantial logistical difficulties in Italiana Coke's business operations.

46. By reason of the foregoing, an actual controversy exists between Italiana Coke and Defendant regarding the validity and enforceability of 2008-2009 Contract, and the respective legal rights and obligations of the parties thereunder. Declaratory relief is necessary to clarify and resolve this controversy.

47. Italiana Coke requests that this Court exercise its discretion and issue a declaratory judgment that the 2008-2009 Contract is binding, valid and enforceable, requiring Defendant to supply Italiana Coke with coal in accordance with its terms.

48. Italiana Coke further requests that this Court exercise its discretion and issue a declaratory judgment that, in accordance with the terms of the 2008-2009 Contract, the parties shall arbitrate all disputes, controversies or claims between them by arbitration at New York, New York, in accordance with the Rules of the American Arbitration Association, and judgment

12

upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

## SECOND CAUSE OF ACTION

(Breach of Contract – Specific Performance)

49.     Italiana Coke repeats and realleges the allegations set forth in paragraphs 1-48 above with the same force an effect as if set forth fully herein.

50.     At the Stockholm meeting, Italiana Coke and Defendant entered into a valid, binding and enforceable contract for the sale of coal, from April 1, 2008- March 31, 2009.

51.     The terms of the contract agreed upon at the Stockholm meeting were memorialized and confirmed in emails exchanged between Italiana Coke, Defendant and Defendant's Agent.

52.     Italiana Coke remains ready, willing and able to fully perform all of its obligations under the 2008-2009 Contract.

53.     Despite Italiana Coke's request for an installment of coal under the 2008-2009 Contract to be delivered in June of 2008, Defendant has failed to honor its obligations under the 2008-2009 Contract by, *inter alia*, refusing to ship coal under the terms of the 2008-2009 Contract and demanding a price that is more than double the price contained in the 2008-2009 Contract.

54.     Further, in an attempt to extract a significantly higher price from Italiana Coke, Defendant has asserted that no contract exists between Italiana Coke and Defendant.

55.     As a direct and proximate result of Defendant's refusal to honor its obligations under the 2008-2009 Contract, Italiana Coke has been damaged and will continue to incur damages in an amount which cannot presently be ascertained.

13

56.     Italiana Coke has no adequate remedy at law because the coal to be supplied under the 2008-2009 Contract is unique in kind and quality, and suitable substitutes are unreasonably difficult or inconvenient to procure, or potentially unobtainable.

### THIRD CAUSE OF ACTION

(Breach of Contract – Money Damages)

57.     Italiana Coke repeats and realleges the allegations set forth in paragraphs 1-56 above with the same force an effect as if set forth fully herein..

58.     At the Stockholm meeting, Italiana Coke and Defendant entered into a valid, binding and enforceable contract for the sale of coal, from April 1, 2008- March 31, 2009.

59.     The terms of the contract agreed upon at the Stockholm meeting were memorialized and confirmed in emails exchanged between Italiana Coke, Defendant and Defendant's Agent.

60.     Italiana Coke remains ready, willing and able to fully perform all of its obligations under the 2008-2009 Contract.

61.     Despite Italiana Coke's request for an installment of coal under the 2008-2009 Contract to be delivered in June of 2008, Defendant has failed to honor its obligations under the 2008-2009 Contract by, *inter alia*, refusing to ship coal under the terms of the 2008-2009 Contract and demanding a price that is more than double the price contained in the 2008-2009 Contract.

62.     Further, in an attempt to extract a significantly higher price from Italiana Coke, Defendant has asserted that no contract exists between Italiana Coke and Defendant.

63. As a direct and proximate result of Defendant's refusal to honor its obligations under the 2008-2009 Contract, Italiana Coke has been damaged and will continue to incur damages in an amount to be determined at trial of not less than $12,000,000.00.

## FOURTH CAUSE OF ACTION

### (Promissory Estoppel)

64. Italiana Coke repeats and realleges the allegations set forth in paragraphs 1-63 above with the same force an effect as if set forth fully herein..

65. At the Stockholm meeting, Italiana Coke and Defendant entered into a valid, binding and enforceable contract for the sale of coal, from April 1, 2008-March 31, 2009.

66. The terms of the contract agreed upon at the Stockholm meeting were memorialized and confirmed in emails exchanged between Italiana Coke, Defendant and Defendant's Agent.

67. Italiana Coke remains ready, willing and able to fully perform all of its obligations under the 2008-2009 Contract.

68. Despite Italiana Coke's request for an installment of coal under the 2008-2009 Contract to be delivered in June of 2008, Defendant has failed to honor its obligations under the 2008-2009 Contract by, *inter alia*, refusing to ship coal under the terms of the 2008-2009 Contract and demanding a price that is more than double the price contained in the 2008-2009 Contract.

