**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ITALIANA COKE, S.R.L., | : |
| Plaintiff, | :   08-CV-4725 (JGK) |
| | : |
| | :   ECF Case |
| v. | : |
| | : |
| UNITED COAL COMPANY, LLC, | : |
| | : |
| Defendant. | : |
| | : |
| | : |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, <u>TO TRANSFER OR STAY THE PROCEEDINGS</u>

Edmund M. O'Toole (EO-7939)
Michael C. Hartmere (MH-6839)
VENABLE LLP
1270 Avenue of the Americas, 25th Floor
New York, New York 10020
Phone: (212) 953-3388
Fax: (212) 307-5598
emotoole@venable.com
mchartmere@venable.com

Brian L. Schwalb (*admitted pro hac vice*)
Meredith L. Boylan (MB-2718)
575 7th Street, NW
VENABLE LLP
Washington, DC 20004-1601
Phone: (202) 344-4356
Fax: (202) 344-8300
blschwalb@venable.com
mlboylan@venable.com

August 11, 2008

## Table of Contents

I.    The Court Does Not Have Personal Jurisdiction Over United Coal ...................................... 2

II.   Venue In This District Is Improper ....................................................................................... 6

III.  The Court Should Transfer This Action To The Eastern District Of Virginia ................... 6

CONCLUSION ............................................................................................................................ 10

# Table of Authorities

## Cases

*Abbacor, Inc. v. Miller*, No. 01 Civ. 0803, 2001 U.S. Dist. LEXIS 13385, at *8-9 (S.D.N.Y. Aug. 31, 2001) ...................................................................................................................... 5

*Anchor v. Novartis Grimsby, Ltd.*, No. 07-0030-cv, 2008 U.S. App. LEXIS 13517, at *5 (2d Cir. June 26, 2008) ......................................................................................................................... 5

*Berkshire Capital Group, LLC v. Palmet Ventures, LLC*, No. 06 Civ. 13009 (PAC), 2007 U.S. Dist. LEXIS 69987, at *9 (S.D.N.Y. Sept. 21, 2007) ................................................................. 5

*BHP Trading (UK) Ltd. v. Deep Sea Int'l Shipping Co.*, 1991 WL 198747, at *5 (S.D.N.Y. Sept. 23, 1991) ...................................................................................................................................... 5

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1975) ............................................................. 5, 7

*Cutco Indus., Inc. v. Naugton*, 806 F.2d 361, 366 (2d Cir. 1986) ................................................. 5

*Employers Ins. of Wasau v. Fox Entertainment Group, Inc.*, 522 F.3d 271 (2d Cir. 2008) ........... 8

*Fabrikant & Sons, Inc. v. Kahn*, 144 A.D.2d 264 N.Y.S.2d 866 (N.Y. App. Div. 1st Dept. 1988)3

*Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108 (2d Cir. 2001) .................................................. 7

*Galgay v. Bulletin*, 504 F.2d 1062 (2d Cir. 1974) ........................................................................ 5

*Geller v. Newell*, 602 F. Supp. 501 (S.D.N.Y. 1984) ................................................................... 3

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) ........................................................................... 7

*Kahn Lucas Lancaster, Inc. v. Lark Int'l*, 956 F. Supp. 1131 (S.D.N.Y. 1997) ............................ 3

*M.C. Const. Corp. v. Gray Co.*, 17 F. Supp. 2d 541 (W.D. Va. 1998) .......................................... 8

*Mantello v. Hall*, 947 F. Supp. 92 (S.D.N.Y. 1996) ..................................................................... 6

*Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523 (S.D.N.Y. 1985) ........................... 4

*McGowan v. Smith*, 52 N.Y.2d 268 N.E.2d 321 (1981) ................................................................ 4

*Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505 (S.D.N.Y. 2004) .................. 8, 9

*Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d 356 (S.D.N.Y. 2003)............ 8

*Totonelly v. Cardiology Assocs. of Corpus Christi*, 932 F.Supp. 621 (S.D.N.Y. 1996) ............... 9

*Viacom Int'l, Inc. v. Melvin Simons Prods., Inc.*, 774 F. Supp. 858 (S.D.N.Y. 1991) .................. 9

*Zelenkofske Axelrod Consulting L.L.C. v. Stevenson*, 1999 U.S. Dist. LEXIS 12137, *10
(E.D.P.A. August 5, 1999) ................................................................................................ 9

## Statutes

28 U.S.C. § 1391(a)(3) ..................................................................................................... 9