69. Further, in an attempt to extract a significantly higher price from Italiana Coke, Defendant has asserted that no contract exists between Italiana Coke and Defendant.

70. Italiana Coke reasonably and foreseeably relied upon Defendant's promise to supply coal in accordance with the terms and conditions set out in the 2008-2009 Contract.

15

71.     Because of its reliance on the agreement with Defendant, Italiana Coke did not contract with any other parties for the purchase of the coal it requires from April 1, 2008 through March 31, 2009.

72.     Since the Stockholm meeting, the price of coal has risen significantly.  As a result, Italiana Coke will be injured if it is required to purchase its coal requirements at market prices – if it can even obtain the coal it requires – rather than at those prices negotiated and agreed upon with Defendant at the Stockholm meeting.

73.     Permitting Defendant to avoid its obligations in the face of the agreement reached by the parties at the Stockholm meeting would unjustly enrich Defendant and unfairly prejudice Italiana Coke.

74.     As a direct and proximate result of Italiana Coke's refusal to supply Italiana Coke with coal from April 1, 2008 through March 31, 2009 at the price agreed upon at the Stockholm meeting, Italiana Coke has been damaged in an amount to be determined at trial of not less than $12,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Italiana Coke, S.r.l., demands judgment in its favor against defendant, United Coal Company, LLC, and requests that this Court award the following relief:

(a)     as to the First Cause of Action, enter a declaratory judgment declaring that (i) a binding, valid and enforceable contract was entered into by the parties for the purchase and sale of coal for the one-year period commencing April 1, 2008, and (ii) that in accordance with the terms of the 2008-2009 Contract, the parties shall arbitrate all disputes, controversies or claims between them by arbitration at New York, New York, in accordance with the Rules of the American Arbitration Association.

16

(b)     as to the Second Cause of Action, awarding specific performance requiring Defendant to supply coal to the Italiana Coke pursuant to the terms of the 2008-2009 Contract;

(c)     as to the Third Cause of Action, awarding Italiana Coke money damages, including incidental and consequential damages attendant to the Italiana Coke's purchase of coal at current market prices, in an amount to be determined at trial, but not less than $12,000,000.00.

(d)     as to the Fourth Cause of Action, awarding Italiana Coke money damages for the injuries sustained by plaintiff as a result of its reliance on defendant's promise to supply coal for the 2008-2009 Coal Year, in an amount to be determined at trial, but in no event less than $12,000.000.00.

(e)     awarding Italiana Coke the costs and disbursements of this proceeding, including reasonable attorney's fees; and,

(f)     granting such other and further relief to Italiana Coke as this Court deems just, proper, and equitable.


Dated: New York, New York
       May 20, 2008


                              MAYER BROWN LLP

                              By: _Joseph DeSimone_
                                 Joseph De Simone
                                 Leslie E. Chebli
                                 1675 Broadway
                                 New York, New York  10019
                                 (212) 506-2500

                              *Attorneys for Italiana Coke, S.r.l.*


17

# Exhibit A



"Info Agenzia
Carboni"
<info@agenziacarboni
.com>

07/12/2007 11.26

Per: <Stefano.Tomisti@italianacoke.it>, "Massimo Busdraghi "
<massimo.busdraghi@italianacoke.it>, "Ralph Haring"
<RHaring@unitedco.net>, "Gary Chilcot"
<GChilcot@unitedco.net>

Cc:
Oggetto: Italiana Coke / United Coal Company

Italiana Coke / United Coal Company
-----------------------------------

Sale and Purchase Agreements 2008/2009
--------------------------------------

Dear All,

With reference to the meeting held in Stockholm on Monday, December 3rd, we
confirm with pleasure the following Terms and Conditions agreed for the contract
year 2008/2009:

Pocahontas Low Volatile Coking Coal
-----------------------------------

Term: April 1st, 2008 - March 31st, 2009

Quantity: 40,000 mt +/- 10% in Buyer's option

Price: USD 135.00/mt FOBT Norfolk Pier 6, plus 50% fuel surcharge as applied by
N&S Railroad

Wellmore High Volatile Coking Coal
----------------------------------

Term: April 1st, 2008 - March 31st, 2009

Quantity: 40,000 mt +/- 10% in Buyer's option

Price: USD 123.00/mt FOBT Norfolk Pier 6, plus 50% fuel surcharge as applied by
N&S Railroad

All other terms and conditions as per current contracts in force.

Best regards.
Monica Zappalaglio
Agenzia Carboni S.r.l.