9 U.S.C. § 4 ..................................................................................................................... 11

C.P.L.R. § 302(a)(1) .................................................................................................... 5, 7

CPLR 302 (subd [a], par 1) ............................................................................................. 7

## Other Authorities

www.norfolkairport.com/flightinfo/routemap.htm ....................................................... 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ITALIANA COKE, S.R.L., : | 08-CV-4725 (JGK) |
| Plaintiff, : | |
| : | Electronically Filed |
| v. : | |
| UNITED COAL COMPANY, LLC, : | |
| Defendant. : | |
| : | |

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER OR STAY THE PROCEEDINGS

In reply to Plaintiff's Opposition Brief dated July 28, 2008 (the "Opposition"), and in further support of its motion to dismiss, or, in the alternative, to transfer or stay the proceedings, United Coal[1] states as follows:

Italiana Coke's focus on a single meeting between the parties that was held in New York City – a one-day, one-time meeting that did not: (1) result in the "contracts" at issue being executed or finalized; (2) involve any negotiations relating to the disputed deal; or (3) take place until several months *after* Italiana Coke maintains the purported contracts were finalized – does not alter the fact that United Coal lacks sufficient contacts with New York to warrant this Court's exercise of personal jurisdiction over United Coal. Moreover, Italiana Coke, in an effort to circumvent United Coal's motion to transfer this case to the Eastern District of Virginia, downplays the significant connections this dispute has to Virginia. As demonstrated in the Opening Brief and discussed more fully below, the Southern District of New York does not have

---

[1] This Reply employs the same defined terms used in the Memorandum of Points and Authorities in Support of Defendant United Coal Company, LLC's Motion to Dismiss or, in the Alternative, to Transfer or Stay the Proceedings, filed July 1, 2008 (the "Opening Brief").

1

jurisdiction or venue over United Coal and, even if it did, the case more properly belongs in the Eastern District of Virginia.[2]

## I.    The Court Does Not Have Personal Jurisdiction Over United Coal

As demonstrated in United Coal's Opening Brief, this Court lacks both general and specific jurisdiction over United Coal – a Virginia limited liability company with no office, employees or operations in New York. Italiana Coke does not meaningfully dispute that this Court lacks general jurisdiction over United Coal, but rather, maintains that specific jurisdiction over United Coal exists under C.P.L.R. § 302(a)(1). However, Italiana Coke has not shown that United Coal transacts business in New York.

Italiana Coke predicates its specific jurisdiction argument on the assertion that United Coal's Virginia complaint "is premised on the notion" that an April 3, 2008 meeting that occurred between the parties in New York was a "negotiation[ ] regarding the contract" at issue. (Opp. at 9.) That assertion is not accurate. In fact, no negotiations relating to a potential 2008-2009 deal took place at the New York meeting because Italiana Coke insisted that enforceable contracts already existed. See Sullivan Decl., Ex. D ¶ 12; Declaration of Ralph Haring, dated August 8, 2008 ("Haring Decl.") ¶ 2.

Italiana Coke concedes that negotiations regarding the 2008-2009 contracts occurred principally in Stockholm, Sweden and through subsequent correspondence between Italy and Virginia (where Italiana Coke and United Coal's respective headquarters are located). See Compl. ¶¶ 13, 15-24, 26-27, 29. Those negotiations – and not the inconsequential one-day

---

[2]      On July 22, 2008, the parties participated in a telephonic conference with this Court during which the application of the "first filed" rule was discussed. At the conclusion of the conference, the Court determined that it would not issue any rulings in this matter until the Eastern District of Virginia – where United Coal's first-filed action is pending – has the opportunity to determine the Eastern District of Virginia should proceed to adjudicate the dispute. The Eastern District of Virginia has not yet ruled. However, even if the Eastern District of Virginia were to conclude that it does not have jurisdiction over Italiana Coke, this Court still could not properly exercise personal jurisdiction over United Coal. Rather, Italiana Coke's complaint would have to be dismissed.

meeting in New York – are what is significant for jurisdictional purposes. The determination of whether binding and enforceable contracts exist is not dependent on anything that happened during the isolated and brief, single meeting in New York. Indeed, that meeting took place months after Italiana Coke maintains the purported contracts were formed. United Coal clearly could not have sued Italiana Coke in New York based only on that isolated meeting (even if Italiana Coke has "voluntarily" submitted to jurisdiction in New York for purposes of filing its suit against United Coal); the same is true with respect to Italiana Coke's efforts to sue United Coal in New York.