# Exhibit B

Stefano Tomisti
Inviato da: Antonella
Bono

10/12/2007 12.24

Per: rharing@unitedco.net, gchilcot@unitedco.net,
info@agenziacarboni.com
Cc: augusto.ascheri@energycoal.com, Massimo
Busdraghi/IC/ICO@ICO
Cc: augusto.ascheri@energycoal.com, Massimo
Busdraghi/IC/ICO@ICO
Oggetto: Italiana Coke / United Coal Company

Dear Sirs,

Following up to our last meeting in Stockholm on December 4, 2007 and subsequent
phone conversation with Monica, we wish to confirm what we agreed:

Wellmore high vol coking coal:
Term: April 1 2008/March 31 2009
Quantity: 40,000 mt +/-10% in Buyer's option
Price: USD 123/MT FOBT Norfolk Pier 6. Fuel surcharge to be calculated as per
existing contract for FY 2007/2008.

Pocahontas low vol coal
Term: April 1 2008/March 31 2009
Quantity: 40,000 mt +/-10% in Buyer's option
Price: USD 135/MT FOBT Norfolk Pier 6. Fuel surcharge to be calculated as per
existing contract for FY 2007/2008.

All other terms/condiitions: as per existing contract 2007/2008.


Shipment schedule remaining tonnage 2007/2008
-------------------------------------------------------------------------
We confirm shipping schedule already agreed for first quarter 2008 - balance of 2007/2008
quantity

Thank you for this new business. With our best regards

Stefano Tomisti

# Exhibit C



"Info Agenzia Carboni"
<info@agenziacarboni.com
>

14/04/2008 12.42

Per <Antonella.Bono@italianacoke.it>

CC "Italiana Coke" <Mat.Log@italianacoke.it>

CCR

Oggetto Italiana Coke / United Coal Company

Cara Antonella,

Come d'accordo, ti quoto i messaggi relativi alla variazione della
percentuale di umidità per il Pocahontas con la nostra conferma inviata a
UCC.

Cordiali saluti.
Viviana De Simone
Agenzia Carboni S.r.l.

QUOTE
-------

-----Messaggio originale-----
Da: Info Agenzia Carboni [mailto:info@agenziacarboni.com]
Inviato: martedì 18 dicembre 2007 19.45
A: 'Ralph Haring'
Cc: 'Gary Chilcot'
Oggetto: R: Italiana Coke / United Coal Company

Dear Ralph,

I am pleased to inform you of Italiana Coke's acceptance of the 9% max
guaranteed content on moisture percentage for the Low Vol Pocahontas.

This is in view of a long term and satisfactory relationships between UCC
and Italiana Coke.

We will provide to send you the draft of the contracts for your approval
before sending them to Italiana Coke's acceptance.

Best regards.
Monica Zappalaglio
Agenzia Carboni S.r.l.

-----Messaggio originale-----
Da: Ralph Haring [mailto:RHaring@unitedco.net]
Inviato: venerdì 14 dicembre 2007 20.09
A: Stefano.Tomisti@italianacoke.it
Cc: info@agenziacarboni.com; Gary Chilcot
Oggetto: RE: Italiana Coke / United Coal Company

Dear Stefano,

Sorry for the late reply but I have been traveling at the mines this week
and out of touch with a computer.

As information, UCC has been notified by Pocahontas Coal Co. that because
of
some recent preparation plant modifications they will no longer be using

the
thermal drying units and therefore must request a variance in our
contractual moisture quality.

UCC can confirm your below email with the following exception:

1. Change Pocahontas moisture quality to: 9.0% max.
   All other spec's to remain the same.

As with other U.S. low vol. producers no one at this time is using thermal
dryers... All of our other customers UCC ships to have agreed to this small
variance and look forward to Italiana Coke's acceptance.

Thanks and regards,

Ralph Haring
Vice President of Sales
United Coal Company
1005 Glenway Ave.
Bristol, Virginia   24201
276-645-1424  Tel.
276-645-1438   Fax
423-534-1093   Cell
rharing@unitedco.net  e-mail


-----Original Message-----
From: Antonella.Bono@italianacoke.it
[mailto:Antonella.Bono@italianacoke.it] On Behalf Of
Stefano.Tomisti@italianacoke.it
Sent: Monday, December 10, 2007 6:24 AM
To: Ralph Haring; Gary Chilcot; Info@agenziacarboni.com
Cc: augusto.ascheri@energycoal.com; Massimo.Busdraghi@italianacoke.it
Subject: Italiana Coke / United Coal Company


Dear Sirs,

Following up to our last meeting in Stockholm on December 4, 2007 and
subsequent phone conversation with Monica,  we wish to confirm what we
agreed:

Wellmore high vol coking coal:
Term: April 1 2008/March 31 2009
Quantity: 40,000 mt +/-10% in Buyer's option
Price: USD 123/MT FOBT Norfolk Pier 6. Fuel surcharge to be calculated as
per existing contract for FY 2007/2008.

Pocahontas low vol coal
Term: April 1 2008/March 31 2009
Quantity: 40,000 mt +/-10% in Buyer's option
Price: USD 135/MT FOBT Norfolk Pier 6. Fuel surcharge to be calculated as
per existing contract for FY 2007/2008.