Italiana Coke oversimplifies the authorities it cites in an effort to support its "single meeting" jurisdictional argument. For example, in *Geller v. Newell*, 602 F. Supp. 501 (S.D.N.Y. 1984) (Opp. at 10), the defendant visited New York, where he "participated in extensive, substantial negotiations essential to the formation of the contractual relationship" and where the parties "agreed to" the terms of the disputed contract. Here, there were no "substantial negotiations" during the New York meeting relating to the 2008-2009 contracts, nor is there any contention that, as a result of the New York meeting, the contracts were executed in New York or elsewhere. *See Kahn Lucas Lancaster, Inc. v. Lark Int'l*, 956 F. Supp. 1131, 1136 (S.D.N.Y. 1997) ("where there are no substantively significant meetings in New York, courts have found no jurisdiction").

In *Fabrikant & Sons, Inc. v. Kahn*, 144 A.D.2d 264, 533 N.Y.S.2d 866 (N.Y. App. Div. 1st Dept. 1988) (Opp. at 10), a defendant's single visit to New York "led to further contacts and dealings" with the plaintiff, and those "dealings" were the underlying basis of the suit. The April 2008 meeting that occurred between Italiana Coke and United Coal did not lead to further "dealings" between the parties, and certainly did not result in the consummation of any deal for

3

2008-2009. Finally, in *Mayer v. Josiah Wedgwood & Sons, Ltd.*, 601 F. Supp. 1523, 1530-31 (S.D.N.Y. 1985) (Opp. at 10), the court held that where there were "*significant* contract negotiations in New York," a defendant could be subject to jurisdiction even if the "negotiations bore no fruit." *Id.* (emphasis added). There were no negotiations here – significant or otherwise – between the parties in New York regarding the 2008-2009 deals.[3]

Also misplaced is Italiana Coke's reliance on the parties' inclusion of a New York choice of law and arbitral forum provision in their prior contracts. (Opp. at 10-11.) Italiana Coke contends that those provisions also were to be part of the new contracts that were never executed. This boot-strapping argument should be rejected: the question presented is whether binding agreements were ever reached, and Italiana Coke, for jurisdictional purposes, cannot properly beg the answer to that question by assuming that the parties agreed on a New York choice of law or forum provision. Despite Italiana Coke's attempt to discredit United Coal's assertion that the choice of law and dispute resolution provisions had not been finalized, United Coal's supporting declaration makes clear that the documents which had been exchanged between the parties were drafts, and that the parties had not come to a meeting of the minds as to which choice of law and dispute resolution procedures should apply. *See* Sullivan Decl. ¶ 10. In any event, as noted in United Coal's Opening Brief, this Court need not resolve the question of whether the draft provisions should apply since a choice of law provision alone "does not constitute a voluntary submission to personal jurisdiction." *Cutco Indus., Inc. v. Naugton*, 806 F.2d 361, 366 (2d Cir.

---

[3]    Italiana Coke contends that the parties entered into an "interim agreement" regarding 2007-2008 contracts and that that agreement is jurisdictionally significant. (Opp. at 9.) It is not. A cause of action must arise out of the business transacted for specific jurisdiction to exist. *See* C.P.L.R. § 302(a)(1) (long arm jurisdiction exists if the cause of action "*aris[es] from* any of the acts enumerated in this section") (emphasis added); *McGowan v. Smith*, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 323 (1981) ("Essential to the maintenance of a suit against a nondomiciliary under CPLR 302 (subd [a], par 1) is the existence of some articulable nexus between the business transacted and the cause of action sued upon"). There is no nexus between the dispute that is before the Court – namely, whether binding and enforceable agreements for 2008-2009 exist – and the interim agreement relating to the 2007-2008 contracts that the parties entered into in New York.

4

1986); *see also Galgay v. Bulletin*, 504 F.2d 1062, 1066 (2d Cir. 1974); *Berkshire Capital Group, LLC v. Palmet Ventures, LLC*, No. 06 Civ. 13009 (PAC), 2007 U.S. Dist. LEXIS 69987, at *9 (S.D.N.Y. Sept. 21, 2007).