All other terms/condiitions: as per existing contract 2007/2008.


Shipment schedule remaining tonnage 2007/2008
------------------------------------------------------------------------
---
We confirm shipping schedule already agreed for first quarter 2008 -
balance
of 2007/2008 quantity

Thank you for this new business. With our best regards

Stefano Tomisti

UNQUOTE
---------

# Exhibit D

# VENABLE LLP

575 7th Street, NW
Washington, DC 20004

Telephone 202-344-4000
Facsimile 202-344-8300

www.venable.com

Brian L. Schwalb             (202) 344-4356             BLSchwalb@venable.com

May 12, 2008

**BY E-MAIL, FACSIMILE & U.S. MAIL**

Joseph De Simone, Esquire
Mayer Brown LLP
1675 Broadway
New York, New York  10019-5820

     Re:   *United Coal Company, LLC v. Italiana Coke, s.p.a.*
          Case No. 2:08-cv-212 (E.D. Va., Norfolk Division)

Dear Mr. De Simone:

United Coal Company has retained us in connection with the dispute between it and your client, Italiana Coke, regarding whether any contract exists between the parties for the purchase and sale of certain metallurgical coals for the 2008-2009 year. I have reviewed your letter, dated May 6, and appreciate your efforts to lay out your client's perspective on the situation. Italiana Coke's views on the facts and the law differ from those of United Coal. In light of the claims and demands advanced in your letter, and the practical business exigencies raised by the disagreement, United Coal has filed a declaratory judgment action in the United States District Court for the Eastern District of Virginia, Norfolk Division, seeking a prompt declaration that there is no enforceable agreement between the parties. A courtesy copy of the summons and complaint is attached. Please let me know if you are authorized to accept service of process.

While I do not believe that it would be productive to debate each of the points in your letter, I would note that the four factors upon which you rely in asserting the existence of a binding contract, in fact, support the conclusion that no contract exists. Especially in light of the two prior year's written and signed contracts, and the nature and complexity of the proposed transaction (*i.e.* an eight-figure metallurgical coal deal involving multiple international shipments over a year-long period), the suggestion that either side reasonably believed that there would be a binding agreement in the absence of a fully executed contract is strained. Moreover, your client's contention that the recent delivery of the second of the two holds of coal "clearly was contemplated as a shipment under the parties' 2008-2009 contract and, as such, constitutes partial performance on United's part," contradicts the parties' April 3, 2008 signed agreement. Indeed, your client paid for said second delivery using the significantly lower per ton price set out in the 2007-2008 contract.

# VENABLE LLP

Joseph De Simone, Esquire
May 12, 2008
Page 2

United Coal recognizes that reasonable minds sometimes disagree, and accordingly, it has proceeded with the Declaratory Judgment action on the assumption that a good faith business disagreement has arisen with a valued customer with whom it would like to continue a business relationship. United Coal believes that a prompt resolution of the disagreement is in everyone's best interests. While the parties were working to reach a final agreement for 2008-2009 year, the price of exported coking coal apparently moved dramatically. Without a final integrated and executed agreement that adequately addressed several issues that United Coal needed to have addressed for the 2008-2009 contract, the risk of price movement during negotiations was on both parties. If the parties are not able to resolve their disagreement, we believe that is the conclusion that the district court will reach.

In order to completely resolve the issues in dispute, however, and to ensure that Italiana Coke is able to obtain the coking coal it needs in what I understand to be a tight market (your letter even suggests that Italiana Coke might not be able to acquire the coal if United Coal does not supply it), United Coal is presently willing to offer to sell Italiana Coke the coal in the quantity and of the quality the parties were discussing at a price of $250 per metric ton, FOBT Pier 6, Norfolk Virginia, again assuming that a written agreement properly addressing all of the other material business terms (including force majeure, demurrage charges, the 10% buyer's option, etc.) is agreed upon and signed. That price is at considerable discount to the current market price for the Wellmore and Pocahontas coking coals, and is likely less than Italiana Coke could expect to find for similar coals meeting its specifications. United Coal would also be willing to accept the vessel nomination proposed for June 20-30, and supply one hold each of Pocahontas and Wellmore coal to that vessel at this price. If this is something that would be of interest to your client, please let me know right away, and the parties could work to agree upon and sign an appropriate written agreement.

Alternatively, if Italiana Coke is not willing to resolve the dispute in its entirety along the foregoing lines, but instead would prefer to continue the disagreement over whether a binding 2008-2009 contract was ever reached, United Coal would be willing to sell Italiana Coke 40,000 metric tons of Wellmore Coal at the current market price of $275 per ton, FOBT, and 40,000 metric tons of Pocahontas Coal at the current market price of $295 per ton, FOBT, with the understanding that Italiana Coke would have the right to continue claiming that a binding agreement was already reached at different prices. If your client would be interested in this alternative approach, please let me know, and we can circulate a draft of an appropriate written agreement.