Similarly, a provision to arbitrate in New York does not necessarily subject a party to jurisdiction in New York. *See Abbacor, Inc. v. Miller*, No. 01 Civ. 0803, 2001 U.S. Dist. LEXIS 13385, at *8-9 (S.D.N.Y. Aug. 31, 2001) ("It is well-settled that an agreement to arbitrate in New York does not alone constitute consent to personal jurisdiction in suits that are not related to the arbitration itself"); *Kahn*, 956 F. Supp. at 1139 (New York arbitration clause "means that this Court has jurisdiction over [party] only in support of arbitration"). In this case, Italiana Coke is seeking declaratory relief, specific performance, and monetary damages. It has not moved to compel arbitration or to enforce an arbitration award. *See* Compl., Prayer for Relief ¶ (a). Thus, United Coal is not subject to personal jurisdiction in New York simply because of the arbitration provision contained in the draft agreements.

Finally, Italiana Coke argues, in conclusory fashion, that exercising jurisdiction over United Coal in New York comports with constitutional Due Process because United Coal attended the New York meeting. But given the circumstances here, that isolated meeting is jurisdictionally irrelevant and did not establish a substantial enough connection with New York such that United Coal could reasonably anticipate being haled into court here. *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1975).[4]

---

[4]    Italiana Coke claims that it needs discovery "as to general jurisdiction," contending that it is necessary to probe United Coal's declaration that it "does not regularly transact business in New York." *See* Sullivan Decl. ¶ 3. However, Italiana Coke has failed to make a prima facie showing of general jurisdiction, or even a "sufficient start" at such a showing that would permit it to engage in jurisdictional discovery. *See Anchor v. Novartis Grimsby, Ltd.*, No. 07-0030-cv, 2008 U.S. App. LEXIS 13517, at *5 (2d Cir. June 26, 2008) ("[w]e cannot say the district court abused its discretion in denying plaintiffs jurisdictional discovery where they failed to make any prima facie showing of jurisdiction"). Unlike the plaintiff in *BHP Trading (UK) Ltd. v. Deep Sea Int'l Shipping Co.*, 1991 WL 198747, at *5 (S.D.N.Y. Sept. 23, 1991) (Opp. at 15), which was able to point to a statement in the defendant's declaration that could "reasonably be read as an acknowledgement that defendant, in conducting its business,

II.    **Venue In This District Is Improper**

Italiana Coke contends that venue in the Southern District of New York is proper because the "breach of the underlying contract" occurred at the April 3, 2008, New York meeting, and thus a substantial part of the events giving rise to the claim occurred in New York. (Opp. at 15.) Italiana Coke's "breach" theory is misplaced. After all, under the purported contracts that Italiana Coke claims to exist (and which United Coal denies), United Coal was to deliver coal to Italiana Coke at the Hampton Roads Pier in Norfolk, Virginia. *See* Sullivan Decl. ¶¶ 5-6; Busdraghi Decl. ¶ 17. Further, in its April 15, 2008 letter to United Coal, which post-dates the meeting, Italiana Coke requested that "the first supplies under the 2008 contracts" be delivered in Norfolk in June 2008. *See* Sullivan Decl. Ex. A. Assuming, *arguendo,* that a breach occurred, it did not occur during the April meeting in New York, but when United Coal declined to deliver coal to Italiana Coke in Norfolk in June. In addition, as explained above, there were no "negotiations" regarding the 2008-2009 contracts during the New York meeting. Thus, Italiana Coke's contention that "negotiations, by themselves, may be enough to confer venue" is of no moment. (Opp. at 15. ) Finally, as previously demonstrated, there is no basis for venue in New York under 28 U.S.C. § 1391(a)(3), because this Court cannot exercise personal jurisdiction over United Coal and because this action could have been brought in either the Western District or Eastern District of Virginia.

III.    **The Court Should Transfer This Action To The Eastern District Of Virginia**

---

engaged with some regularity in financial transactions having more than a merely fortuitous connection with New York," here Italiana Coke has done nothing to demonstrate a basis for general jurisdiction. The declaration that United Coal's Brian Sullivan submitted makes clear that United Coal has not engaged in a "continuous and systematic course of doing business" in New York. *See Mantello v. Hall,* 947 F. Supp. 92, 96-97 (S.D.N.Y. 1996). In the absence of a prima facie demonstration of jurisdiction or even a "sufficient start" at making a prima facie showing, Italiana Coke's desperate assertion that it needs jurisdictional discovery before this case is dismissed should be rejected.

Regardless of the Court's conclusion on whether or not it can properly exercise personal jurisdiction over United Coal, it should exercise its discretion not to do so, and instead transfer the matter to the Eastern District of Virginia. *See Fort Knox Music, Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962).