# VENABLE LLP

---

Joseph De Simone, Esquire
May 12, 2008
Page 3

In sum, as I hope is evident to you from this letter, while United Coal does not agree with Italiana Coke's contentions, it remains open and willing to work with Italiana Coke to resolve, or at least narrow, the parties' obvious disagreement.

I look forward to hearing back from you promptly as to how your client would like to proceed.

Sincerely,

Brian L. Schwalb

Enclosures

cc.     Mr. Brian D. Sullivan
        Douglas Miller, Esq.
        Michael Robinson, Esq.

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Eastern | District of | Virginia |

## Norfolk Division

United Coal Company, LLC

V.

Italiana Coke, s.p.a.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:    2:08cv212

TO: (Name and address of Defendant)    Italiana Coke, s.p.a.
an Italian Company
Via Stalingrado 25
17014 S. Giuseppe di Cairo
Savona, Italy

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Douglas E. Miller
Patten, Wornom, Hatten & Diamonstein, LC
12350 Jefferson Avenue
Newport News, VA  23602
USA

an answer to the complaint which is served on you with this summons, within ____20____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

Fernando Galindo
_____
CLERK

5/8/08
_____
DATE

Lisa Woodcock
_____
(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
             Date            *Signature of Server*

_____
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## NOTICE

## CONSENT TO TRIAL BY MAGISTRATE JUDGE

Pursuant to Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c) you may request to have your case conducted before a United States Magistrate Judge upon consent of all parties and approval by a United States District Judge. In order to proceed before a Magistrate Judge, a consent form must be filed with the Clerk's Office. It may be filed jointly or separately. The consent form may be printed from the U.S. District Court website (listed below) or obtained from the Clerk's Office. Please refer to the previously mentioned rule for further information.

## FINANCIAL INTEREST DISCLOSURE STATEMENT

Pursuant to Local Rule 7.1, a financial disclosure statement must be filed by a "nongovernmental corporation, partnership, trust, [or] other similar entity that is a party to, or that appears in, an action or proceeding in this Court." This statement should be filed in duplicate with the party's "first appearance, pleading, petition, motion, response, or other request addressed to the Court". The financial interest disclosure statement may be printed from the U.S. District Court website (listed below) or obtained from the Clerk's Office. Please refer to the previously mentioned rule for further information. Failure to file the financial interest disclosure statement as required by Local Rule 7.1 will result in this first submission being filed subject to defect by the Clerk.

## WEBSITE AND CLERK'S OFFICES ADDRESSES

The website address for the U.S. District Court for the Eastern District of Virginia is www.vaed.uscourts.gov. If you do not have access to a computer, contact one of the Clerk's Offices listed below to obtain either of these forms:

Albert V. Bryan United States Courthouse
401 Courthouse Square
Alexandria, VA 22314
(703) 299-2101

Walter E. Hoffman United States Courthouse
600 Granby Street
Norfolk, VA 23510
(757) 222-7201

Lewis F. Powell, Jr. United States Courthouse
1000 East Main Street
Richmond, VA 23219
(804) 916-2220

United States Courthouse
2400 West Avenue
Newport News, VA 23607
(757) 247-0784

## PROCEDURE FOR CIVIL MOTIONS

This case has been assigned to United States District Judge Jerome B. Friedman.

Pursuant to Local Rule 7, a memorandum of law shall accompany all motions (unless excepted by the rule).

After all briefs are in, it is incumbent upon counsel for the moving party to confer with opposing counsel and advise the Clerk's Office by letter when a ruling or determination by submission is desired.  See Local Rule 26 for discovery motion procedures.

Requests for ruling or determination without oral argument may be addressed by letter to the court.

Requests for oral argument should also be communicated to the court by letter.  If Judge Friedman determines he will allow oral argument, counsel will be notified by the Judge's courtroom deputy or his secretary and a date and time will be selected.

Absent a request for hearing, the motions will be referred automatically to Judge Friedman.

# UNITED STATES DISTRICT COURT

**EASTERN DISTRICT OF VIRGINIA**
**600 GRANBY STREET**
**NORFOLK, VIRGINIA 23510**

CHAMBERS OF
JEROME B. FRIEDMAN
DISTRICT JUDGE

Dear Counsel:

Please confer with your client to consider proceeding before a United States Magistrate Judge and be prepared to make that consent, or lack thereof, known at the Scheduling Conference. The substantive rights of the parties are not affected by this decision.