Italiana Coke argues that transfer would be inappropriate because it is not subject to personal jurisdiction in the Eastern District of Virginia, claiming that the Virginia Long-Arm statute is inapplicable because, "no negotiations, meetings or other facts regarding the formation of the contract took place in Virginia." (Opp. at 16.) In fact, after the parties' initial meeting in Stockholm, Sweden, the only negotiations in this case took place in exchanges between Italy and Virginia. *See* Compl. ¶¶ 13, 16-24, 26-27, 29. Italiana Coke also contends that it lacks "minimum contacts" with Virginia. (Opp. at 17.) The reality is that Italiana Coke has engaged in "significant activities" in Virginia, *see Burger King*, 471 U.S. at 475-76, by (1) negotiating with United Coal's representatives for 2008-2009 coal contracts worth tens of millions of dollars, with coal to be mined in Virginia, transported in Virginia, and delivered to Italiana Coke in Virginia, and (2) through its extensive relationship with United Coal, pursuant to which millions of dollars of metallurgical coal has been mined in, transported in, and accepted by Italiana Coke in Virginia.

Further, Italiana Coke maintains that the Eastern District of Virginia cannot compel arbitration in New York, therefore the case should not be transferred. But Italiana Coke's argument presupposes both the existence of contracts and that those contracts would have contained a written arbitration agreement. That, again, begs the question whether there are any contracts at all, and that threshold question is not subject to arbitration. The Eastern District of Virginia can issue a declaratory judgment on that disputed issue even if the ultimate result will

7

include a declaration that the parties must arbitrate their disputes. *See M.C. Const. Corp. v. Gray Co.*, 17 F. Supp. 2d 541 (W.D. Va. 1998) (court declares parties' rights under contract to arbitrate disputes in Kentucky and then transfers matter to Kentucky for order compelling arbitration). As explained by Judge Marrero:

> [W]here a federal court lacks authority pursuant to 9 U.S.C. § 4 to compel arbitration outside its district, the court may still determine that the dispute nonetheless remains 'referable to arbitration' elsewhere, if a forum is designated, and must then order a stay [pursuant to § 3] instead, thereby leaving the parties free to pursue their contractual rights and remedies in the appropriate venue.

*Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc.*, 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003). Further, the dispute resolution provisions were one of several issues that were still not agreed upon when the parties were exchanging draft contracts. *See* Sullivan Decl. ¶ 10.

Notably, while Italiana Coke insists that only a New York court can compel arbitration in New York, in its complaint it has asked only for a declaration that the parties entered into a binding contract and a declaration that the contract requires that disputes be submitted to arbitration. *See* Compl., Prayer for Relief Par. (a). It has not asked that arbitration be compelled and, to the contrary, has included counts seeking monetary damages for breach of contract – claims inconsistent with its suggestion that the claim can be resolved only through arbitration. Whether or not Italiana Coke wants further disputes arbitrated, the Eastern District of Virginia can provide the same declaratory relief regarding arbitration that this Court could provide.[5]

---

[5] Italiana Coke includes a lengthy "first-filed" argument in its response. (Opp. at 19-22.) In light of this Court's determination on July 22, 2008 that it would defer to the Eastern District of Virginia, United Coal maintains that the Court should not reach the merits of Italiana Coke's arguments. In any event, United Coal's filing in the Eastern District of Virginia cannot be considered "anticipatory" since nothing in Italiana Coke's May 6th letter, *see* Sullivan Decl. Ex. C, indicated that a filing was imminent, let alone that a lawsuit would be filed in the Southern District of New York. *See, e.g., Employers Ins. of Wasau v. Fox Entertainment Group, Inc.*, 522 F.3d 271 (2d Cir. 2008) ("in order for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action"). The May 6th letter "contains no explicit mention of a lawsuit, forum, deadline or filing date, and thus is insufficient to constitute notice of a lawsuit under the above cases." *Schnabel v. Ramsey Quantitative Sys., Inc.*, 322 F. Supp. 2d 505, 513 (S.D.N.Y. 2004). Based on Italiana Coke's position that the 2008-2009 draft contracts (which contained an arbitration provision) were

Finally, as a practical matter, an order compelling arbitration will never become an issue. If it is determined that the parties entered into a binding contract and that disputes under the contract must be arbitrated, United Coal will voluntarily submit any such disputes to arbitration.

In addition, the fact that Italiana Coke filed a retaliatory complaint in New York should not be afforded great weight because there is little connection between the dispute and New York. *See Totonelly v. Cardiology Assocs. of Corpus Christi*, 932 F.Supp. 621, 623 (S.D.N.Y. 1996) ("Although generally a plaintiff's choice of forum is entitled to considerable weight . . . that choice is accorded less weight to the degree that the case's operative facts have little or no connection" to the forum). Here, the only connection Italiana Coke claims this dispute has with New York is the April 3, 2008 meeting. As demonstrated, that meeting is of minimal, if any, significance.