Parties frequently consent to have the United States Magistrate Judges in the Norfolk and Newport News Divisions decide their cases. The court is requesting that counsel confer with their clients before the Scheduling Conference and be prepared to sign a Consent to Proceed Before a United States Magistrate Judge form at the Scheduling Conference, if they so choose. If the senior attorney in charge of the case will not be appearing at the Scheduling Conference, the court requests that the attorney who does appear at the Scheduling Conference be prepared to indicate whether or not the client will consent to trial before a Magistrate Judge.

All parties in the case must consent to have the case heard by a United States Magistrate Judge or the case will remain with me.

Thank you for your cooperation in this matter.

Very truly yours,

/s/ Jerome B. Friedman

dgs

**Rhoades, Lynne A.**

From: cmecf@vaed.uscourts.gov
Sent: Thursday, May 08, 2008 12:30 PM
To: cmecf@vaed.uscourts.gov
Subject: Activity in Case 2:08-cv-00212-JBF-FBS United Coal Company, LLC v. Italiana Coke, s.p.a. Summons Issued

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.

<div align="center">

**U.S. District Court**

**Eastern District of Virginia**

</div>

**Notice of Electronic Filing**

The following transaction was entered on 5/8/2008 at 12:29 PM EDT and filed on 5/8/2008
Case Name:        United Coal Company, LLC v. Italiana Coke, s.p.a.
Case Number:      2:08-cv-212
Filer:
Document Number: 3

**Docket Text:**
**Summons with one copy issued as to Italiana Coke, s.p.a. and mailed to counsel 5/8/08. (Attachments: # (1) Magistrate's notice and Judge's instructions)(lwoo)**

**2:08-cv-212 Notice has been electronically mailed to:**

Douglas Edwin Miller    dmiller@pwhd.com, debbie@pwhd.com

Michael W. Robinson    mwrobinson@venable.com, larhoades@venable.com

James Harrell Shoemaker , Jr    jshoemaker@pwhd.com, sthompson@pwhd.com

**2:08-cv-212 Notice has been delivered by other means to:**

Brian Lawrence Schwalb
Schwalb Donnenfeld & Schwalb PC
1155 21st St NW
Suite 210
Washington, DC 20036

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a

5/8/2008

**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091796605 [Date=5/8/2008] [FileNumber=1352396-0]
[7b95a5f3a2813e56bbf98d81eb2d3a2ba6807268dd2eb8bffba67e8c9bb964d9a247
349abe8775fd4b1b8f94744afd2dbe29bccb53c08d47ba6e1a7efef7f904]]
**Document description:** Magistrate's notice and Judge's instructions
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1091796605 [Date=5/8/2008] [FileNumber=1352396-1]
[75ac5d930fa5795b9fdfd6bc4bd01cecdb658869a866a0dab10c742cdfdf0c14ae18
96b9c0628ada92f41439ac0d49c8899f6b32914313359bd16c75e859d86a]]

5/8/2008

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

UNITED COAL COMPANY, LLC,  )
a Virginia Limited Liability  )
Company,  )
1005 Glenway Avenue,  )
Bristol, VA 24201,  )
    )
    Plaintiff,  )
    )
    v.  )  CIVIL ACTION NO. 2:08cv212
    )
ITALIANA COKE, s.p.a.,  )
an Italian Company  )
Via Stalingrado 25  )
17014 S. Giuseppe di Cairo  )
Savona, Italy  )
    )
    Defendant.  )

```
┌─────────────────────────┐
│         FILED           │
│        5-7-08           │
│      MAY - - 2008       │
│         7-P             │
│ CLERK, US DISTRICT COURT│
│      NORFOLK, VA        │
└─────────────────────────┘
```

## COMPLAINT

Plaintiff United Coal Company, LLC (hereinafter, "United Coal"), through its undersigned counsel, and for its complaint seeking declaratory judgment against Defendant Italiana Coke, s.p.a. (hereinafter, "Italiana Coke"), states, claims and alleges as follows:

### INTRODUCTION

1.    This is an action seeking a judicial declaration that no valid or enforceable contract exists between the parties for the purchase and sale of metallurgical coal for the period between April 1, 2008 and March 31, 2009. Defendant Italiana Coke claims that the parties entered into a binding contract obligating United Coal to supply Italiana Coke with approximately 80,000 metric tons of metallurgical (or hard coking) coal between April 1, 2008 and March 31, 2009. United Coal maintains that, notwithstanding negotiations, no binding or enforceable contract was ever

1

finalized, agreed upon or executed. Italiana Coke has made demands that amount to an antagonistic assertion of rights and that create substantial operational uncertainty for United Coal. As a result of the parties' conflicting positions, an actual and justiciable controversy exists over the parties' respective rights and obligations. This controversy can and should be fully resolved by way of declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

## PARTIES

2.    Plaintiff United Coal is a limited liability company existing and organized under the laws of Virginia with its principal place of business at 1005 Glenway Avenue, Bristol, Virginia 24201. United Coal, for diversity purposes, is deemed to be a citizen of Virginia, Tennessee and Delaware. Through its subsidiaries, United Coal's business operations include underground and surfacing coal mining, coal preparation plants and rail loading facilities in Buchanan, Tazewell and Dickinson Counties, Virginia, as well as Raleigh County, West Virginia.