Typically, the convenience to the parties and witnesses of litigating in a particular forum is accorded significant weight in the transfer analysis. *See, e.g., Viacom Int'l, Inc. v. Melvin Simons Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) ("[t]he core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. . . . Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district"). This factor militates in favor of transferring

---

enforceable, it was logical for United Coal to assume Italiana Coke was considering arbitration, not a lawsuit in New York.

    Further, United Coal did not engage in forum shopping, which occurs only when a party "seek[s] out a forum solely on the basis of having the suit heard in a forum where the law or judiciary is more favorable to one's cause than in another." *Zelenkofske Axelrod Consulting L.L.C. v. Stevenson*, 1999 U.S. Dist. LEXIS 12137, *10 (E.D.P.A. August 5, 1999). Here, the contractual dispute will be decided applying provisions of the United Nations Convention on the International Sales of Goods or the Uniform Commercial Code; both New York and Virginia have adopted nearly identical versions of the Uniform Commercial Code. *Compare* Va. Code §§ 8.1(A)-101 – 8.10-104 *with* N.Y. UCC §§ 1-101 – 13-105. Since the same legal principles will apply in either forum, there is no basis to argue that United Coal was forum shopping. United Coal filed its action in Virginia because it is the most logical court to hear the dispute, as it is the location where Italiana Coke was demanding performance – the act central to the parties' dispute – and it is the State where United Coal's representatives work. *See Schnabel*, 322 F. Supp. 2d at 513 ("A party who appropriately files a declaratory judgment action in the forum most convenient to him to resolve a ripe legal dispute is not engaged in forum shopping").

the case from New York to Virginia. Neither party operates or maintains an office in New York. There are no parties or party witnesses who reside in New York. United Coal is a Virginia company and all of its witnesses work in Virginia. *See* Sullivan Decl. ¶ 3; Haring Decl. ¶ 3. Italiana Coke is an Italian corporation and all of its witnesses reside in Italy. *See* Busdraghi Decl. ¶ 12. It will have to travel internationally regardless of where the matter is tried. Norfolk is served by an international airport that has daily connecting flights to and from major United States hubs. *See* www.norfolkairport.com/flightinfo/routemap.htm. Any negligible decrease in inconvenience for Italiana Coke travelling from Rome to New York as opposed to Rome to Norfolk does not militate in favor of inconveniencing United Coal by keeping the case in New York.

Finally, Italiana Coke argues that New York law applies and that the action therefore belongs in New York. Again, that presupposes the existence of contracts with a choice of law provision. While the parties' prior written contracts included a clause whereby *those* contracts would be "governed and construed in accordance with" New York law, the issue here is whether valid contracts for 2008-2009 were ever formed. That issue will not be decided under New York law. Thus, this factor does not favor keeping the case here.

### CONCLUSION

For the reasons set forth above and in United Coal's opening brief, this Court should dismiss this action for lack of personal jurisdiction over United Coal, or alternatively, transfer the case to the Eastern District of Virginia for consolidation with the first-filed action already pending there.

Dated: New York, New York
      August 11, 2008

Respectfully submitted,

Edmund M. O'Toole (EO-7939)

10

Michael C. Hartmere (MH-6839)
VENABLE LLP
1270 Avenue of the Americas, 25th Floor
New York, New York 10020
Phone: (212) 953-3388
Fax: (212) 307-5598
emotoole@venable.com
mchartmere@venable.com

Brian L. Schwalb (*admitted pro hac vice*)
Meredith L. Boylan (MB-2718)
575 7th Street, NW
VENABLE LLP
Washington, DC 20004-1601
Phone: (202) 344-4356
Fax: (202) 344-8300
blschwalb@venable.com
mlboylan@venable.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of August 2008, I caused a true and correct copy of the foregoing REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO TRANSFER OR STAY THE PROCEEDINGS to be filed with the Court's CM/ECF management system, which caused notice of the foregoing to be served electronically upon the following:

> Joseph De Simone, Esq.
> Leslie Chebli, Esq.
> Mayer Brown LLP
> 1675 Broadway
> New York, NY  10019-5820
> Tel: (212) 506-2500
> Fax: (212) 262-1910

/s/
_____
Michael C. Hartmere

12