3.    Defendant Italiana Coke is, upon information and belief, a corporation organized and existing under the laws of Italy with its office at Via Stalingrado 25, 17014 S. Giuseppe di Cairo, Savona, Italy. Italiana Coke operates worldwide, and is involved in, among other things, manufacturing and supplying steel to various markets such as the automotive and building industries.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1332(a)(2) because the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and it is between a citizen of Virginia and Tennessee, on the one hand, and a citizen/subject of a foreign state, on the other.

2

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim asserted occurred in or, alternatively, would have occurred in this District, performance of the contract that Italiana Coke alleges to exist, and which United Coal denies, would have taken place in this District, and Italiana Coke is subject to jurisdiction in this District.

6.    This Court has personal jurisdiction over Italiana Coke because it has transacted business in the Commonwealth of Virginia by entering into prior written and executed contracts for the purchase and sale of coal that were fully performed in Virginia, negotiating for additional contracts that would be performed in Virginia, and claiming to have completed a contract to be performed in Virginia that is the subject of this dispute.

## FACTS

7.    United Coal, through its subsidiaries, has supplied metallurgical or hard coking coal to Italiana Coke in connection with Italiana Coal's production of steel since 2006. The parties' commercial relationships have been governed by one-year, written "Sale and Purchase Agreements" that have run from April 1st through March 31st of the following year.

8.    After extensive negotiation, Italiana Coke and one of United Company's subsidiaries, Wellmore Coal, LLC, executed a written Sale and Purchase Agreement for the purchase and sale of metallurgical coal for the year April 1, 2006 through March 30, 2007.

9.    After extensive negotiation, Italiana Coke executed two separate written Sale and Purchase Agreements for the purchase and sale of metallurgical coal for the year April 1, 2007 through March 30, 2008, one contract for coal from Wellmore Coal, LLC, and one contract for coal produced by Pocahontas Coal, LLC, another of United Coal's subsidiaries.

3

10.     In late 2007, negotiations began for a potential new coal purchase and sale agreement for the 2008-2009 year.  As had been the custom and practice in the prior years, it was understood that any agreement would require a meeting of the minds on all material terms and conditions and a final written and executed contract or contracts, and that no binding or enforceable agreement would exist unless and until a written agreement was executed.

11.     Consistent with past-practice, the parties' exchanged, discussed and negotiated over a variety of potential contract terms relating to, among other things, price, quantities, moisture levels, force majeure events, purchase options and delivery requirements with the understanding that no enforceable contract would exist unless and until a meeting of the minds was reached on all terms, and unless and until a written agreement was executed.

12.     In March 2008, the parties exchanged drafts of a potential agreement.  Differences arose regarding various contract provisions, including purchase option and force majeure provisions.  Additionally, no final agreement on price was ever reached. In early April 2008, representatives of United Coal met with representatives of Italiana Coke in New York City to continue negotiating a potential purchase and sale contract for the 2008-2009 year, however no such agreement was ever reached.

13.     Neither United Coal nor any of its subsidiaries, on the one hand, and Italiana Coke, on the other hand, ever agreed on all material terms with respect to a potential contract to purchase and sell metallurgical coal between April 1, 2008 and March 31, 2009.

14.     Neither United Coal nor any of its subsidiaries, on the one hand, and Italiana Coke, on the other hand, ever executed a written contract with respect to the purchase and sale of metallurgical coal between April 1, 2008 and March 31, 2009.

15.     Notwithstanding the foregoing, Italiana Coke has taken the position that the parties reached an enforceable contract for the one-year period commencing April 1, 2008 and that United Coal is obligated, upon Italiana Coke's direction, to deliver, load, trim and stow approximately 80,000 metric tons of coal in ocean-going vessels chartered by Italiana Coke that are to dock at Lambert's Point Pier No. 6 in Norfolk, Virginia pursuant to that purported agreement.  According to Italiana Coke, the total sale price for such coal is approximately $10 million (between $123 and $135 per metric ton).

16.     Italiana Coke has indicated that it intends to nominate a vessel to be loaded for the first delivery of coal under the purported contract beginning in June 2008.  Italiana Coke has asserted that even though there is no final written and executed contract, United Coal's refusal to deliver coal to the Lambert's Point Pier No. 6 will expose United Coal to various legal claims and liabilities, including cover damages.  The current market price, per metric ton of like-quality metallurgical coal delivered FOBT is in excess of $275.

17.     Italiana Coke has made an antagonistic assertion of claim, namely that a valid and enforceable contract for the sale of coal exists between United Coal and Italiana Coke for the 2008-2009 year, that United Coal is in breach of said alleged contract, and that Italiana Coke has been and will continue to be damaged by United Coal's alleged refusal to honor the purported contract.

## COUNT ONE: DECLARATORY JUDGMENT

18.     United Coal incorporates by reference the allegations made in paragraphs 1 through 17 above as if each were separately restated here.

19.     Italiana Coke's assertion that United Coal is obligated to sell approximately 80,000 metric tons of metallurgical coal to it at certain prices and in certain quantities for the one-year

5

period beginning April 1, 2008 and that United Coal must begin performing when Italiana Coke nominates a vessel in June 2008 is an antagonistic assertion of rights.

20.      Italiana Coke's assertion creates significant uncertainty for United Coal, impairs its ability to negotiate with other companies for the sale and delivery of its finite amount of metallurgical coal during the time period at issue, and creates substantial logistical difficulties in its business operations.

21.      Without a prompt determination of whether or not a binding and enforceable agreement exists between the parties for the purchase and sale of metallurgical coal for the 2008-2009 year, United Coal cannot know with certainty whether it is exposing itself to liability if it does not accede to Italiana Coke's demands or if it undertakes to sell some or all of the finite amount of metallurgical coal that its subsidiaries can mine or have already mined, which sales would necessarily limit its ability to sell coal to Italiana Coke during the time period that Italiana Coke claims it has a binding contract to purchase said coal.

22.      A declaratory judgment in this case will serve a useful purpose in clarifying and settling the respective legal rights and obligations of the parties, and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this action.

WHEREFORE United Coal requests that the Court grant the following relief:

a.      Enter a declaratory judgment declaring that no valid or enforceable contract exists between United Coal, or any of its subsidiaries, on the one hand, and Italiana Coke, on the other, regarding the purchase and sale of metallurgical coal for the one-year period commencing April 1, 2008;

b.      Grant United Coal such other and further relief as the Court deems just and appropriate.

6

**UNITED COAL COMPANY, LLC**

Michael W. Robinson
VSB No. 26522
VENABLE LLP
8010 Towers Crescent Drive, Suite 300
Vienna, VA 22182
Phone: (703) 760-1600
Facsimile: (703) 821-8949
mwrobinson@venable.com

Brian L. Schwalb
VSB No. 34525
575 7th Street, NW
Washington, DC 20004-1601
Phone: (202)344-4356
Fax: (202)344-8300
blschwalb@venable.com

and

Douglas E. Miller
VSB No. 38591
James H. Shoemaker, Jr.
VSB No. 33148
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, VA 23602
Telephone: (757) 223-4500
Facsimile: (757) 249-1627
dmiller@pwhd.com

Attorneys for Plaintiff, United Coal Company, LLC

7

# Exhibit F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INDEX NO. 08-CV-4725
DATE FILED: MAY 20, 2008

### *ITALIANA COKE, S.r. l.*

Plaintiff(s)

*against*

### *UNITED COAL COMPANY, LLC*

Defendant(s)

STATE OF VIRGINIA, COUNTY OF RUSSELL , SS.:                    AFFIDAVIT OF SERVICE

_____ Jeffrey Fields _____ being duly sworn deposes and says: Deponent is not a party herein, is over 18 years of age and resides at _____ Lebanon, VA _____ . That on   May 27, 2008   at  1 05 PM  , at _____ 1005 Glenway Ave., Bristol, VA 24201 _____ deponent served the within _____ Summons in a Civil Action, Complaint, Rule. 7.1 Statement _____
_____ Civil Cover Sheet Jury Trial Demand _____
on _____ UNITED COAL COMPANY, LLC _____ ,

a(n) _____ defendant herein _____ , by delivering thereat a true copy thereof to _____ Michelle Burnette, Admin Asst. _____ , personally, deponent knew said _____ defendant herein _____ so served to be the _____ defendant herein _____ so described, and knew said individual to be an authorized agent thereof. Deponent asked said individual if they were able to accept on behalf of said _____ defendant herein _____ and they responded with an affirmative.

Deponent describes the individual served as follows: Gender:  Female    Skin Color:   White    Hair Color:   Brown  Age:   35 - 40 Yrs.   Height:  5' 2" - 5' 6"   Weight:  126 - 145 Lbs.   Other: Person served was seated

Sworn to before me on this  27TH day of _____ May, 2008 _____

_Tammy C Schlichter_
# 7018371

_Jeffrey Fields_
Server's Lic. #  VA 11-1398

Affidavit # 10000473

ATTORNEY: Mayer Brown LLP ,  Ph:212-506-2721
ADDRESS:  1675 Broadway New York NY 10019-5820   File No.:

SOUTHWEST SECURITY INC.
P.O. DRAWER 9
LEBANON, VIRGINIA 24266-0009